**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR. No. 06-0042ML** |
| | : | |
| **NEIL STIERHOFF** | : | |

**OBJECTION TO DEFENDANT'S**
**MOTION TO SUPPRESS STATEMENTS**

The United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and John N. Kane and Thomas G. Voracek, Trial Attorneys, United States Department of Justice, respectfully submits this Objection to Defendant's Motion To Suppress Statements. In support of this Objection, the government submits the attached Memorandum of Law.

Respectfully submitted,
UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

/s/John n. Kane
JOHN N. KANE

/s/Thomas G. Voracek
THOMAS G. VORACEK
Trial Attorney
U.S. Department of Justice

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed, with the Clerk of Court using the CM/ECF system, a true and accurate copy of the within Objection to Defendant's Motion To Suppress Statements, which will in turn send notification to Scott A. Lutes, Attorney at Law, scottluteslaw@yahoo.com, and by regular mail, postage prepaid to Scott A. Lutes, Attorney at Law, 127 Dorrence Street, Providence, Rhode Island 02903, on this the 20th day of November, 2006.

/s/Thomas G. Voracek
Thomas G. Voracek

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR. No. 06-0042ML** |
| | : | |
| **NEIL STIERHOFF** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S OBJECTION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

The United States of America, by and through its undersigned attorneys, respectfully submits this Memorandum of Law in Support of Government's Objection to Defendant's Motion To Suppress Statements.

The defendant moves this court to suppress statements made to law enforcement officials by the defendant, Neil Stierhoff. As acknowledged by the defendant, there are two sets of statements. The first statements were made at the time of his arrest, but before the defendant signed a waiver of rights form. The second statements were made after the defendant signed a waiver of rights form at the State Police barracks. The defendant seeks to suppress only the statements made before he signed the waiver of rights form.

The defendant also moved to suppress these statements in the stalking case before the Superior Court. After hearing the

evidence, the Court denied the motion to suppress and stated that:

> I'm satisfied from the totality of the circumstances that are before the Court that the defendant was fully advised of his Miranda rights; he fully understood each and every one of them; he freely, voluntarily without overreaching, coercion, promises, or threats by the police voluntarily waived these rights and agreed to speak with the police.

See Attachment I, Superior Court Judge's statement, pp. 325 - 328 State v. Stierhoff, P302-1892A, March 26, 2003.

According to the defendant, the earlier statements should be suppressed because "Mr. Stierhoff was read his Miranda rights, *then* arrested, placed in handcuffs and seated in the rear of a state police vehicle. While in the rear of the vehicle, without being asked whether he wished to waive his right to remain silent, Mr. Stierhoff was questioned by two Rhode Island State Police Detectives." (Memorandum at p.1)[1] (emphasis in original). The defendant "either denies that he was read his Miranda warnings, or that he was in such a state of shock and under such duress upon being arrested that the warnings were meaningless." (Memorandum at p.2). The government maintains that the defendant was told his Miranda rights prior to any questioning and voluntarily and knowingly waived those rights. Accordingly, all

[1] The term Memorandum refers to the Defendant's Memorandum In Support of Motion to Suppress Statements.



2045773.1

statements made by the defendant are admissible at trial.

Miranda warnings inform a suspect that he "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Dickerson v. United States, 530 U.S. 428, 435 (2000) (quoting Miranda v. Arizona, 384 U.S. 436, 479 (1966)). Contrary to the assertions made by the defendant, the government maintains that Mr. Stierhoff was given his Miranda rights after he was arrested and before he was questioned.

On the evening of April 12, 2002, police officers from the Rhode Island State Police (RISP) arrested the defendant for stalking, a state criminal offense under RI ST §11-59. The defendant was taken into custody and placed in the back of an RISP automobile parked in the Walgreen's parking lot.

Detective Timothy Sanzi, the arresting officer, testified twice in state court regarding the events surrounding the arrest and questioning of the Defendant. On March 25, 2003, Detective Sanzi provided the following testimony in Superior Court regarding the arrest of the defendant in Walgreen's Drug Store:

> Q. Once he entered the store what course of action did you take?
>
> A. I entered the store with Det. Dubeau and, I believe, Det. Fleming and observed [the victim] standing in the aisle waiting to purchase

something. I observed the defendant standing about ten or fifteen feet past the aisle looking like he was going to try to buy something or try to pick something out.

Q. At that point in time what did you then do?

A. We arrested the defendant.

Q. Now, when you say "arrested him," what course of–what course of action did you take to effectuate that?

A. Placed him in handcuffs.

Q. I'm sorry?

A. Placed him into handcuffs.

Q. And once you placed him in handcuffs what did you then do?

A. I exited from the store; put him in back of a State Police cruiser.

Q. Now with respect to the arrest that occurred at the store do you recall, besides yourself, if any other State Police members, State Police were with you?

