through the light at 44, taking a left to where Ms. Laboissiere went to Walgreen's.

Q Once her vehicle -- once she went to that Walgreen's were you able to observe the white van?

A Yes.

Q Where did you observe the white van go?

A The white van went to the adjacent parking lot where it turned around and pulled back into the Walgreen's parking lot.

Q And when it pulled in that parking lot where did it pull into with respect to Ms. Laboissiere's car?

A It was the same row. I had Ms. Laboissiere go into the store.

Q And after Ms. Laboissiere went into the store what did you then observe?

A I observed the defendant enter the store.

Q Once he entered the store what course of action did you take?

A I entered the store with Det. Dubeau and, I believe, Det. Fleming and observed Ms. Laboissiere standing in the aisle waiting to purchase something. I observed the defendant standing about ten or fifteen feet past the aisle looking like he was going to try to buy something, or try to pick something out.

Q At that point in time what did you then do?

**Attachment J**

A We arrested the defendant.
Q Now, when you say "arrested him," what course of -- what course of action did you take to effectuate that?
A Placed him in handcuffs.
Q I'm sorry?
A Placed him into handcuffs.
Q And once you placed him in handcuffs what did you then do?
A I exited from the store; put him in back of a State Police cruiser.
Q Now with respect to the arrest that occurred at the store do you recall, besides yourself, if any other State Police members, State Police were with you?
A Yes.
Q Who was with you?
A I believe Det. Fleming, Det. Studley, and Det. Palmer.
Q When you approached the defendant in the store do you recall what you told him?
A I just told him to place his hands behind his back.
Q Did he do that?
A Yes.
Q Once he did that you say you took him out of the store?
A Yes.
Q Into the cruiser, is that correct?
A That is correct.

Q Once in the cruiser do you recall where -- if you entered the car?
A Yes, sir. I sat next to him in the cruiser.
Q Anybody else in the cruiser at that time?
A Cpl. David Palmer was sitting in the front seat, front passenger.
Q Once you entered that cruiser did you speak with the defendant?
A I advised him of his **Miranda** rights.
Q And when you say "advised of those rights" that is something that you had memorized?
A No.
Q How did you advise him of his rights?
A Off a card that I have.
Q And do you have that card with you today?
A Yes, sir; I do.
MR. TRAVATO: May I approach the witness, Judge?
THE COURT: Yes.
MR. TRAVATO: May I see that card, please?
THE COURT: We're getting to another area, I think, in the case. I think I will recess at this point. I believe I have a meeting at 12:30, so I need to go to the meeting. We'll resume as close to quarter of two as we can.
MR. TRAVATO: I'm going to give the card back to

the officer.

(Court recessed at 12:07 P.M.)

**MARCH 25, 2003 P. M. SESSION**

(Court reconvened at 1:54 P.M.)

THE COURT: All right, detective, resume the stand, please. All right, let's proceed.

**DIRECT EXAMINATION BY MR. TRAVATO CONTINUES:**

Q Detective, you indicated that you brought those rights with you today?

A Yes; that is correct.

MR. TRAVATO: May I approach, Judge?

THE COURT: Yes, sir, at your pleasure. You don't need my permission.

MR. TRAVATO: Thank you, Judge.

Q Now, you presented me with a laminated card, correct?

A Yes.

MR. TRAVATO: Judge, may I have this be marked as State's -- I believe 6?

THE COURT: That may be the officer's only card. What we'll do is have that photocopied and have the photocopy marked so that the witness can have it back. Mr. Peso, you might want to go to the other room and use the copy machine, when you have a chance. You use the card for now. We'll substitute that for the photocopy.

MR. TRAVATO: Thank you.

(Shown to defense counsel)

Q Detective, with respect to that rights card you testified that you read that card to the defendant?

A Yes.

Q When you read that card did you read it in its entirety?

A Yes, I do.

Q I note there are two sides to that card. Did you read both sides of that card?

A No, I read the side listed "Constitutional rights."

Q With respect to the -- what is contained on the other side, what is that?

A It is a right for use at the scene in a case of driving while intoxicated case.

