THE COURT: Unless you want to make some.

MR. PELTIER: Your Honor, no, Judge, not at this point.

THE COURT: When the defendant was arrested at the Walgreen's store the police already had a fair amount of information. They knew that Julie Laboissiere was a young college student who was working part time at the North Attleboro Staples store. They knew she was receiving unsolicited and unwanted cards and notes from an unknown older man who had never introduced himself to her; that he had just suddenly confronted her in the employee break room of the store and handed her a card and made some comment about her eyes in a complimentary fashion and left. Now, what may have been in her mind a flirtatious moment then turned into something quite beyond that. The poetry and the notes kept coming, to a point they were being deposited in her car door at her dormitory at Rhode Island College. Ms. Laboissiere never gave the defendant her name, or her address or telephone number, for that matter. I think there is a fair inference that the only way that this defendant could have gleaned her last name was from perusing a work sheet posted in the employee area of Staples, as was testified to during the course of the proceedings here.

**Attachment C**

Somewhere around Eastertime she received a card and poetry at her family residence, and by now she was frightened, upset and understandably so. She had done nothing to encourage this fellow, save to treat him cordially as she would any other Staples customer; and now he was reaching her not only at her job, but also by leaving notes in her car, all of which was unnerving, and very unnerving to her. He had, in her mind, invaded the privacy of her own residence and followed that up with a telephone call that was testified to by her mother. At no time did he ever identify himself, save for some obscure Email address on one of the cards that in no way identified him. At least on two occasions of several instances of unwanted attention the defendant was warned by Staples managers to cease bothering and lavishing attention on their employees. There is little doubt that the defendant knew full well that it was Julie Laboissiere who was the subject of those warnings and admonitions by the Staples managers. Indeed, a telephone call to the family residence, as testified to by her mother, proved conclusively that he knew precisely who he was being warned about. Eventually, one Staples manager got the license plate that the defendant was driving on his vehicle. The police traced it. They found his name, and eventually they identified

him at a storage facility and followed him to his residence. Several nights of surveillance transpired; and, on each of those nights the defendant was seen by the police officers leaving his residence, going to the Rhode Island College parking lot, driving up directly to Ms. Laboissiere's vehicle and then leaving the parking lot and driving directly home.

Eventually, the police officers set up -- to use the vernacular -- a "sting" operation on April 12th, 2002. And, I need not relate the entire nature of it. It's clear on the record that they had a detective or police officer in Ms. Laboissiere's vehicle, and she was instructed to leave the parking lot in her vehicle when the police told her to. Because the police knew that after the defendant left his house, eventually he would and did come to the parking lot of Rhode Island College, and per the "sting operation," she left and he followed. At some point the defendant was no longer seen following her vehicle, and Ms. Laboissiere was instructed to pull into a convenience store, Sam's store, or something like that, where she stayed for some several minutes, to a point where it might have been at least a half-hour, and then suddenly the defendant materialized. He had found her.

Obviously, it's clear that he was looking for her,

otherwise -- at least in the context of a probable cause hearing -- why else would he suddenly show up after being missing for some twenty minutes. Eventually, Ms. Laboissiere was directed to go to Walgreen's, where she parked and entered shortly thereafter. The defendant also parked his vehicle, and he entered that same store. He was arrested. There is no question in my mind, Mr. Peltier, that the police had more than just probable cause. They had clear evidence and indication of a stalking violation. They had every right and reason to arrest this man. The motion to dismiss on those grounds is denied.

We come to the issue, then, of whether or not evidence and the statement should be suppressed. Let's start with the statement. The evidence before the Court indicates that this defendant was advised of his so-called **Miranda** rights on at least two occasions shortly after he was an arrested. He was advised of his rights at the cruiser. He was handcuffed at the time. And later at the police station he was further admonished of his rights. On that occasion a rights form was used, which he signed. The defendant made certain statements in the cruiser after having been admonished of his rights. He gave a lengthier statement at the police station. A tape-recorded, redacted version