or detract from the voluntariness of his statement. The police in no way mistreated him. The fact that he was handcuffed is simply a factor but nonetheless in no way does it rise to any level of coercion by way of creating an involuntary statement in my mind. The police did not raise their voices. It is fairly clear to me that the defendant had every desire to speak with these officers. The fact that it happened to run late into the evening does not diminish the voluntariness of the defendant's statements at the police station. At no time is there any indication that this defendant indicated that he did not understand or did not want to proceed, or somehow was incoherent, or on drugs or medication, or too tired to go forward. He continued to speak and speak freely, in my view.

I'm satisfied from the totality of circumstances that are before the Court that the defendant was fully advised of his **Miranda** rights; he fully understood each and every one of them; he freely, voluntarily without overreaching, coercion, promises, or threats by the police voluntarily waived those rights and agreed to speak with the police. The motion to suppress the statements is denied.

We come to the issue of whether or not the defendant can prevail on his motion to suppress evidence

**Attachment D**

based upon the consent to search. It's memorialized in documents that he signed. He signed that at the scene in the cruiser. He was handcuffed, as he was during the course of his comments to the police officers that I have already ruled are admissible. The same types of findings I made in connection with the **Miranda** issue attend and obtain in the consent to search setting, as well. I'm satisfied that this defendant clearly and fully read the consent form, which apprised him of his rights in connection with that search of his residence. It was freely given, in my view. And, I'm satisfied beyond any doubt that it was freely given. In fact, the only condition that the defendant placed upon the officers was that, in connection with the search of the residence, the officers not disturb the defendant's housemates. When they got to the residence, it was the defendant who unlocked the residence with his own keys. As it turned out it was his male housemate who became loud and disruptive, hollering, screaming, telling the defendant to withdraw his consent to search. According to the evidence before me the defendant's only response to this disruptive behavior by his housemate was to tell the officers to go ahead and finish whatever they needed to do. At no time did he ever demand that the officers cease their search. The fact that the consent form

identifies Officers Sanzi and Palmer as the officers who searched in no way diminishes the fact that consent was freely given and, the fact that Sanzi and Palmer enlisted the assistance of other officers is of no moment at all. Consent was freely given by the defendant for State Police officers to search. Indeed, as I said, the defendant himself unlocked the door in the presence of those officers. At no time did he indicate that other officers could not come in with Sanzi and Palmer. In addition, the defendant knew that the officers would be particularly interested in his computer, because the defendant had earlier told them that his computer contained material like the cards and verses that have been the subject of the unwanted deliveries to Ms. Laboissiere. Indeed, in his residence the defendant expressly and explicitly pointed out to the officers the computer, and the computer was taken. Then, as we just heard from Special Agent Donahue, with his forensic technology, he was able to obtain the material from that hard drive and prepare a CD containing what is now the subject of Exhibit 12 before the Court.

The search was a freely consented-to search; consent was freely given by this defendant. And I'm satisfied that the officers did not overreach in any way and that the materials that the State has provided as a

result of that search in no way should be suppressed, including the disks, including the material generated from that disk which is Exhibit 12, along with any other material that Det. Sanzi said he printed from that disk.

Other than the issue of dismissal for unconstitutional grounds I think I have covered all pre-trial motions, Mr. Peltier.

MR. PELTIER: You have, Your Honor.

THE COURT: That being so, the motion to suppress having been denied, what exhibits does the State have that have been marked for identification only. Let us take a look at those; see what we have left.

MR. TRAVATO: Your Honor, I believe that the exhibits that have marked for identification only at this time are -- strike that -- from State's 11 through State's 13, State's 11 being the actual tape recording of the statement, State's 12 being the information that was printed by Det. Sanzi, State's 13 being the envelope containing the actual CD that was provided by Special Agent Donahue, and, Your Honor, I believe State's 10 the actual statement written as full. I will just make sure State's 10, which is a print-out of the statement is full and, Your Honor, State's 8 which is a consent to search form was marked for identification. I will ask that that come in full.