Q Once in the cruiser do you recall where -- if you entered the car?
A Yes, sir. I sat next to him in the cruiser.
Q Anybody else in the cruiser at that time?
A Cpl. David Palmer was sitting in the front seat, front passenger.
Q Once you entered that cruiser did you speak with the defendant?
A I advised him of his **Miranda** rights.
Q And when you say "advised of those rights" that is something that you had memorized?
A No.
Q How did you advise him of his rights?
A Off a card that I have.
Q And do you have that card with you today?
A Yes, sir; I do.

MR. TRAVATO: May I approach the witness, Judge?

THE COURT: Yes.

MR. TRAVATO: May I see that card, please?

THE COURT: We're getting to another area, I think, in the case. I think I will recess at this point. I believe I have a meeting at 12:30, so I need to go to the meeting. We'll resume as close to quarter of two as we can.

MR. TRAVATO: I'm going to give the card back to

**Attachment E**

the officer.

(Court recessed at 12:07 P.M.)

**MARCH 25, 2003 P. M. SESSION**

(Court reconvened at 1:54 P.M.)

THE COURT: All right, detective, resume the stand, please. All right, let's proceed.

**DIRECT EXAMINATION BY MR. TRAVATO CONTINUES:**

Q Detective, you indicated that you brought those rights with you today?

A Yes; that is correct.

MR. TRAVATO: May I approach, Judge?

THE COURT: Yes, sir, at your pleasure. You don't need my permission.

MR. TRAVATO: Thank you, Judge.

Q Now, you presented me with a laminated card, correct?

A Yes.

MR. TRAVATO: Judge, may I have this be marked as State's -- I believe 6?

THE COURT: That may be the officer's only card. What we'll do is have that photocopied and have the photocopy marked so that the witness can have it back. Mr. Peso, you might want to go to the other room and use the copy machine, when you have a chance. You use the card for now. We'll substitute that for the photocopy.

MR. TRAVATO: Thank you.

(Shown to defense counsel)

Q Detective, with respect to that rights card you testified that you read that card to the defendant?

A Yes.

Q When you read that card did you read it in its entirety?

A Yes, I do.

Q I note there are two sides to that card. Did you read both sides of that card?

A No, I read the side listed "Constitutional rights."

Q With respect to the -- what is contained on the other side, what is that?

A It is a right for use at the scene in a case of driving while intoxicated case.

Q And after you read those rights in their entirety what did you then do?

A I read the rights. I read the Constitutional rights, Your Honor.

THE COURT: May I see them, please?

(Handed to the Court)

THE COURT: All right, thank you.

Q After you read those Constitutional rights what did you then do?

A Mr. Stierhoff had acknowledged he understood his rights and we began to discuss what had transpired.

Q Now, with respect to that card that you had with you today is that in substantially the same form as when you read those rights to the defendant on that day in question, April 12th, 2002?

A Yes.

Q And has any change been made to that card that you see?

A No.

MR. TRAVATO: Judge, I'll ask that these rights, Constitutional rights, come in as State's -- again, I believe 6 full, or a photocopy thereof.

MR. PELTIER: I have objection to those in the case in chief. I have no problem with the Court reviewing

that as relates to the motion to suppress.

THE COURT: Well, was there an objection to having the photocopy of the card come in? I recognize you have an issue as to suppression of the statement. Even at trial, if you are unable to prevail on your Motion to Suppress pre-trial, at trial the defendant -- if I can use the vernacular -- gets a second bite at the apple. This way the factfinder, nonetheless, might find that the statement should be suppressed. Although this is a bench trial, we have little different circumstances thereby. If that is your objection, I will permit the officer to read into the record that which is on his card. I take it you have no objection?

MR. PELTIER: In that sense, Judge, I withdraw the objection to the card coming in.

THE COURT: All right. It will be marked a full exhibit, once we have a photocopy.

Q Once the defendant indicated that he understood those rights that you read to him what did you then do?

A Prepared to ask him why he was following this girl.

Q Did he respond to your questioning?

A Very hesitantly.

MR. PELTIER: Objection, Your Honor. The characterization of that question, simply, did he respond.

THE COURT: Well, I will permit that response. You may continue.

Q What was his response?

A His response at first was "I have no idea." And then he stated why he had been following her for sometime; acknowledged he was aware that, you know, he had an interest in this girl, some type of connection with her.

Q And did you make any further inquiry at that time?

A Yes. He had stated that he felt there was some type of connection between him and her and now we just -- he didn't seem to the understand exactly or have any type normal explanation why he did these extremes.

Q Did you inquire further?

A Yes. I asked him normally you would introduce yourself to someone and speak to them.

MR. PELTIER: Objection, Judge.

THE COURT: What is the objection?

MR. PELTIER: What is normal.

THE COURT: This is what you said to the defendant?

THE WITNESS: Yes, Your Honor.

THE COURT: Overruled. Continue.

A I said normally you introduce yourself to someone, maybe give them a telephone number. This girl is terrified.

Q Did he respond to you?

A He stated that he knew that his advances were unwanted,

but that he continued with them.
Q I'm sorry with --
A He knew his advances were unwanted but he continued with them.
Q After he told you this what did you then do?
A We obtained his identification that he had on him. He had numerous identifications along with a New York State driver's license. In the picture he appeared much heavier. His appearance was slightly different on his license.
Q After you obtained this information what did you then do?
A We requested from him we're going to need a consent -- have his consent to look in his apartment.
Q And, did he respond to you?
A Yes.
Q What did he tell you?
A He acknowledged that he would give a consent when he stated that these poems -- I had asked if they were generated on his computer. He stated they were, and we stated we would like to look at the computer.
Q What was his response?
A He acknowledged, which at first he did not acknowledge his residence. We then told him -- I told him, "Look, we have been following you for a week. We know where