# UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)
Dell precision workstation, Model 530 MT, serial number J98DQ01, with Intel Xeon 1.70 Gigahertz processor

corrected
## SEARCH WARRANT

CASE NUMBER: 1:02-M-54LD

TO: Any Authorized Agent of the IRS and any Authorized Officer of the United States

Affidavit(s) having been made before me by ROBERT A. FERRARO (Affiant) who has reason to believe that ☐ on the person of or ☐ on the premises known as (name, description and/or location)

Dell precision workstation, Model 530MT, serial number J98DQ01, with Intel Xeon 1.70 Gigahertz processor

in the District of Rhode Island there is now concealed a certain person or property, namely (describe the person or property)

See attachment A

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before 05-12-2002 (Date)

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime -- 6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to ROBERT W. LOVEGREEN (U.S. Judge or Magistrate Judge) as required by law.

Attest: True Copy, DAVID A. DIMARZIO

May 2, 2002 3:30PM at PROVIDENCE, RHODE ISLAND
Date and Time Issued — City and State

ROBERT W. LOVEGREEN
U.S. MAGISTRATE JUDGE
Name and Title of Judicial Officer

Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

**Attachment H**

| RETURN | | CASE NUMBER: |
|---|---|---|
| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
| INVENTORY MADE IN THE PRESENCE OF | | |
| INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT | | |

## CERTIFICATION

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

Subscribed, sworn to, and returned before me this date.

U.S. Judge or Magistrate Judge    Date

# ATTACHMENT A

Any and all evidence of the violations of 26 U.S.C. §§ 7201 and 7203, in that the computer contains financial records, including records pertaining to Neil Steirhoff and his businesses, including Adams Associates, Universal Audio, and his aliases, including, JA, Joe Adams, Joseph Adams and Jos. P. Mulaney and directories labeled "offshore" and "money laundering."

AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

DISTRICT OF RHODE ISLAND

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

Dell Precision workstation, Model 530 MT, serial number J98DQ01, with Intel Xeon 1.70 Gigahertz processor

corrected
## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

CASE NUMBER: 1:02-M-54L0

I ROBERT A. FERRARO being duly sworn depose and say:

I am a(n) SPECIAL AGENT WITH THE IRS and have reason to believe
Official Title

that ☐ on the person of or ☐ on the property or premises known as (name, description and/or location)
Dell precision workstation, Model 530MT, serial number J98DQ01, with Intel Xeon 1.70 Gigahertz processor

in the District of RHODE ISLAND
there is now concealed a certain person or property, namely (describe the person or property to be seized)
SEE ATTACHMENT A

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
Rule 41(b)(1), (2), and 3

concerning a violation of Title 21 code, Section(s) 7201 and 7203.
The facts to support a finding of Probable Cause are as follows:
SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof. ☒ Yes ☐ No

Robert Ferraro
Signature of Affiant

Sworn to before me, and subscribed in my presence

May 2, 2002 at PROVIDENCE, RHODE ISLAND
Date City and State

ROBERT W. LOVEGREEN, U.S. MAGISTRATE JUDGE
Name and Title of Judicial Officer

Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

# ATTACHMENT A

Any and all evidence of the violations of 26 U.S.C. §§ 7201 and 7203, in that the computer contains financial records, including records pertaining to Neil Steirhoff and his businesses, including Adams Associates, Universal Audio, and his aliases, including, JA, Joe Adams, Joseph Adams and Jos. P. Mulaney and directories labeled "offshore" and "money laundering."

# UNITED STATES DISTRICT COURT
# RHODE ISLAND DISTRICT

corrected
## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

IN THE MATTER OF SEARCH WARRANT
**OF Dell precision Workstation, Model 530MT, serial Number J98DQ01, with Intel Xeon 1.70 Gigahertz processor.**

I, Robert A. Ferraro, do under oath depose and say that:

## I. INTRODUCTION

1. I am a Special Agent employed by the Internal Revenue Service-Criminal Investigation. I have been a Special Agent with the Internal Revenue Service-Criminal Investigation for the past 18 years. I am currently assigned to the Warwick, Rhode Island Post of Duty of the Internal Revenue Service-Criminal Investigation.

