**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR. No. 06-0042ML** |
| | : | |
| **NEIL STIERHOFF** | : | |

**SUPPLEMENTAL MEMORANDUM OF LAW**
**IN SUPPORT OF GOVERNMENT'S OBJECTION TO**
**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

The United States of America, by and through its undersigned attorneys, respectfully submits this Supplemental Memorandum of Law in Support of Government's Objection to Defendant's Motion to Suppress Evidence.

The Court invited the parties to submit supplemental briefing concerning whether the government, assuming the consent to search defendant's computer was limited in scope to the "Creative Writing" folder pertaining to the state stalking charges,[1] nevertheless had authority to search and seize under the "plain view" doctrine the "Offshore" file folder prior to seeking a warrant for a search of the entire computer. Even though the government did seek and obtain a search warrant prior

[1] For the reasons discussed in our prior briefs, the consent to search defendant's computer was not limited in scope. The Detectives testified that defendant never limited the scope of the search, but merely informed the detectives where they would find the poems he had written to stalking victim (i.e., the "Creative Writing" folder).

to the search of defendant's entire computer, the IRS's forensic computer specialist saw in plain view the "Offshore" file folder while retrieving the state-related evidence, and then viewed its contents – some, though not all, of which Special Agent Robert Ferraro proffered in his search warrant affidavit.

Defendant asserts that viewing the contents of the "Offshore" file folder was beyond the scope of his consent to search, otherwise not authorized, and, thus, constitutionally unreasonable. Accordingly, because the search warrant affidavit is supported by illegally-obtained evidence, defendant contends that the computer evidence seized pursuant to the warrant should be suppressed.

For the reasons set forth more fully below, defendant's motion to suppress the computer evidence should be denied because: (1) Having seen in "plain view" the "Offshore" file folder plainly incriminating on its face, Special Agent James Donahue was authorized to "seize" this evidence and view its contents; and (2) even if viewing the contents of the "Offshore" file folder was unauthorized, the Court may judicially excise from the search warrant affidavit references to information found on defendant's computer - an affidavit nevertheless supported by probable cause.

**FACTUAL BACKGROUND**

The Rhode Island State Police ("RISP") executed a search of the defendant's residence on April 12, 2002, pursuant to his written consent. Only a short time before the search, the defendant was arrested for stalking, a state criminal offense under RI ST §11-59.

On April 12, 2002, at 11:30 p.m., several RISP detectives and officers, including Det. Sanzi, Corp. Palmer, and Det. John Killian, executed a search at 25 Hollywood Road, Second Floor, Providence, Rhode Island. The defendant accompanied the RISP to the residence and used his key to gain access to his locked room on the second floor. The RISP made no attempt to gain access to other parts of the house.

Among other things, the RISP observed a computer in defendant's room. The defendant had stated that most of the poems he wrote to the victim were generated on the computer. Defendant consented to the search and seizure of his computer.

On April 15, 2002, Detective Sanzi called Internal Revenue Service ("IRS") Special Agent Robert Ferraro seeking federal assistance for the examination of Mr. Stierhoff's computer. At the time, as Special Agents Robert Ferraro and James Donahue testified, it was common practice for the IRS to lend its high tech computer analysis capabilities to local law enforcement. At the time, as Detective John Killian testified, the Rhode Island

state police did not have the forensic capabilities to examine Mr. Stierhoff's very sophisticated computer. Accordingly, the IRS agreed to assist the Rhode Island state police in examining Mr. Stierhoff's computer.

On April 16th, 2002, Special Agent Donahue, computer specialist for the IRS, attempted to analyze Mr. Stierhoff's computer and sought to create an "image" of its hard drive while at the Rhode Island police barracks. Because of the computer's sophistication, he was unable to conduct this analysis or create an image while on site. With the state's permission, he took Mr. Stierhoff's computer into custody, and back to his office in Boston where he had better diagnostic tools to complete the analysis.

On April 26-28, 2002, Special Agent Donahue was able to create a "logical copy" of Mr. Stierhoff's hard drive. As he was retrieving the contents of the "MyFiles\Creative Writing" subdirectory for the Rhode Island police, he observed a folder called "Offshore," also within the "MyFiles" directory, just beneath the "Creative Writing" folder. <u>See</u> Exhibit D-1. According to Special Agent Donahue, this was clearly incriminating evidence of tax crimes on its face because people who evade taxes often seek to hide money offshore. Special Agent Donahue then opened the "Offshore" file folder, and observed additional subdirectories with names of countries such as "Cuba,"

"Europe," "Belize," "Switzerland" and others. Special Agent Donahue also observed a subdirectory called "Moneylaundering." See Exhibit D-1; Exhibit C-4 (¶¶ 22, 24). Special Agent Donahue did not open any of the files or subdirectories within the "Offshore" file folder. He retrieved the information from the Creative Writing folder for the RISP, then terminated his search until the search warrant for the computer was obtained.

