Rhode Island State Police Headquarters
NARRATIVE FOR DET. TIMOTHY SANZI

Detective Timothy G. Sanzi
Detective Bureau
April 19, 2002

On April 4, 2002, Detective Timothy Sanzi was assigned to investigate a stalking complaint filed by a twenty-three (23) year old female student at Rhode Island College. As a result of interviewing this student, detectives obtained a formal statement which described the following chain of events:

On or about February 23, 2001 to March 2, 2001, the complainant was working as a cashier/clerk at the Staples office supply store located in South Attleboro, Massachusetts. The complainant stated that while she was in the rear break room of the office supply store, she was approached by an unknown male subject who walked up to her and said, "I just want you to know that you have very pretty eyes." This subject then handed her a white envelope containing a card; enclosed within this card was a poem entitled "End of the Road." Incorporated within this poem was the clerk's first name and the male subject's great admiration for her. This poem appeared to have been generated by personal computer and printed on a blank card signed, "A. Friend."

On March 24, 2001, this same male subject entered the Staples store at which time the complainant was taken off the register by the manager. She responded to the back of the store in order to avoid the individual. The subject went to the rear of the store, used the men's room and then left the premises.

On April 7, 2001, the same individual again entered the Staples store and was confronted by the store manager who asked him to leave. The man, while staring at the complainant, stated, "Am I bothering someone?" The man then left the store. As a result of this harassing behavior which caused the complainant to be fearful, she was transferred to the Providence Staples store for approximately two weeks.

On April 15, 2001, the complainant found a letter addressed to her at her mother's residence located at 128 Tyndall Avenue, Providence, Rhode Island. This letter contained a card with another computer-generated printed poem as well as a CD-Rom containing several love songs. Within this mailing was also two additional poems titled, "Love" and "For An Angel," both of which were lengthy and computer-generated.

Approximately one week after this encounter, the complainant again observed this same individual in the Staples break room in South Attleboro. The complainant was alarmed at seeing this individual when he again handed her another love poem entitled "The Blossoming Flower." This poem was also printed on a blank card by a computer. The author wrote in this poem of his aspirations of sharing a "perfect marriage" with the complainant. This poem was signed, "A. Friend. Oneononeathushmail.com." The male subject also handed her a DVD of the movie "Before Sunrise," however, the clerk handed it back to him as he continued to stand over her suspiciously, forcing her to leave the break room startled. Both of these poems expressed a great devotion and love for the complainant. These poems were unsigned but contained the same print style and format characteristics as the previous hand-delivered

poems.

The poems delivered to the complainant's address in Rhode Island placed her in great fear of having been followed from South Attleboro by the same male subject. The complainant further advised that she presently is residing on the Rhode Island College campus in the dormitory at Webber Hall but that her permanent residence is with her mother on Tyndall Street in Providence.

The complainant responded to the Rhode Island State Police Lincoln Woods Barracks where she filed a formal complaint regarding this suspicious male and his activities.

On April 23, 2001, the manager at the Staples store located in South Attleboro, Massachusetts witnessed this same male subject again enter the store. When the subject left on this occasion, the manager observed him driving off in Delaware registration plate C-53042 which was attached to a brown or maroon van. A check of this Delaware registration at the time revealed it to be listed to Company Corp. Commons located in the State of Delaware. A Mr. Robert Rowe who is employed in a security position at Company Corp. advised the vehicle was leased to a Joseph Adams of Global Corp. Service, Inc. in the State of Delaware. Several attempts made to contact Mr. Adams by Sergeant Darren H. Delaney of the Rhode Island State Police Lincoln Barracks resulted in no response by Mr. Adams.

Detective Sanzi then learned that one week after the mailing of the letter to the complainant's mother's home, her mother received a telephone message from an unknown male stating, "I'm the man who was bothering your daughter and I apologize for bothering her." This message was heard by the complainant's mother as well as her mother's boyfriend. The telephone number at the residence was a published number at the time of the call and available through the local telephone directory.

There was no further contact with the complainant until March 19, 2002 when she discovered a poem placed in the driver's door of her vehicle which was parked in the parking lot of Rhode Island College Webber Hall Dormitory. The poem was titled, "<u>No More Tears</u>" and contained a lengthy diatribe of love and devotion for the complainant. This poem had the same characteristics as the previous series of poems including similar computer fonts styles and formats. This letter was signed "N."

