Stierhoff?
A Yes.
Q Now, up until this point you thought Mr. Stierhoff was a very dangerous individual, didn't you?
A He was a question mark. We didn't know.
Q You had no idea?
A That is right.
Q You got to meet him. You saw him. That changed, didn't it?
A I thought he was disturbed, after talking with him.
Q You didn't think he was a danger at that point, did you?
A I wouldn't say that. I wouldn't agree with that.
Q When you were talking earlier about consent to search form Mr. Travato asked you if this had already been filled out and you testified it had not, isn't that right?
A I believe Cpl. Palmer might have filled out the top half.
Q Do you know who filled it out?
A I believe he did, Cpl. Palmer.
Q Do you remember when it was filled out?
A Right there in the defendant's presence.
Q Was it before or after he signed it?
A Before.
Q You filled this out before Mr. Stierhoff signed it?

THE COURT: What is the objection?
MR. PELTIER: What is normal.
THE COURT: This is what you said to the defendant?
THE WITNESS: Yes, Your Honor.
THE COURT: Overruled. Continue.
A I said normally you introduce yourself to someone, maybe give them a telephone number. This girl is terrified.
Q Did he respond to you?
A He stated that he knew that his advances were unwanted, but that he continued with them.
Q I'm sorry with --
A He knew his advances were unwanted but he continued with them.
Q After he told you this what did you then do?
A We obtained his identification that he had on him. He had numerous identifications along with a New York State driver's license. In the picture he appeared much heavier. His appearance was slightly different on his license.
Q After you obtained this information what did you then do?
A We requested from him we're going to need a consent -- have his consent to look in his apartment.
Q And, did he respond to you?
A Yes.

brought him out; you didn't pat him down?
A I wanted to have a search; I did that in the store.
Q You didn't find anything on him there?
A His identification.
Q You found that, but you wanted to do a thorough search saying at this point so you took him back out of the car?
A Yes, sir. I also knew we're going to introduce a consent. He was going to have to sign it.
Q Going to have to sign, right? That is the whole point of this. You wanted him to sign that particular evening, right?
A We wanted to get consent to search, yes.
Q How long was he in the back seat of the car, total, this evening?
A Half-hour.
Q Half-hour. This is the Walgreen parking lot?
A Yes.
Q You sat in the car with him right next to him, isn't that right?
A Yes.
Q And this is after you have taken him out, put handcuffs in front, correct?
A Yes.
Q And you had a discussion with him at that point; talking