A. Yes.

Q. Who was with you?

A. I believe Det. Fleming, Det. Studley, and Det. Palmer.

Q. When you approached the defendant in the store do you recall what you told him?

A. I just told him to place his hands behind his back.

Q. Did he do that?

A. Yes.

Q. Once he did that you say you took him out of the store?

A. Yes.

Q. Into the cruiser, is that correct?

A. That is correct.

Q. Once in the cruiser do you recall where -- if you entered the car?

A. Yes, sir. I sat next to him in the cruiser.

Q. Anybody else in the cruiser at that time?

A. Cpl. David Palmer was sitting in the front seat, front passenger.

Q. Once you entered that cruiser did you speak with the defendant?

A. I advised him of his Miranda rights.

Q. And when you say "advised of those rights" that is something that you had memorized?

A. No.

Q. How did you advise him of his rights?

A. Off a card that I have.

Q. And do you have that card with you today.

A. Yes, sir; I do.

* * * * * * *

Q. Detective, with respect to that rights card you testified that you read that card to the defendant?

A. Yes.

Q. When you read that card did you read it in its entirely?

A. Yes, I do.

Q. I note that there are two sides to that card. Did You read both sides of that card?

A. No, I read the side listed "Constitutional rights."

Q. With respect to the -- what is contained on the other side, what is that?

A. It is a right for use at the scene in a case of driving while intoxicated case.

Q. And after you read those rights in their entirety what did you then do?

A. I read the rights. I read the Constitutional rights, Your Honor.

* * * * * * *

Q. After you read those Constitutional rights what did you then do?

A. Mr. Stierhoff had acknowledged he understood his rights and we began to discuss what had transpired.

See Attachment J, Transcript of Superior Court testimony of Detective Sanzi, pp. 23-28.

At trial in the Rhode Island District Court in 2002, Detective Sanzi testified regarding the events of April 12, 2002. Such testimony mirrors his testimony before the Superior Court. Det. Sanzi testified that the defendant was given his Miranda rights in the police car. See Attachment K, Transcript of District Court testimony of Detective Sanzi, pp. 26-27 and 35. Detective Sanzi read the rights into the record:

> You have the right to remain silent, you do not have to give a statement or answer any questions, if you give up the right to remain silent anything you say can and will be used against you in a court of law, you have the right to the presence of a lawyer and to talk to a lawyer before and during any questioning, if you cannot afford a lawyer and you want one a lawyer will be appointed for you at no cost to you before any questioning, if you do talk to the police you can stop

> at any time, these are your constitutional rights. Do you understand them?

See Attachment K.

Following his arrest, the defendant was informed of his Miranda rights and voluntarily and knowingly waived those rights. Determining the validity of a Miranda waiver usually entails two separate inquiries. "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Moran v. Burbine, 475 U.S. 412, 421, (1986); accord United States v. Bezanson-Perkins, 390 F.3d 34, 39 (1st Cir. 2004). "Second, the waiver must have been made with a full awareness of both the right being abandoned and the consequences of the decision to abandon it." Id. Both inquiries are judged based on the "totality of the circumstances surrounding the interrogation." Moran v. Burbine, 475 U.S. at 421 (internal quotation omitted); United States v. Bezanson-Perkins, 390 F.3d at 40. The court's determination of the totality of the circumstances and the facts surrounding the particular case can include the background, experience and conduct of the accused. United States v. García, 983 F.2d 1160, 1169 (1st Cir. 1993).

In the instant case, the defendant was read his Miranda rights verbatim. Detective Sanzi testified that the defendant acknowledged that he understood his rights and proceeded to answer questions. The facts and circumstances of the waiver in

this case establish that the defendant's waiver of his Miranda rights was voluntary, intelligent, and knowing.

The defendant was 46 years old at the time of his arrest and possesses a Bachelor of Science Degree in Engineering from Brown University. At the time of his arrest, the defendant operated his own business by selling electronic testing equipment nationwide. His business had annual gross receipts of approximately $400,000 - $800,000 during 1998 through 2002. Given his age, education, experience, and intelligence, the defendant was capable of understanding his rights and the consequences of his decision to abandon it.

Although the defendant suggests that he "was in such a state of shock and under such duress upon being arrested that the warnings were meaningless" (Memorandum at p.2), the defendant does not allege any actions by the police that could constitute physical coercion or intimidation, nor was there any indication of conduct by the law enforcement agents that would amount to psychological coercion or intimidation. The totality of the circumstances surrounding the defendant's making statements to the police demonstrate that the defendant made an uncoerced choice to speak with law enforcement officers and had the requisite level of comprehension of his rights and the consequences of waiving those rights.

Even if, as the defendant suggests, the defendant was

advised of his Miranda rights immediately prior to his arrest, his waiver of those rights would still be valid. Miranda warnings are applicable not only upon arrest but whenever there is custodial interrogation.[2] The standard for determining whether an interrogation is custodial is whether "a reasonable person in the defendant's position would have understood himself to be subjected to restraints comparable to those associated with a formal arrest." Berkemer v McCarty, 468 U.S. 420, 441 (1984) This inquiry focuses upon the presence or absence of affirmative indications that the defendant was not free to leave. United States v. Mitchell, 966 F.2d 92, 98 (2d Cir. 1992). In this case, the defendant was approached by at police officers, handcuffed, escorted from the store, and placed in a police car. At no point would a reasonable person believe that he was free to leave. Even the scenario described by the defendant is such that the Miranda warnings were given to the defendant prior to any questioning of the defendant and before he answered any questions. Thus, the warnings were timely given and knowingly and voluntarily waived.

WHEREFORE, for the above-stated reasons, the defendant's Motion To Suppress Statements should be denied.

---

[2] Interrogation is either express questioning or a functional equivalent reasonably likely to elicit an incriminating response. Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980).

Respectfully submitted,
UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

/s/John N. Kane
JOHN N. KANE

/s/Thomas G. Voracek
THOMAS G. VORACEK
Trial Attorneys
U.S. Department of Justice

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed, with the Clerk of Court using the CM/ECF system, a true and accurate copy of the within Memorandum of Law in Support of Government's Objection to Defendant's Motion To Suppress Statements, which will in turn send notification to Scott A. Lutes, Attorney at Law, scottluteslaw@yahoo.com, and by regular mail, postage prepaid to Scott A. Lutes, Attorney at Law, 127 Dorrence Street, Providence, Rhode Island 02903, on this the 20th day of November, 2006.

/s/Thomas G. Voracek
Thomas G. Voracek