Q And after you read those rights in their entirety what did you then do?

A I read the rights. I read the Constitutional rights, Your Honor.

THE COURT: May I see them, please?

(Handed to the Court)

THE COURT: All right, thank you.

Q After you read those Constitutional rights what did you then do?

A Mr. Stierhoff had acknowledged he understood his rights and we began to discuss what had transpired.

Q Now, with respect to that card that you had with you today is that in substantially the same form as when you read those rights to the defendant or tha: ay in question, April 12th, 2002?

A Yes.

Q And has any change been made to that card that you see?

A No.

MR. TRAVATO: Judge, I'll ask that these rights, Constitutional rights, come in as State's -- again, I believe 6 full, or a photocopy thereof.

MR. PELTIER: I have objection to those in the case in chief. I have no problem with the Court reviewing

that as relates to the motion to suppress.

THE COURT: Well, was there an objection to having the photocopy of the card come in? I recognize you have an issue as to suppression of the statement. Even at trial, if you are unable to prevail on your Motion to Suppress pre-trial, at trial the defendant -- if I can use the vernacular -- gets a second bite at the apple. This way the factfinder, nonetheless, might find that the statement should be suppressed. Although this is a bench trial, we have little different circumstances thereby. If that is your objection, I will permit the officer to read into the record that which is on his card. I take it you have no objection?

MR. PELTIER: In that sense, Judge, I withdraw the objection to the card coming in.

THE COURT: All right. It will be marked a full exhibit, once we have a photocopy.

Q Once the defendant indicated that he understood those rights that you read to him what did you then do?

A Prepared to ask him why he was following this girl.

Q Did he respond to your questioning?

A Very hesitantly.

MR. PELTIER: Objection, Your Honor. The characterization of that question, simply, did he respond.

inside Walgreen's?
A Yes, walking in.
Q Who did you go in there with?
A I believe it was Det. Fleming, Det. Studley, Det. Dubeau.
Q Several of you went in the store, isn't that right, maybe five or six of you?
A I would say three or four.
Q Three or four?
A I don't think as many as six.
Q How many were in the parking lot?
A I don't know. Remainder of the people that were there, I'm sure.
Q How many was that?
A On that night it was ten, total.
Q Ten of them there?
A Yes.
Q When you entered the store you approached Mr. Stierhoff, is that right?
A Yes.
Q You were pleasant to Mr. Stierhoff; identified yourself as a trooper?
A Yes.
Q You didn't throw him down on the ground and put handcuffs on him?

A No.
Q You put his handcuffs on him, didn't you, inside the store; advised him at that time he was under arrest?
A Yes.
Q And cuffed him behind his back at that time, didn't you?
A Yes, sir.
Q Because you do that for safety and the safety of others, wouldn't you?
A Yes.
Q From that point it was the foursome of you took him out of Walgreen's?
A No; I walked him out.
Q You did it all alone?
A Yes.
Q And then you took him in a police cruiser, is that right?
A Yes. There was two other members that were in from patrol, marked cruisers.
Q Did you put him in a marked cruiser, or unmarked?
A Put him back in a marked cruiser, I believe.
Q Again he is cuffed at that point, isn't that right?
A Yes.
Q Now on your -- as you arrested him inside the Walgreen's that is where you advise him of his rights?
A No.

Q Advise him of his rights outside?
A In the car.
Q Inside the car you did that?
A Yes.
Q Do you remember testifying at District Court that after you read the defendant his rights you then placed him in a police vehicle? Do you remember that?
A That is my testimony there.
Q Different today?
A No, I did take him out of the car; put his handcuffs on in front. I know I read him his rights while in the car.
Q When did you take him out of the vehicle?
A Took him out of the vehicle in order to check him if he had anything on him.
Q You didn't do that after you put handcuffs on and brought him out; you didn't pat him down?
A I wanted to have a search; I did that in the store.
Q You didn't find anything on him there?
A His identification.
Q You found that, but you wanted to do a thorough search saying at this point so you took him back out of the car?
A Yes, sir. I also knew we're going to introduce a consent. He was going to have to sign it.