2. This affidavit is submitted in support of a Search Warrant to search a computer system more particularly described as **Dell Precision Workstation, model 530 MT, serial number J98DQ01, and Intel Xeon 1.70 Gigahertz processor** (the "Computer System").

3. I base this affidavit on information supplied to me by Detective Timothy Sanzi of the Rhode Island State Police, my review of written records and statements of other officers, my own investigation and training, as well as technical assistance and information from Special Agent James Donahue of the Internal Revenue Service-Criminal Investigation, who has specialized computer and tax investigation training and experience.

4. Authorization is sought to search the Computer System for computer images and other Forms of Information (as that term is defined herein) consisting of or pertaining to images of business transactions and any other images and/or Forms of Information relating to the production of business records including personal financial records.

5. The Computer System, including its hardware, software, documentation, passwords, and data security devices may be important to an ongoing criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of a crime, and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data). Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize items that are (1) instrumentalities, fruits, or evidence of crime; or (2) storage devices for information about crimes.

## II. HISTORY OF INVESTIGATION

6. On Friday April 12, 2002, the Rhode Island State Police arrested Neil Stierhoff at the Walgreen's store located in Centerdale, Rhode Island. Arrested suspect Neil Stierhoff was read his Miranda Rights, which Stierhoff said he understood. Stierhoff was arrested for stalking a young woman.

Stierhoff also signed a written consent to search and seize his residence at 25 Hollywood Road, Providence, Rhode Island.

7. Stierhoff told Detective John Killian that he is operating a business under the alias name of Joe Adams, and that he had never paid State or Federal income taxes.

8. During the consent search of Stierhoff's residence, a large sum of United States currency was found. The amount was approximately $147,000. This currency was contained in a briefcase and Stierhoff stated that this money was his savings from his business ventures.

9. Stierhoff indicated that he had various customers and used the Internet web site "Ebay" for sales under the name JA. Stierhoff also told Detective John Killian that he used his computer in his business.

10. Stierhoff also told Detective Killian that the poems he wrote to the young woman he was charged with stalking were contained on his computer. Stierhoff told Detective Killian that the poems were located on the "D: drive", under the "My files, creative writing" directories. As a result, Detectives John Killian and Timothy Sanzi obtained Stierhoff's consent and seized Stierhoff's computer as described in paragraph 2. This computer was located in Stierhoff's room. Due to the high-tech capabilities of Stierhoff's computer, Detective Sanzi advised that the computer would have to be processed by a Federal agency for evidence, and Stierhoff agreed.

11. Detective Killian then seized the Computer System, **Dell Precision Workstation, model 530 MT, serial number J98DQ01, with and Intel Xeon 1.70 Gigahertz processor.**

12. Stierhoff also consented to a search of three storage units located at Shelby Self Storage, 879 Waterman Avenue, East Providence, Rhode Island.

13. During the search of the storage unit, Detective John Killian observed boxes of computer and electronic equipment. In addition, several boxes of financial records of Stierhoff's business were also found in the storage units.

14. While at the storage facility, Stierhoff again admitted that he has never paid State or Federal income taxes on his businesses. From this location, one box labeled "Papers and sales books 7-10-2001" containing 22 Sales Journals were seized.

15. After the Computer System and one box labeled "papers and sales books 7-10/2001" containing 22 Sales Journals were seized, they were transported to the Rhode Island State Police barracks in Scituate, Rhode Island.

16. On April 15, 2002, Special Agent Robert Ferraro received a telephone call from Timothy Sanzi of the Rhode Island State Police. Detective Sanzi advised that Stierhoff admitted to not filing a State or Federal income tax return since the 1980's.