On April 30, 2002, a search warrant for Mr. Stierhoff's computer was sought and obtained. On May 2, 2002, a second warrant for the computer was obtained in order to correct a typographical error in the first warrant.

Special Agent Robert Ferraro proffered in his affidavit supporting the warrant substantial facts indicating that Mr. Stierhoff had committed tax crimes. The evidence proffered included statements made by Mr. Stierhoff and evidence obtained during his arrest on April 12, 2002, such as: (1) the existence of $147,000 in cash in Mr. Stierhoff's bedroom; (2) his statement that he never paid federal or state taxes; (3) the statement that he used "Joseph Adams" as a business alias; and (4) a bank statement indicating he had over $1 million on account. In addition, the affidavit noted that Mr. Stierhoff admitted that he used his computer to conduct business, including over the internet on "Ebay." Finally, Special Agent Ferraro conducted an independent investigation and found that the defendant had not

filed a federal income tax return since at least 1996. See Exhibit C-4.

## ARGUMENT

### I. DEFENDANT'S COMPUTER FILE FOLDER "OFFSHORE" WAS IN PLAIN VIEW OF THE "CREATIVE WRITING" FOLDER, THEREBY AUTHORIZING THE SEIZURE AND SEARCH OF ITS CONTENTS

Assuming for the sake of argument that the defendant limited the scope of his consent to search his computer to the "Creative Writing" folder on his computer, law enforcement officers were entitled to seize evidence of unrelated criminal activity in "plain view." E.g., United States v. Antrim, 389 F.3d 276, 283 (1st Cir. 2004). Plain view seizures are lawful if the government can show: (1) the seizing police officer lawfully reached the position from which he could see the item in plain view; (2) the seizure satisfied the probable cause standard; and (3) the seizing officer has a "lawful right of access to the object itself." Id.

There is no question that Special Agent Donahue lawfully accessed the "MyFiles" directory on Mr. Stierhoff's computer in order to retrieve evidence of poems related to the state stalking charges – and, thus, was legally in a position to see the "Offshore" file folder in plain view. See Exhibit D-1. Rhode Island's seizure report indicates that Mr. Stierhoff informed the police that they would find his correspondence with the stalking victim in the "MyFiles\Creative Writing" folder. Detectives

Killian and Sanzi testified that Mr. Stierhoff consented to the search of his computer (without limitation in scope), and Detective Killian confirmed that Mr. Stierhoff informed him that he would find the poems in the "MyFiles\Creative Writing" directory.

Thus, having lawfully accessed the "MyFiles" directory, Special Agent Donahue saw the "Offshore" file folder in plain view. Exhibit D-1 makes it clear that when accessing the "MyFiles" directory, the "Offshore" folder is just below the "Creative Writing" folder. As Special Agent Donahue testified, in his experience those who evade taxes regularly attempt to hide money offshore, and the file folder of that name was clearly evidence to him that defendant may have committed tax crimes. Accordingly, at a minimum, the search warrant's reference to the "Offshore" file folder as supporting probable cause to search the computer was clearly appropriate and lawful under the plain view doctrine.

The remaining issue is whether Special Agent Donahue, having seen the incriminating folder "Offshore" in plain view, was then authorized to view its contents prior to obtaining a search warrant. Though the search of computers is a new and evolving area of Fourth Amendment jurisprudence, several courts have addressed the issue - though not involving the precise facts presented in this case. United States v. Turner, 169 F.3d 84

(1st Cir. 1999);[2] United States v. Carey, 172 F.3d 1268 (10th Cir. 1999); United States v. Hudspeth, 459 F.3d 922 (8th Cir. 2006); see also United States v. Gray, 78 F. Supp.2d 524 (E.D.Va. 1999); United States v. Shinderman, 2006 WL 522105 (D.Me, March 2, 2006).