On March 29, 2002, there was a second poem left in the complainant's driver's door of her vehicle parked at Rhode Island College Webber Hall Dormitory. This poem was entitled, "<u>The Island</u>" and also contained similar characteristics as that of the previous notes and ended with the same „N" signature. Within this letter, the author vowed to „Protect and defend" the complainant and "stay here forever until they blend."

Detective Sanzi also learned that the same male subject had appeared in the South Attleboro Staples store wearing dark-colored glasses and staring at the complainant. This individual was chased from the store by the general manager at which time a Rhode Island registration of MN-878 was obtained on a green Dodge Caravan.

On April 2, 2002, another poem was left in the same vehicle parked at the same location and was of the similar text and style as that of the previous letters. This was signed, "N." and left in the vehicle sometime overnight.

The complainant describes the suspect as a white male, 6' in height, medium build with blue eyes and dark hair who appears to be of Russian descent. Detective Sanzi checked Rhode Island MN-878 in Registry files and found it to be a leased Dodge Caravan from Bald Hill Dodge located in Warwick, Rhode Island. Contact was made with Bald Hill Dodge which revealed the vehicle to be leased by a Neil Stierhoff, DOB: ▮ of 405 Tarrytown Road #257, White Plains, New York. Mr. Stierhoff has a New York State Motor Vehicle License ▮ on which he is described as a white male, 6' in height, with hazel eyes and having a Social Security number of ▮

Detective Sanzi conducted a criminal history check for Neil Stierhoff which revealed no criminal history nationwide. His license address comes back to a Mailbox, Etc. located in New York. His mail is forwarded from this address monthly to another Mailbox, Etc. located in East Providence, Rhode Island. This East Providence address is listed as his local Rhode Island address for the leased vehicle.

Mr. Stierhoff was negative in Triple I, BCI, NCIC, and local files; several federal checks conducted for criminal activity or contacts were also negative. A computer search of his name and Social Security number was conducted on Faces of the Nation and Infotech which revealed no other information other than his New York address. Detective Sanzi learned from the rental clerk at Bald Hill Dodge in Warwick, Rhode Island that Mr. Stierhoff is a white male, 6' in height, average build, with dark hair who has occasionally worn glasses and appears to be of Russian descent.

Since April 25, 2001, Mr. Stierhoff has spent approximately twenty-three thousand dollars ($23,000) on rental vehicles, specifically Dodge Caravans, on which he required Bald Hill Dodge to remove the rear seats on every occasion. He lists a cellular telephone number of 617-642-8177. Mr. Stierhoff has been renting Caravans since April of 2001, approximately once every two to three months, and has consistently paid in cash.

Detective Sanzi issued a subpoena to Voicestream Wireless for the cellular number which was listed to Mr. Stierhoff with an address of the East Providence branch of Mailbox, Etc. Mr. Stierhoff gave a home telephone number of 914-316-6940 which is listed to an expired Voicestream Wireless cellular phone.

During local checks on Mr. Stierhoff, detectives obtained an East Providence Police Report which listed Mr. Stierhoff being involved in a civil dispute in 1999 at Shelby Self-Storage located at 879 Waterman Avenue, East Providence, Rhode Island. A check with the owner of Shelby Self-Storage revealed that Mr. Stierhoff had been renting three large units at this facility since 1990 under the company name of Adams Associates, Inc. with a Post Office Box in Providence, Rhode Island listed as a mailing address. It was advised that Mr. Stierhoff normally responds to the storage facility very late in the evening and stays for long periods of time. This was verified through security card pass records obtained by Detective Sanzi.

On the evening of April 5, 2002, members of the Rhode Island State Police Major Crimes Unit conducted a surveillance of the East Providence storage facility and at approximately 10:00 PM, Rhode Island registration MN-878, a green Dodge Caravan being operated by a white male, arrived at the storage facility. After a fifteen (15) minute stay at the facility, the same van was followed to the Corliss Street Post Office in Providence, Rhode Island where Mr. Stierhoff brought several items inside and remained in the post office for approximately twenty-five (25) minutes.

Upon leaving the post office, Rhode Island registration MN-878 was followed to 66 Lindyhurst Avenue, Providence, Rhode Island at which time the van slowed down in front of the complainant's mother's residence. This residence is located directly off Eaton Street in the City of Providence and is occupied by the complainant's mother and her boyfriend; the Tyndall Avenue residence is the complainant's mother's rental property.