17. Detective Stanzi also advised that Stierhoff admitted to operating a computer business under the names "Adams Associates" and "Universal Audio". Steirhoff has also rented vehicles under the name of Global Corp. Service.

18. Detective Sanzi advised that Stierhoff has a Fleet bank account (#041-3760790) in the name of Joseph Adams. During the consent search of Stierhoff's residence, officers found a bank statement dated 07/16/01 listing on it a beginning balance of $1 million dollars and an ending balance of over $1 million dollars. Stierhoff admitted that he uses the name Joseph Adams as an alias.

19. Special Agent Ferraro responded to the Rhode Island State Police barracks in Scituate, Rhode Island. Special Agent Ferraro was given copies of documents taken from Stierhoff, which included a New York State driver's license, various credit cards, bank statements and cancelled checks in the name of Joseph Adams.

20. In addition, there was a telephone bill from Verizon Telephone, listing the name Jos P. Mulvaney, address 25 Hollywood Rd, Providence, RI 02909. Stierhoff admitted that Mulvaney had moved from this address approximately ten years ago. Stierhoff admitted to maintaining this account under the name Mulvaney. Also copied was a Sprint billing invoice under the name Universal Audio, 25 Hollywood Rd, Providence, RI.

21. In addition, there were 9 notebooks containing business sales records and 13 other notebooks containing various business records. These records dated back to the year 1994 and continued to the year 2002. During this time between 1994 and 2002, approximately 3,900 entries were made in the Daily Sales Record books. Each entry contains: *(Qt., Equipment MFR and Model, Serial Number, Unit Sell Price, Buyer, P.O. Number, Date, Location, ShipVIA, Date Shipped, UPS Number, Weight and Invoice.* In order to determine the yearly sales figure I totaled up the sales records for the years 1999 and 2000. The total sales exceed $550,000 for the year 1999. The total sales exceed $360,000 for the year 2000.

22. On April 16, 2002, at the request of the Rhode Island State Police, Special Agent James Donahue and Special Agent Robert Ferraro went to the Rhode Island State Police barracks in Scituate, Rhode Island to assist the State Police in their investigation. Special Agent James Donahue attempted to copy the computer's hard drives. However, after attempting to copy the computers hard drive Special Agent Donahue realized that other equipment would be required. During this attempt, Special Agent Donahue came across a directory name (1) "Offshore" and included in that directory were sub-directories with the names of various countries and places including Cuba, Europe, Crenada [sic], Belize, Switzerland, Citize [sic] and others. In addition, there existed a directory "moneylaundering" [sic].

23. According to a search of Internal Revenue Service databases, Steirhoff has not filed a federal individual income tax return during the period from 1996 through the present.

## III. THE CRIMINAL OFFENSES

23. Your affiant has personally conducted or assisted in numerous investigations of alleged criminal violations of the Internal Revenue Service laws, Bank Secrecy Act and the Money Laundering Control Act, many of which resulted in criminal convictions. Your affiant is familiar with the legal requirements for filing federal income tax returns, and I am familiar with the statute, 26 U.S.C. § 7203, which makes it a crime to willfully fail to file a tax return and with 26 U.S.C. §7201, which makes it a crime to willfully evade income tax. In general, during the period from

1996 to the present, any individual operating a business that had annual net earnings from self-employment of $400 or more was required to file an individual federal income tax return.

24. There is probable cause to believe that Stierhoff has willfully failed to file a tax return during the period from 1996 through the present and that during that same period of time he took affirmative steps to hide his income from the Internal Revenue Service and willfully evaded income tax. The facts that support probable cause may be summarized as follows:

- Stierhoff is operating a business that is generating a substantial amount of income, in excess of that necessary to require him to file a federal income tax return;
- Stierhoff's total sales for a two year period exceed $900,000;
- Stierhoff has cash in his residence totaling approximately $147,000, which Stierhoff admitted were the proceeds of his business ventures;
- Stierhoff admitted that he has not filed state or federal income tax returns;
- Stierhoff uses a bank account under a fictitious name, which has over one million dollars in it;
- Stierhoff is using a fictitious name to run his business;
- Stierhoff is maintaining a telephone account under an alias name;
- Stierhoff has a directory in his computer named "Offshore,"
- Stierhoff has a directory in his computer named "MoneyLaundering."