United States v. Carey, supra, appears to be one of the first circuit court decisions on the warrantless search of computer file folders. In Carey, the defendant was under investigation for drug crimes. During his arrest, defendant consented to the search of his apartment. The police seized his computers, and obtained a warrant limited in scope which permitted the search of folders to find names, telephone numbers, and other documentary evidence of drug crimes. During the search of the computer, the police downloaded and viewed "JPG" image

[2] Turner never reached the issue of whether file folders in "plain view" could be searched and seized because the court found that the government had no right to access the computer to begin with. In that case, the defendant's neighbor was assaulted. Defendant consented to a search of his house for physical evidence of the assault. His computer screen clicked on during this search, and a sexually suggestive photo appeared. The police then conducted a full search of his computer, finding child pornography for which the defendant was charged. The First Circuit held that the evidence should have been suppressed because defendant never consented to a search of his computer, and the image on the computer screen presented no incriminating evidence that defendant committed the underlying assault. Thus, the Turner decision is inapposite to the facts presented here because, among other things, Special Agent Donahue was authorized to access defendant's computer, where he saw the "Offshore" file folder in plain view.

files which contained images of child pornography – a crime for which defendant was ultimately charged.

Importantly, by the seizing officer's own admission, prior to viewing the first image, the "JPG" files were not incriminating on their face. Moreover, once the officer viewed the first image containing child pornography, he developed probable cause to believe additional images likewise contained similar content – which led him to depart from his authorized search of evidence of drug crimes, and to conduct a systematic search of files for child pornography. The Tenth Circuit held that the evidence of child pornography should have been suppressed, but limited its holding to only those files discovered after the initial image was viewed.

In this case, Special Agent Donahue testified that the file folder "Offshore" was clearly incriminating on its face and, therefore, seizure was justified under the plain view doctrine. In addition, even if this Court were to conclude otherwise, the Tenth Circuit limited its holding only to those files discovered subsequent to the first image. Likewise, viewing the contents of the first folder, i.e., "Offshore," was reasonable. Unlike the detective in Carey, Special Agent Donahue terminated his search until a warrant was obtained after viewing the first file folder - rather than conduct a systematic computer search for evidence of tax crimes. Indeed, given the compelling evidence supporting

the tax charges ultimately found on Mr. Stierhoff's computer pursuant to the warrant, see Exhibit D-2, Special Agent Donahue's restraint is clearly distinguishable from the detective's conduct in Carey.

Likewise, in United States v. Hudspeth, supra, the detective's restraint in searching a computer's disc for child pornography, after discovering such content in plain view, appears to have been a factor in upholding a search warrant for computer files. In that case, a valid warrant was executed for business records relating to the sale of controlled substances. During the search of the defendant's business computer and related "CDs," the police discovered child pornography. After viewing a few of these items, the police stopped, contacted the U.S. Attorney's Office for guidance, and ultimately sought a warrant to search for evidence of child pornography – apparently including within the search warrant affidavit references to the child pornography items inadvertently found on the computer.

Though the Eighth Circuit did not explicitly discuss the applicability of the plain view doctrine, it upheld the warrant for searching the computer, based, in part, on the fact that the police, unlike in Carey, halted their search after viewing several incriminating items and then sought the warrant. Again, in this case, Special Agent Donahue also saw "Offshore" inadvertently as he was retrieving the "Creative Writing" folder

and, immediately upon seeing the contents of this folder, terminated any further search prior to the execution of the warrant.

Finally, the situation confronting Special Agent Donahue when he saw the "Offshore" file folder is not dissimilar to the kind of incriminating, tangible objects officers on occasion see when searching a residence for crimes unrelated to the "plain view" evidence. If an officer sees a handgun half covered by a newspaper out on a table when searching a felon's room for drug crimes, the officer would surely be able to seize the entirety of that weapon in "plain view" as incriminating on its face. Or, if the same police officer, while lawfully searching a residence for tax fraud documents, observed in plain view on a table a non-see-through bag with a label "marijuana" on it, he would be able to open the contents of the bag to determine that, in fact, an illegal controlled substance was contained therein. Likewise, the file folder "Offshore" was incriminating on its face, allowing Special Agent Donahue to seize and view its contents. After viewing its contents, he stopped further search of the computer, and did not examine other file folders until a warrant was obtained.

Accordingly, the search warrant's limited reference to evidence found on Mr. Stierhoff's computer was proper and authorized under the plain view doctrine.