After slowing down in front of the 66 Lindyhurst Avenue location, the van was then followed directly to the Rhode Island College campus where the van patrolled the parking lot of Webber Hall dormitory. The operator of the van circled the parking lot until he came to a sudden halt in front of the complainant's vehicle, Rhode Island registration JL-842, a silver Honda. The green Caravan then continued through the parking lot and returned to 25 Hollywood Road, Providence, Rhode Island where the operator then backed into the driveway and secured the chainlink fence. At approximately 12:30 AM, the lights were shut off in the residence and the surveillance was concluded.

On April 6 and April 7, 2002, the Hollywood Road address was again checked by Detective Sanzi at which time the vehicle was observed in the driveway with no other vehicles or individuals seen at the residence.

A check with Providence City Tax Assessor's office revealed the owner of 25 Hollywood Road, Providence, Rhode Island to be a Jelsy A. Adan as of April 16, 2001. Detective could find no record of Jelsy Adan nor Neil Stierhoff in Providence City property tax rolls or with the Department of Health Vital Statistics.

A check of Neil Stierhoff's Social Security number with the Rhode Island State Division of Taxation also proved negative for any information.

A check with the Rhode Island and Delaware Secretaries of State for Adams Associates, Inc. proved negative for any business ties to Adam Associates for either state.

A telephone number listing of 421-7430 was obtained for 25 Hollywood Road, Providence, Rhode Island through Verizon Telephone Company. This address and telephone number has been listed to a J. P. Mulvaney since February 8, 1991. Also, a check with Cox Communications proved negative for any active cable access into the residence.

Off-line checks conducted on previously-registered rental vehicles from Bald Hill Dodge in Warwick, Rhode Island to Mr. Stierhoff have revealed several local inquiries on his vehicle, including several customs checks entering Canada on several occasions.

Mr. Stierhoff holds a United States passport #012399911 issued in 1996 with a place of birth being listed as the State of New York. This passport has never been used for travel outside the United States.

As a result of numerous, federal, state and local checks regarding Neil Stierhoff's identity and location, there could be no stable residence found for Mr. Stierhoff, nor was there any history of use accounted for through his Social Security number or name, other than the rental of numerous vehicles and the fact he held a New York state driver's license and a United States passport.

On the evening of April 8, 2002, detectives conducted surveillance at Mr. Stierhoff's residence, the Rhode Island College dormitory and the self-storage facility located in East Providence. At approximately 9:30 PM, the green Dodge Caravan bearing Rhode Island registration MN-878 left 25 Hollywood Road, Providence, Rhode Island and drove to the Rhode Island College parking lot where he again circled the parking lot and slowed down when he spotted the complainant's vehicle. The van then abruptly left the parking lot and approximately one hour later returned to the Hollywood Road location where it remained for the evening.

On April 9, 2002, another surveillance was conducted at the residence at 25 Hollywood Boulevard, Providence, Rhode Island and at approximately 10:00 PM, the same green Caravan left the residence and responded to Shelby Storage in East Providence, Rhode Island where, after approximately fifteen (15) minutes inside this storage facility, the van exited and responded to Rhode Island College dormitory parking lot where the van again circled the Webber Hall lot in a slow and deliberate manner, coming to a brief halt at the complainant's vehicle. The van then responded back to the Hollywood Road location where it remained for the evening.

During all these surveillances, the vehicle was observed slowing and stopping inappropriately which appeared to be an attempt to determine whether or not he was being followed.

On Wednesday, April 10, 2002, members of the Major Crimes Unit again conducted a surveillance of the complainant's vehicle parked at the Rhode Island College Webber Hall dormitory parking lot. Prior to the surveillance of this vehicle, Detective Sanzi was contacted by Bald Hill Dodge/Subaru at which time it was reported that Mr. Stierhoff had returned the green Dodge Caravan, MN-878, replacing it with a white Dodge Grand Caravan, Rhode Island registration YX-600.

On Wednesday, April 10, 2002 at approximately 7:30 PM, the white Dodge Grand Caravan, YX-600, responded to the complainant's vehicle located in the Rhode Island College parking lot at Webber Hall, driving past the vehicle as the occupant watched.