24. There is also probable cause to believe that there is presently concealed within the computer to be searched, that is, the **Dell Precision Workstation, model 530 MT, serial number J98DQ01, and Intel Xeon 1.70 Gigahertz processor,** evidence of the violations of 26 U.S.C. §§ 7201 and 7203, in that the computer contains financial records, including records pertaining to Neil Steirhoff and his businesses, including Adams Associates, Universal Audio, and his alieases, including, JA, Joe Adams, Joseph Adams and Jos. P. Mulaney and directories labeled "offshore" and "moneylaundering."

## IV. DEFINITIONS

25. The term computer, as used herein, is defined pursuant to Title 18, United States Code, Section 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly relating to or operation in conjunction with such device."

26. The following definitions related to computer equipment are applicable herein:
*Computer hardware consists of all equipment which can collect, analyze, create, display, convert,*

*store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes (but is not limited to) any data-processing devices (such as central processing unit,); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, transistor-like binary devices, and other memory storage devices), and related communications devices (such as modems, cables and connections, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks).*

*Computer software is digital information that can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like word-processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.*

*Computer-related documentation consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, software, or other related items.*

*The terms "records, "documents" and "materials" include all of the foregoing items of evidence in whatever form and by whatever means such records, documents, or materials, their drafts, or their modifications may have been created or stored, including (but not limited to) any handmade form (such as writing, drawing, painting, with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); any mechanical form (such as phonograph records, printing, or typing), any electrical, electronic, or magnetic form (such as tape recordings, cassettes, compact discs, or any information on an electronic or magnetic storage device, such as floppy diskettes, hard disks, backup tapes, CD-ROMs, optical discs, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as printouts or readouts from any magnetic storage device).*

## 27. COMPUTER INVESTIGATIVE SPECIALIST

During the course of this investigation, your Affiant has consulted with other Special Agents in the office, including Special Agent James Donahue, one of the four Computer Investigative Specialists ("CIS") assigned to the Boston Field Office of Criminal Investigation.
Special Agent Donahue is a Special Agent with Criminal Investigation of the Internal Revenue Service and has been so employed since January of 1988. He has received extensive training in the area of Seized Computer and Evidence Recovery (SCER) at the Federal Law Enforcement Training Center (FLETC) located in Glynco, GA. The training he has received includes the planning, preparation, and execution of search warrants involving computers and related equipment, electronic data preservation, and the recovery, documentation, and authentication of computer evidence. As a CIS, Special Agent Donahue has assisted in the preparation and execution of numerous state and federal search warrants involving computers, including their seizure and subsequent forensic examination for evidence. Special Agent Donahue has also received advanced computer forensic training at the University of North Texas in Denton, Texas, and at the United States Customs Service Cyber Smuggling Center in

Fairfax, Virginia. He has also attended numerous other in-service computer training courses. Special Agent Donahue also serves as a computer instructor for the Special Agents and other employees in the Boston Field Office and has assisted other law enforcement agencies and departments in computer evidence seizure and recovery issues.

**28. NECESSITY FOR OFF-SITE EXAMINATION OF COMPUTERS**

Special Agent Donahue has informed me that to properly retrieve and analyze all electronically stored (computer) data, to document and authenticate such data, and to prevent the loss of the data either from accidental or deliberate programmed destruction, preliminary on-site analysis (and subsequent detailed off-site laboratory analysis) is required by a qualified computer specialist. Effecting such accurate and complete analysis requires the seizure of all computer equipment and peripherals which may be interdependent, the software to operate the computer system, and the related instruction manuals which contain directions concerning the operation of the computer system and the software programs. The need to seize the all of the interdependent computer equipment is based upon the following:

(a): *The Volume of Evidence:*
Special Agent Donahue has advised me that computer storage devices such as floppy diskettes, Jaz disks, hard disk drives, magnetic tapes, laser disks, and the like can store the equivalent of thousands of pages of information. For example, a one hundred megabyte (100MB) hard drive would have the capacity for storing approximately 50,000 pages of typewritten, double-spaced text. However, Special Agent Donahue has further advised your Affiant that the majority of computers currently sold have at a minimum, one gigabyte (1000MB) hard drives or larger, with an equivalent capacity in excess of 500,000 pages of typewritten, double-spaced text.

(b): *Technical Requirements:*
Based upon Special Agent Donahue's experience, when a user wants to conceal criminal evidence, he/she often stores it in random order with deceptive file names. This requires that the agents conducting the search examine all the stored data to determine which particular files are relevant and fall within the scope of the warrant. This search process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on-site.
With respect to this latter part of the search, the analysis of electronically stored data, whether performed on-site or in a laboratory or other controlled environment, may entail any or all of several different techniques. Such techniques may include, but are not limited to, surveying the various file directories and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer capable of containing pertinent files in order to locate the evidence and instrumentalities authorized for seizure by the warrant); "opening" the file or reading the first few "pages" of such files in order to determine their precise contents; scanning storage areas to discover and possibly recover recently deleted data; scanning ostensibly unused storage areas for deliberately hidden files; or performing electronic "key-word" searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.
Special Agent Donahue has further advised your Affiant that searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled

environment. He has also advised your Affiant that data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to facilitate the recovery of even hidden, erased, compressed, password protected, or encrypted files. Special Agent Donahue states that many commercial computer software programs also save data in unique formats that are not conducive to standard data searches. Some programs that he has encountered create temporary "print files" for the generation of hard-copy printouts. The software program then automatically deletes these print files (after a predetermined time set by the computer user), with the remaining data being then compressed into a format that is not viewable with standard utility software programs.

Since computer evidence is extremely vulnerable to tampering or destruction (both from external sources or from destructive codes embedded in the system as a "booby trap", a controlled environment is essential to a complete and accurate analysis. In order to fully retrieve data from a computer system, the analyst needs to seize all magnetic storage devices, as well as the centralized processing units (CPU's) in order to search them in a laboratory or controlled environment.

In light of these concerns, your Affiant hereby requests the Court's permission to seize the computer hardware (and related peripherals) that are believed to contain some or all of the evidence described in the warrant, and to conduct an off-site search of the hardware for the evidence described. Furthermore, your Affiant, to the extent practical, will make available to the concerned individuals "bit-stream" or "cloned" copies of the computer(s) hard-drive(s) within a reasonable amount of time after the execution of the search warrant to minimize any impact that said seizures may have on their personal and financial operations. If after inspecting the computer system, including all input-output devices, system software, and instruction manuals, the Computer Investigative Specialist determines that these items are no longer necessary to retrieve and preserve the computer evidence, your Affiant will return those items as soon as practicable.

## V. CONCLUSION

WHEREFORE, we are respectfully requesting Court permission to search the Computer System, that is, the **Dell Precision Workstation, model 530 MT, serial number J98DQ01, and Intel Xeon 1.70 Gigahertz processor,** for any and all evidence of the violations of 26 U.S.C. §§ 7201 and 7203, in that the computer contains financial records, including records pertaining to Neil Steirhoff and his businesses, including Adams Associates, Universal Audio, and his alieases, including, JA, Joe Adams, Joseph Adams and Jos. P. Mulaney and directories labeled "offshore" and "moneylaundering."

Robert A. Ferraro
Robert A. Ferraro
Special Agent, IRS-CI

Subscribed and sworn to before me
this 24 May, 2002.

Robert W. Lovegreen
ROBERT W. LOVEGREEN
UNITED STATES MAGISTRATE JUDGE