## II. EVEN WITHOUT DISCOVERY OF, OR REFERENCES TO, EVIDENCE FOUND ON THE COMPUTER, THE GOVERNMENT WOULD HAVE SOUGHT, AND OBTAINED, A SEARCH WARRANT FOR THE COMPUTER

Even if the Court finds that the government's search of the "Offshore" file folder's contents was unauthorized, the First Circuit's recent decision in United States v. Dessesaure, 429 F.3d 359 (1st Cir. 2005), is directly on point and compels upholding the warrant to search defendant's computer in this case. When faced with a warrant affidavit which includes information obtained from an illegal search, a court must conduct a two-pronged inquiry: (1) whether, setting aside the offending material, the remaining portions of the search warrant affidavit supports probable cause to search; and (2) whether the search warrant would have been sought even absent discovery of the information obtained by illegal search. Id. (reconciling Franks v. Delaware, 438 U.S. 154 (1978), and Murray v. United States, 487 U.S. 533 (1988)). As Dessesaure explains, the purpose of this analysis is to ensure that the warrant for searching defendant's computer was supported by truly "independent sources." Dessesaure, 429 F.3d at 365-66.

As set forth below, the facts of this case satisfy both Dessesaure prongs and, thus, defendant's motion to suppress the computer evidence should be denied.

**A. The Search Warrant Affidavit Proffers Independent Facts External To The Computer That Not Only Support Probable Cause, But Constitute Compelling Evidence That Defendant Committed Tax Crimes**

Probable cause for the issuance of a warrant "exists when the affidavit upon which a warrant is founded demonstrates in some trustworthy fashion the likelihood that an offense has been committed and that there is sound reason to believe that a particular search will turn up evidence of it." E.g., United States v. Schaefer, 87 F.3d 562, 565 (1st Cir. 1996). In short, there must be: (1) probable cause that a crime has been committed; and (2) probable cause to believe that the object of the search will uncover evidence of the crime.

Here, even without any references to the computer-based evidence (i.e., the "Offshore" and "Moneylaundering" file folders, see Exhibit C-4, SW Affidavit ¶¶ 24, 22), the search warrant affidavit contains compelling information that defendant committed tax crimes, and that evidence of those crimes would be found on his computer. As IRS Special Agent Robert Ferraro explained, he based most of his affidavit on information obtained from the Rhode Island State Police, who in turn obtained evidence from defendant during the defendant's arrest on stalking charges. The tax-related information provided by the state was based on essentially four sources: (1) statements made by defendant at the time of his arrest and during the search of his residence; (2)

tangible evidence found during a consent search of defendant's residence at 25 Hollywood Road; (3) recorded statements made by defendant while at the police barracks after his arrest; and (4) tangible evidence seized as a result of a consent search of defendant's storage rooms at Shelby Storage.

Information deriving from either of the first two sources alone provided sufficient, and compelling, evidence supporting probable cause that defendant committed tax crimes, and that evidence of those crimes would be found on his computer – even absent the further incriminating evidence found at Shelby Storage, and the defendant's incriminating statements made while at the police barracks. The state police discovered almost $150,000 in cash in defendant's bedroom and, as defendant told the state police, he never paid state or federal taxes. Exhibit C-4 (¶¶ 7, 8). He also told the state police that he used an alias to conduct business, namely, "Joseph Adams" - an affirmative act of evasion designed to conceal income. Id. ¶¶ 7, 17. A bank account statement was also found in his bedroom in which the alias Joseph Adams was used – an account that had a balance of over $1 million. Id. ¶ 18. And, defendant maintained a Verizon telephone account using yet another name, Joseph Mulvaney. Id. ¶ 20.

Upon receiving this information, Special Agent Ferraro conducted a search of IRS databases, discovering evidence that

defendant had never filed a federal income tax return from at least 1996 through to the present. Id. ¶ 23.

That evidence of tax-related crimes would be found on his computer was also supported by the evidence proffered in the search warrant affidavit. Defendant told the police that he sold electronic equipment, and that he conducted his business on his computer and over the internet through "Ebay." "Stierhoff indicated that he had various customers and used the Internet web site 'Ebay' for sales under the name JA. Stierhoff also told Detective John Killian that he used this computer in his business." Exhibit C-4, ¶ 9. Thus, it was probable that evidence of Mr. Stierhoff's sales and income would be found on his computer to support tax charges.

The foregoing evidence alone provided more than sufficient probable cause to support the warrant. Of course, the additional evidence subsequently discovered at Shelby Storage (sales records corroborating defendant's bank statements), and defendant's statements at the police barracks provide yet more compelling probable cause to believe that defendant committed tax crimes.

And, finally, as explained above, even if Special Agent Donahue impermissibly viewed the contents of the "Offshore" file folder before getting a warrant, the file folder "Offshore" was incriminating on its face, and was quite clearly in plain view of the "Creative Writing" folder. Thus, reference to the "Offshore"

folder itself in the warrant was permissible, and provided more probable cause to believe that evidence of tax crimes would be found on his computer.