On Thursday, April 11, 2002, members of the State Police again conducted a surveillance of the complainant's vehicle which was located at the parking lot for Webber Hall Dormitory on the campus of Rhode Island College. On this evening, a white van containing a sole white male operator again arrived at approximately 9:40 P.M. After patrolling the parking lot, the van stopped in front of the complainant's vehicle for approximately 10 to 15 seconds and the

operator looked at the complainant's vehicle.

It should be noted that every surveillance conducted from 25 Hollywood Road, Providence, Rhode Island, to the storage facility, to the Rhode Island College campus involved a Caravan containing a single white male operator with no other occupants in the vehicle.

A photograph was obtained of the occupant as he entered the Corliss Street Post Office on the evening of April 5, 2002. This photograph was consistent with the physical description provided by both the rental clerk at Bald Hill Dodge in Warwick, as well as the complainant.

On the evening of April 12, 2002, the complainant agreed to sit in her vehicle in the Rhode Island College parking lot in an attempt to elicit a response from the subject who had been harassing her. At this time a detective was positioned within the complainant's vehicle.

On April 12, 2002, at approximately 8:00 P.M., the white Dodge Caravan bearing Rhode Island registration YX-600 being operated by a single male operator was followed from 25 Hollywood Road to the Rhode Island College parking lot by members of the surveillance team. As the vehicle approached the parking lot, the complainant was advised to leave the parking lot. As the complainant's vehicle left the parking lot, the suspect followed. The vehicles traveled to Fruit Hill Avenue, down Woonasquatucket Road via Metcalf Road, where the complainant was advised to drive into Walgreen's located at the end of Woonasquatucket Road in Centredale, before responding back to the parking lot at Rhode Island College.

While on Woonasquatucket Road en route to Centredale, the complainant pulled into a parking spot in front of Sam's Food Store. While parked at the Sam's Food Store, the suspect vehicle circled numerous times waiting approximately 30 minutes before the complainant's vehicle moved from Sam's Food Store. During this time the suspect's vehicle patrolled the vacinity of the store, taking several side streets and different driveby angles of the store before finding a resting place. The suspect's vehicle then parked approximately 200 yards from Sam's Food Store on a side street, where the operator had a direct view to the store entrance.

As the suspect's vehicle waited with its lights off and the vehicle running, members of the surveillance team advised the complainant to exit the store and enter her vehicle. Upon entering her vehicle, the complainant was directed to travel down Woonasquatucket Road towards Centredale, whereby the suspect vehicle activated its headlights and again followed behind the complainant's vehicle. The vehicles traveled into Centredale on Woonasquatucket Road, crossed Route 44, and the complainant's vehicle turned into Walgreen's Drugstore located at 25 Putnam Pike in Johnston. The complainant parked her vehicle and entered Walgreen's. The suspect's vehicle continued to travel approximately 300 yards past Walgreen's, then turned into a nearby parking lot, where it turned around, returned to Walgreen's parking lot and parked.

A single white male, approximately six feet tall with dark hair, wearing a white golf shirt and slacks, exited the white van YX-600 and entered the store where the complainant had just entered. The male subject was then approached by members of the Rhode Island State Police advised of his Miranda Rights by Detective Timothy Sanzi and placed under arrest. The complainant was then escorted from the Walgreens by the State Police due to her being visible

shaken and upset upon the individuals arrest.

The male subject was identified as Neil Stierhoff, DOB 5/10/55, via his New York State Driver's License. The photograph contained on his license appear different than his present appearance. A further look for identification revealed: Several credit cards under the name Neil F. Stierhoff; credit cards in the name of Universal Audio Company; a photograph ID bearing a similar picture to the license for a Joseph Adams of Adams Associates, Incorporated. Also within Mr. Stierhoff's wallet was a business card for E.P. Mail & Freight, which came back to Gail and Barry Shaw of 500 Waterman Avenue, #202, East Providence, Rhode Island, which was a mailbox owned by Mr. Stierhoff. The names of Gail and Barry Shaw were crossed out on the aforementioned card.

Mr. Stierhoff was apprised of the situation by Corporal David Palmer and Detective Timothy Sanzi. Mr. Stierhoff advised that, although it was his belief the complainant didn't want a relationship with him, the complainant never indicated such, so he continued to check on her and follow her. Mr. Stierhoff further believed that there was nothing wrong with his actions. He advised that had the complainant told him she didn't want him around, he would have left. Mr. Stierhoff was reminded by detectives that the manager of Staples in South Attleboro had previously requested he leave the store. Mr. Stierhoff recalled the incident, but advised that he still had feelings for the complainant.