Accordingly, the search warrant for defendant's computer was clearly supported by probable cause - even if the Court excises any references to the contents of the computer file folder "Offshore" pursuant to Dessesaure.

**B. The Government Would Have Sought A Search Warrant For The Computer Even Absent The Improperly Viewed Computer Evidence**

**1. Compelling External Evidence Obtained Prior To Analysis Of The Computer Provided More Than Sufficient Justification And Motive For IRS To Seek A Warrant For The Computer**

Prior to Dessesaure, the First Circuit's analysis concerning search warrants containing illegally obtained information stopped with the first prong. A simple Franks analysis to determine whether remaining unexcised portions of the search warrant affidavit still supported probable cause was all that was needed.

However, in light of the Supreme Court's decision in Murray, Dessesaure holds that a determination must also be made as to whether a search warrant would have been sought by the government even absent the illegally-obtained information. This question, though subjective to some extent, also requires and objective analysis of the facts. Dessesaure, 429 F.3d at 369. The "ultimate question" is "whether the search pursuant to the

warrant was in fact a genuinely independent source of the information and tangible evidence at issue here." Murray, 487 U.S. at 542 (quoted by Dessesaure, 429 F.3d at 365).

In this case, there can be no serious dispute that evidence obtained from the Rhode Island State Police, and quoted above, derived independent of any analysis or search of the defendant's computer, and without reference to the "Offshore" or "Moneylaundering" folders. The facts gathered by the state police on April 12, 2002, and provided to the IRS beginning on April 15th, provided compelling proof that defendant committed tax crimes, and that evidence of those tax crimes would be found on his computer – thus providing more than enough incentive to seek a warrant. The defendant had approximately $147,000 in cash in his bedroom, never filed a state or federal tax return, and used multiple aliases in his business. Moreover, defendant told the state police that he used his computer to conduct business over the internet. Exhibit C-4 (¶ 9).

While it is true that Special Agent Donahue's discovery of the "Offshore" and "Moneylaundering" folders on April 26, 2002 provided more confirmation that a warrant should be prudently sought, the evidence developed prior to and independent of that discovery provided the basis for getting the warrant.

### 2. Had Special Agent Donahue Stopped After Seeing The "Offshore" File Folder Without Viewing Its Contents, A Warrant Would Surely Have Been Sought

Even if the Court were to find that the IRS pursuit of the warrant was not sufficiently motivated by evidence independent of an illegal search of information on the computer, there can be no serious dispute that the government would still have pursued a warrant if Special Agent Donahue had merely observed, in plain view, the "Offshore" file folder without viewing its contents. Thus, if the Court finds that Special Agent Donahue's observation of the "Offshore" file folder was properly in plain view before he viewed its contents, additional motivation for the warrant existed independent of the illegal search.

In fact, defendant's own theory that the search of the "Offshore" file folder was illegal proves independent motivation to get a warrant existed. According to the defense theory, Special Agent Donahue departed from his limited capacity as an agent assisting the state of Rhode Island concerning the stalking charges when he ventured into the contents of the "Offshore" file folder. According to the theory, Special Agent Donahue believed that the "Offshore" folder, rather than containing evidence of poems and the stalking charges, contained evidence of tax crimes – which fell beyond what defendant claims was a limited consent search for the poems. If, as defendant claims, Special Agent Donahue was motivated to search the "Offshore" folder because,

having observed the file folder name, he believed evidence of tax crimes was within, that same motivation would certainly have led him to get a warrant – had he known, in this evolving area of the law, that searching the folder's contents without a warrant was unconstitutional.

Accordingly, the facts of this case satisfy the second prong of Dessesaure. The government would have sought a search warrant for the computer even absent the illegally-obtained information on the computer.

## CONCLUSION

Wherefore, for the above stated reasons, the defendant's motion to suppress evidence should be denied.

Respectfully submitted,
UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

/s/John N. Kane
JOHN N. KANE

/s/Thomas G. Voracek
THOMAS G. VORACEK
Trial Attorney
U.S. Department of Justice

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed, with the Clerk of Court using the CM/ECF system, a true and accurate copy of the within Supplemental Memorandum of Law in Support of Government's Objection to the Defendant's Motion to Suppress Evidence, which will in turn send notification to Scott A. Lutes, Attorney at Law, scottluteslaw@yahoo.com, and by regular mail, postage prepaid to Scott A. Lutes, Attorney at Law, 127 Dorrence Street, Providence, Rhode Island 02903, on this the 20th day of December, 2006.

/s/John N. Kane
John N. Kane