Detectives Cpl. David Palmer and Timothy Sanzi then obtained a consent to search from Stierhoff for his residence lcoated at 25 Hollywood Road in Providence, 2nd Floor and his vehicle. Mr. Stierhoff's vehicle was seized and towed to the Lincoln Woods Barracks.

Upon signing the consent form, Mr. Stierhoff explained that he paid rent. Mr. Stierhoff was initially reluctant to disclose his local address, but after being advised that he had been surveilled for the past week Mr. Stierhoff finally disclosed that he resided at 25 Hollywood Road. Mr. Stierhoff advised that he paid $295.00 rent and that he lived in the second-floor apartment. Mr. Stierhoff requested that members of the State Police not disturb his roommates or wear identifying uniforms or related equipment upon entering the residence.

At approximately 11:30 P.M., detectives, along with Mr. Stierhoff, responded to 25 Hollywood Road, 2nd Floor, Providence, Rhode Island, where a search was executed. Upon initial inspection, Mr. Stierhoff allowed Detectives John Killian and Timothy Sanzi to seize his computer hard drive, which was located in his room since Mr. Stierhoff advised that most of the poems he wrote to the complainant were generated off his home computer. Due to the high-tech capabilities of Mr. Stierhoff's personal computer, Detective Sanzi advised that the computer would have to be processed by a Federal agency for evidence, and Mr. Stierhoff agreed.

While looking through Mr. Stierhoff's room, Detective Sanzi located a gray briefcase containing several Manila envelopes which contained cash. When questioned about the cash, Mr. Stierhoff acknowledged that there was approximately $100,000.00. Mr. Stierhoff also acknowledged that there was additional cash and directed Detective Sanzi to a drawer in his desk. Several additional packets of money were located within the desk, which Mr. Stierhoff estimated to total approximately $47,000.00 in cash. Mr. Stierhoff also advised that he did not

trust banks.

Detective Sanzi located several Fleet Bank statements for Account #0413760790 belonging to Joseph Adams of 25 Hollywood Road, Providence, Rhode Island. Mr. Stierhoff advised detectives this was an alias he used for business purposes and that the individual Joseph Adams never existed. Detective Sanzi copied the account statement dated July 16, 2001, which depicted a daily balance to be $1,141,859.92. Detective Sanzi also obtained copies of several checks made out to Joseph Adams with no permanent address from different electronics companies, as well as documents containing the signature of Joseph Adams, i.e., bills of sales, listing the company Joseph Adams, Adams Associates, P.O. Box 712, Providence, Rhode Island.

Detective Sanzi also located a package of Harp Workshop greeting cards which were blank on the inside. A photocopy was subsequently obtained of the back of one of these cards. These greeting cards were consistent with the greeting cards given to the complainant over the last year.

During the search of Mr. Stierhoff's residence, Mr. Stierhoff indicated that he never paid State or Federal income taxes. He further indicated that the bundles of cash within his home, which were located in the briefcase and his desk, constituted his savings from his personal business ventures. The admission regarding taxes was made in the presence of Detectives John Killian, Timothy Sanzi, and Corporal David Palmer.

While at the residence a male and female objected to the presence of State Police personnel in their home. Lieutenant Stephen Lynch and Corporal David Palmer requested that these individuals identify themselves, which they declined. Both individuals demanded to know why members of the State Police were at the residence. It should be noted that the demeanor of the two individuals was erratic and inappropriate. When apprised of the situation by Lieutenant Lynch, the male individual yelled into Mr. Stierhoff's room, "Neil, you can withdraw your consent. Please get them out of the house." Mr. Stierhoff acknowledged that he gave consent and did not request anyone leave the residence. The male individual attempted to push Corporal Palmer out of the way in order to enter the room where Mr. Stierhoff was located. At this time Mr. Stierhoff indicated that he did not want to upset these people but that he wanted to, "Get through with this and leave". Detective Sanzi then requested the identity of the people, and Mr. Stierhoff indicated they were "roommates" that he paid rent to and did "favors" for in order to stay there. Detectives later learned the last name of the individuals at the residence, which was Adan.

It should be noted that when members of the State Police initially responded to the home, the two individuals residing in the home contacted Providence Police reporting a theft in the residence, thereby alerting the police department to respond.

After searching Mr. Stierhoff's residence, Detectives obtained a second consent to search from Stierhoff for Shelby self-storage located in East Providence. Within this facility Mr. Stierhoff gave his consent for members to search bins 13,14,15 and 18. Detectives conducted a cursory search of these garage bins which Stierhoff unlocked himself. Located inside these

bins were several hundred items of high-tech electronic equipment, as well as boxes of business records. Included in these records were several Verizon telephone billing records for 25 Hollywood Road, Providence, Rhode Island, dating up to September 14, 2001, for a Joseph P. Mulvaney.

When questioned about these bills, Mr. Stierhoff indicated that he had assumed responsibility for the billing upon Mr. Mulvaney leaving the residence at 25 Hollywood Road. Mr. Stierhoff further acknowledged that he never met nor knew Mr. Mulvaney, he merely assumed responsibility and made payments. Also found were Sprint telephone account records for Universal Audio Company, which reverted back to 25 Hollywood Road, Providence, Rhode Island. Mr. Stierhoff was questioned about this company and advised that it was another company he had assumed under an alias. Detectives found a Narragansett Electric account bill for a "Neil F. Steirhoff" of 25 Hollywood Road, Providence, Rhode Island. Detectives also found a Delaware registration plate number C92306, several letters, personal checks and post office slips made out to Joseph Adams and Joseph Adams Associates of 25 Hollywood Road, Providence, Rhode Island, as well as several different P.O. Boxes listed throughout the State of Rhode Island. Approximately one box of papers was taken from the storage facility which was labeled "Papers and sales books, July 10, 2001."

Mr. Stierhoff was taken back to the Lincoln Woods Barracks, where he was processed. Mr. Stierhoff's fingerprints were sent to the FBI for identity verification. The fingerprints came back negative for any criminal history.

Mr. Stierhoff was advised of his Miranda Rights for a second time. Mr. Stierhoff then provided a formal witness statement to Detective Sanzi, whereby he admitted to following the complainant and originally finding her address and name off a list of employees located inside Staples in South Attleboro. Mr. Stierhoff also acknowledged that he knew the complainant by her full name and was familiar with her vehicle. Mr. Stierhoff advised that he intended to attempt a coincidental meeting with the complainant at Walgreen's in order to obtain a future date with her. Mr. Stierhoff explained that the complainant originally caught his fancy at Staples about a year ago and felt he could further develop the situation into something more. Mr. Stierhoff indicated that he found the complainant's mother's address and the complainant's address at Rhode Island College via the telephone book. Mr. Stierhoff admitted to placing a call and sending letters to the mother's home, as well as placing notes on the complainant's vehicle while it was parked in the parking lot of Rhode Island College.

At the conclusion of his statement, Mr. Stierhoff was placed in a holding cell for the evening.

The next morning, Saturday, April 13, 2002, Mr. Stierhoff was arraigned on one charge of stalking, prohibited, before Justice of the Peace Richard Finnegan. He was released on one thousand dollars ($1,000.00) personal recognizance.

On April 15, 2002, a representative of Bald Hill Dodge responded to the Lincoln Woods Barracks to retrieve the vehicle that was towed from the scene.

A No-Contact Order was issued to Neil Stierhoff prohibiting any future contact with the

06/27/2002　　　　　　　　Rhode Island State Police Headquarters　　　　　　　　Page: 1
Ref: 02RIX1-200-AR SEIZURE REPORT FOR FINANCIAL RECORDS OF NEIL STIERHOFF

Case 1:06-cr-00042-ML-LDA    Document 73-2    Filed 01/17/2007    Page 10 of 19

complainant, since Mr. Stierhoff admitted to following the victim in the presence of Justice of the Peace Finnegan while the complainant was in her car. Mr. Stierhoff further admitted to responding to Rhode Island College six times in the last six nights to check on the victim's car and following her to Walgreen's.

Due to the information compiled, the documents obtained from the garage including extensive ledgers of business accounts, and the fact that Mr. Stierhoff admitted that he had never filed State or Federal income taxes, IRS Agent Robert Ferraro was contacted by Detective Sanzi to come and seize the computer hard drive for a forensic audit. Copies of documents were provided to Agent Ferraro.

Investigation to continue.