**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Criminal No. 06-00042-ML** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **NEIL STIERHOFF,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**GOVERNMENT'S PRETRIAL MEMORANDUM**

The United States of America, by and through undersigned counsel, hereby submits this Pretrial Memorandum with Table of Contents.

# TABLE OF CONTENTS

Subject Page No.

I. Estimate of number of days for government's case......3

II. Brief analysis of applicable law

A. 26 U.S.C. §7201, tax evasion....................3
1. An attempt to evade or defeat a tax or the payment thereof.....................5
2. An additional tax due and owing.............8
3. Willfulness................................9
B. Venue..................................13

III. Other evidentiary issues

A. Bank Deposits Method of Proof...................14
B. Rule 404(b) evidence...........................16
C. Admissibility of Documents
1. IRS Service Center Records.................19
2. Business Records...........................19
3. Duplicates.................................21
4. Certified Documents – Public Records.......21
D. Defendant's admissions
1. Unrecorded statements......................22
2. Recorded statements........................23
E. Seized materials
1. Documents..................................27
2. Computer...................................27
F. Summary and Expert Witnesses...................28

IV. Other issues for pretrial consideration

A. Motion in limini...............................32
B. Exclusion of witnesses, Rule 615, F.R.E.........33
C. Demonstrative Aids.............................34
D. Issues related to the R.I.S.P. investigation....34

V. CONCLUSION.......................................36

## I. Estimate of number of days for government's case.

Jury impanelment is set for April 3, 2007, before U.S. Magistrate Judge Lincoln D. Almond, Magistrate Judge David L. Martin or Magistrate Judge Robert W. Lovegreen. The estimated time for the trial of the government's case-in-chief is approximately four to five days. The government expects to call approximately thirty-five witnesses in its case-in-chief. Defendant is represented by attorneys Alan S. Richey and Scott Lutes.

## II. Brief analysis of applicable law

### A. 26 U.S.C. §7201, tax evasion

The indictment alleges that defendant willfully attempted to evade and defeat his 1999, 2000, 2001, and 2002 federal individual income taxes, by failing to file individual income tax returns and by conducting business under the name of Joseph Adams, using a post office box in the name of Universal Audio to receive business receipts, utilizing a bank account in the name of Joseph Adams in order to deposit his business receipts, and using extensive cash, in violation of 26 U.S.C. § 7201.

Title 26, United States Code, Section 7201, states the following:

> Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony....

26 U.S.C. §7201.

To establish a violation of section 7201, the government must prove beyond a reasonable doubt the following elements:

1. An attempt to evade or defeat a tax or the payment thereof.
2. An additional tax due and owing.
3. Willfulness.

Sansone v. United States, 380 U.S. 343, 351 (1965); United States v. Hogan, 861 F.2d 312, 315 (1st Cir. 1988).

The Supreme Court has stated that section 7201 includes two offenses: (a) the willful attempt to evade or defeat the assessment of a tax and (b) the willful attempt to evade or defeat the payment of a tax. Sansone, 380 U.S. at 354. Evasion of assessment entails an attempt to prevent the government from determining a taxpayer's true tax liability. Evasion of payment entails an attempt to evade the payment of that liability. Hogan, 861 F.2d at 315. Section 7201 proscribes only one crime, tax evasion, which can be committed either by attempting to evade assessment or by attempting to evade payment. United States v. Huguenin, 950 F.2d 23, 26 (1st Cir. 1991); United States v. Dunkel, 900 F.2d 105, 107 (7th Cir. 1990), judgment vacated, 498

U.S. 1043 (1991), ruling on duplicity issue reinstated on remand, 927 F.2d 955, 956 (7th Cir. 1991).

**1. An attempt to evade or defeat a tax or the payment thereof.**

The means by which there can be an attempt to evade are unlimited. Section 7201 expressly provides that the attempt can be "in any manner." The only requirement is that the taxpayer take some affirmative action with a tax evasion motive. Conversely, failing to act or do something does not constitute an attempt. For example, failing to file a return, standing alone, is not an attempt to evade. Spies v. United States, 317 U.S. 492, 499 (1943). The general rule is that "any conduct, the likely effect of which would be to mislead or to conceal" for tax evasion purposes constitutes an attempt. Spies, 317 U.S. at 499. The Supreme Court "by way of illustration, and not by way of limitation," set out examples of what can constitute an "affirmative willful attempt" to evade such as: keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal. Spies, 317 U.S. at 499

Even an activity that would otherwise be legal can constitute an affirmative act supporting a section 7201 conviction, so long as it is carried out with the intent to evade tax. United States v. Jungles, 903 F.2d 468, 474 (7th Cir. 1990). Sole or exclusive intent to evade taxes is not required under Section 7201. United States v. Zanghi, 189 F.3d 71, 78 (1st Cir.), cert. denied, 528 U.S. 1097 (2000). Moreover, although the government must prove some affirmative act constituting an attempt to evade, it need not prove each act alleged. United States v. Mackey, 571 F.2d 376, 387 (7th Cir. 1978).

The evidence will establish that despite earning sufficient income, the defendant has never filed a federal individual income tax return. In addition, the defendant took affirmative steps to conceal his receipt of income and assets from the government. From at least 1997 through 2003, the defendant operated his business in the name of a nominee, Joseph Adams or Adams Associates, Inc. The defendant's customers were led to believe that they were transacting business with Joseph Adams. Using a nominee name to receive income can impede the government's ability to determine an individual's true income and assess income taxes.

The defendant deposited all business receipts into an account in the name of a nominee, Joseph Adams. This account,

located at Fleet Boston Financial was utilized by the defendant from 1997 through 2002. Using a bank account in the name of an nominee can effectively conceal an individual's receipt of income and his cash assets from any government attempt to either assess income taxes or find assets to satisfy any outstanding tax assessments.

The defendant utilized a post office box in the name of a nominee, Universal Audio, in which to transact business. The defendant's customers were instructed to send payments for products to this post office box. Again, using a nominee name to receive income constitutes an attempt to conceal an individual's receipt of income from the government.

Finally, the defendant used significant cash. The IRS Revenue Agent will testify that the defendant made substantial ATM cash withdrawals from 1998 through 2002. The defendant made approximately 150 ATM withdrawals each year during the period withdrawing $400 on each occasion. In sum, the evidence will establish that the defendant made the following total cash ATM withdrawals:

| **Year** | **Cash Amount Withdrawn** |
|---|---|
| 1998 | $ 60,000 |
| 1999 | 59,200 |
| 2000 | 57,200 |
| 2001 | 64,000 |
| 2002 | 56,000 |

**2. An additional tax due and owing.**

It is not essential that the Service has made an assessment of taxes owed and a demand for payment in order for tax evasion charges to be brought. United States v. Daniel, 956 F.2d 540, 542 (6th Cir. 1992). In Daniel, the defendant argued that there was no tax deficiency since no assessment or demand for payment had been made. The court rejected this reasoning, holding that a tax deficiency arises by operation of law on the date that the return is due if the taxpayer fails to file a tax return and the government can show a tax liability. Daniel, 956 F.2d at 542. Hogan, 861 F.2d at 315-16 (no need to make a formal assessment of tax liability when government finds tax due and owing).

The government's evidence includes documents and testimony to demonstrate that the defendant earned sufficient income to require him to file federal income tax returns and that he owed substantial taxes to the United States. The government's documents include bank records, such as statements and deposit items, which show that the defendant deposited income items received for electronic products. Other documents include third party records such as invoices and cancelled checks from the defendant's customers. The government intends to elicit testimony at trial from approximately fifteen such customers to demonstrate that invoices and cancelled checks relate to their purchase of products from the defendant's company.

An IRS revenue agent will testify at the end of the government's case that the defendant owed substantial income taxes to the federal government for each of the years charged as follows:

| **Year** | **Taxes Owed** |
| --- | --- |
| 1999 | $ 72,396 |
| 2000 | 166,272 |
| 2001 | 132,081 |
| 2002 | 52,820 |

**3. Willfulness.**

The government will prove that defendant's attempts to evade income taxes was the result of a voluntary, intentional violation of a known legal duty. Cheek v. United States, 498 U.S. 192, 200 (1991). Willfulness is determined by a subjective standard; thus the defendant is not required to have been objectively reasonable in his misunderstanding of his legal duties or belief that he was in compliance with the law. Cheek, 498 U.S. at 203; United States v. Powell, 955 F.2d 1206, 1211 (9th Cir. 1992); United States v. Regan, 937 F.2d 823, 826 (2d Cir. 1991), amended by 946 F.2d 188 (2nd Cir. 1992); United States v. Whiteside, 810 F.2d 1306, 1311 (5th Cir. 1987). The inquiry, therefore, must focus on the knowledge of the defendant, not on the knowledge of a reasonable person. However, the jury may "consider the reasonableness of the defendant's asserted beliefs in determining

whether the belief was honestly or genuinely held." United States v. Grunewald, 987 F.2d 531, 536 (8th Cir. 1993); United States v. Middleton, 246 F.3d 825, 837 (6th Cir. 2001).

Although ignorance and misunderstanding of the law may be asserted to foreclose a finding of willfulness on the part of the defendant, disagreement with the constitutional validity of the law may not. Once it has been established that the defendant was aware of a legal duty and intentionally violated that duty, it is no defense that the defendant believed that the law imposing the duty was unconstitutional. Cheek, 498 U.S. at 205-06. The constitutionality of the tax laws is to be litigated by taxpayers in other ways established by Congress. Cheek, 498 U.S. at 206. See also United States v. Bonneau, 970 F.2d 929, 931-32 (1st Cir. 1992) (trial judge's redaction of constitutionality arguments from defendant's reading materials did not unfairly prejudice the defense).

Absent an admission or confession, which is seldom available, or accomplice testimony, willfulness is rarely subject to direct proof and must generally be inferred from the defendant's acts or conduct. United States v. Guidry, 199 F.3d 1150, 1156-1158 (10th Cir. 1999); United States v. Kim, 884 F.2d 189, 192 (5th Cir. 1989); Once the evidence establishes that the tax evasion motive played any role in a taxpayer's conduct, willfulness can be inferred from this conduct, even if the

conduct also served another purpose, such as concealment of another crime or concealment of assets from, for example, one's spouse, employer or creditors. Spies, 317 U.S. at 499; Guidry, 199 F.3d at 1157.

Willfulness may be inferred from various types of evidence. A consistent pattern of underreporting large amounts of income constitutes evidence of wilfulness. Kim, 884 F.2d at 192. The evidence will demonstrate that the defendant failed to report significant amounts of income over a seven year period from 1997 through 2003.

The use of nominees is evidence of criminal wilfulness in a tax case. Daniel, 956 F.2d at 543. In particular, the use of bank accounts held under fictitious names is indicative of a wilful intent to evade taxes. United States v. Ratner, 464 F.2d 101, 105 (9th Cir. 1972). As noted above, the defendant used the nominee names Joseph Adams, Adams Associates, Inc., and Universal Audio to conduct business and he used a bank account in the name of Joseph Adams.

The extensive use of currency may also constitute evidence of wilfulness. Daniel, 956 F.2d at 543. In particular, spending large amounts of cash which can not be reconciled with the amount of income reported is demonstrative of a defendant’s wilfulness. United States v. Simonelli, 237 F.3d 19, 30 (1st Cir), cert. denied, 534 U.S. 821 (2001); United States v. Olbres, 61 F.3d

967, 971 (1st Cir.), cert. denied, 516 U.S. 991 (1995). As noted above, the defendant made substantial ATM cash withdrawals from the same bank into which he deposited his business income. Evidence of the defendant spending about $60,000 per year is inconsistent with an individual who did not file any federal individual income tax returns during the period.

Evidence of prior and subsequent similar acts reasonably close to the prosecution years can also be demonstrative of wilfulness. Middleton, 246 F.3d at 836-837. In this case, the indictment charges the defendant with four counts of tax evasion for the period 1999 through 2002. The evidence includes both prior and subsequent identical conduct as the defendant failed to file returns and used nominees in 1997, 1998, and 2003.

The defendant's attitude toward the reporting and payment of taxes generally is indicative of wilfulness. Hogan, 861 F.2d at 316. In this case, the defendant voluntary made the statement to the Rhode Island State Police in April 2002 that he paid no taxes. In addition, various files on the defendant’s computer will demonstrate his aversion to paying federal income taxes.

Finally, a defendant’s educational background and experience can be considered as bearing on defendant's ability to form willful intent. Guidry, 199 F.3d at 1157-1158. The evidence will show that the defendant graduated with a Bachelor of Science degree in Engineering from Brown University in 1977. The

defendant has demonstrated an ability to conduct an extremely profitable business. His business ledgers, which will be offered into evidence, shows that the defendant kept adequate records of his business transactions.

It is a defense to a finding of willfulness that the defendant was ignorant of the law or of facts which made the conduct illegal, since willfulness requires a voluntary and intentional violation of a known legal duty. However, if the defendant deliberately avoided acquiring knowledge of a fact or the law, then the jury may infer that he actually knew it and that he was merely trying to avoid giving the appearance (and incurring the consequences) of knowledge. United States v. Ramsey, 785 F.2d 184, 189 (7th Cir.), cert. denied, 476 U.S. 1186 (1986). The use of a deliberate ignorance, conscious avoidance, or willful blindness instruction may be appropriate. A number of courts have approved the use of such instructions under proper circumstances. United States v. Picciandra, 788 F.2d 39, 46 (1st Cir.), cert. denied, 479 U.S. 847 (1986).

**B. Venue**

Venue in an evasion case lies in any district where an affirmative act to evade occurred. United States v. Felak, 831 F.2d 794, 798-99 (8th Cir. 1987); United States v. Goodyear, 649 F.2d 226, 228 (4th Cir. 1981); Beaty v. United States, 213 F.2d 712, 715 (4th Cir. 1954), vacated and remanded, 348 U.S. 905,

reaff'd, 220 F.2d 681 (4th Cir. 1955). In the present case, all of the affirmative acts alleged above occurred in the Judicial District of Rhode Island. The government will present evidence that the defendant transacted business using the nominee name Joseph Adams from his residence and storage facility, both located in Rhode Island. The defendant used a bank account and a post office box, in nominee names, in Rhode Island. Finally, the defendant made significant withdrawals of cash from ATM machines in Rhode Island.

## III. Other evidentiary issues

### A. Bank Deposits Method of Proof

The government intends to prove the accurate amount of the defendant's gross receipts through a bank deposits method of proof. The bank deposits method of proof requires proof that 1) the defendant was engaged in an income producing business, 2) he made regular deposits of funds into bank accounts, 3) an adequate and full investigation of those accounts was made to differentiate between income and non-income deposits, and 4) unidentified deposits have the inherent appearance of income, e.g., the size of the deposits, odd or even amounts, fluctuations in amounts corresponding to seasonal fluctuations of the business involved, source of checks deposited, dates of deposits, accounts into which deposited, etc. United States v. Morse, 491 F.2d 149,

152 (1st Cir. 1974); United States v. Slutsky, 487 F.2d 832, 841-42 (2d Cir.), cert. denied 416 U.S. 937 (1974); United States v. Venuto, 182 F.2d 519, 521 (3d Cir. 1950).

The evidence to prove the first two elements are easily met as defendant was engaged in an income producing business activity, that is, selling electronic parts during the relevant time period. The bank account analysis of the Joseph Adams accounts at Fleet Boston Financial and Paypal confirms that defendant was engaged in this business because it shows regular deposits were made into the bank accounts in a seven year period from 1997 through 2003. Moreover, the amounts deposited and the manner in which payments were remitted, typically through third party checks and wire transfers, are consistent with the statements of the purchasers of the electronic parts, some of whom will testify at trial. Furthermore, an adequate and full investigation of the bank accounts was conducted, which shows that unidentified deposits have the inherent appearance of income in that the size of deposits, as well as the form of deposits (i.e., third party checks, wire transfers) are similar to the identified deposits.

At trial, the government expects that about fifteen of the more substantial of the defendant's customer clients will testify that they wrote third party checks or authorized wire transfer payments to Joseph Adams in exchange for electronic parts. At

this juncture, the government expects testimony and records from these witnesses to clearly identify substantial percentages of deposits into the Joseph Adams Fleet bank account as representing the defendant's business receipts. For example, the government will elicit testimony from customers to demonstrate that approximately 50% of the deposits during 1999, 2000, and 2001 represent the defendant's business receipts.

**B. Rule 404(b) evidence**

On May 8, 2006, the government provided Rule 404(b), Federal Rules of Evidence, notice of intent to introduce other acts evidence to the defendant. As stated in that notice, the government intends to introduce evidence relating to the defendant's failure to file his 1997, 1998, and 2003 federal individual income taxes.

In that same discovery letter, dated May 8, 2006, the government provided notice to the defendant that it intends to introduce defendant's state tax filing history from 1997 through 2003.

Evidence of other bad acts may be admissible pursuant to Rule 404(b) when the bad acts are indicative of motive, scheme, opportunity, or intent. Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may,

> however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of such evidence it intends to introduce at trial.

The Supreme Court established a four-part test for admission of Rule 404(b) evidence: (1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted. Huddleston v. United States, 485 U.S. 681, 691-92 (1988); United States v. Vega, 285 F.3d 256, 261 (3d Cir. 2002).

Federal courts consistently and routinely have held that the government may satisfy its inescapable burden of proving a defendant's willfulness, knowledge and lack of mistake in a criminal tax case by introducing evidence of the defendant's prior tax history, including a failure to file tax returns or a failure to pay taxes due and owing. "As we have often explained, a defendant's past taxpaying record is admissible to prove willfulness circumstantially." United States v. Bok, 156 F.3d 157, 165 (2d Cir. 1998)(citing United States v. Klausner, 80 F.3d 55, 63 (2d Cir. 1996)(holding that failure to file tax returns and underestimating tax liability for purposes of estimated

payments for the tax years at issue constituted evidence of willfulness); see also United States v. Ebner, 782 F.2d 1120, 1126 n. 7 (2d Cir. 1986)("The jury may consider evidence of intent to evade taxes in one year as evidence of intent to evade payment in prior or subsequent years"); United States v. Upton, 799 F.2d 432, 433 (8th Cir. 1986)("evidence of [defendant's] questionable compliance with tax laws, both in the years prior to and subsequent to [the years of the charged conduct] is probative of willfulness"); United States v. Adcock, 558 F.2d 397, 402 (8th Cir.), cert. denied, 434 U.S. 921 (1977) ("It is also well settled that in a tax case the government may show proof of unreported income in prior years indicating a pattern of understatement of income which is relevant to the issue of willful intent").

Initially, the government contends that the defendant's attempts to evade federal taxes during 1997, 1998 and 2003 constitute "intrinsic evidence" to the charged offenses and not subject to Federal Rule of Evidence 404(b). In an abundance of caution, if the Court were to find that these acts are not intrinsic to the charged offenses, the government gave notice of its intention to introduce the following "other acts" of defendant in its discovery letter dated May 8, 2006.

**C. Admissibility of Documents**

As in all tax cases, the government will offer numerous documents into evidence.

**1. IRS Service Center Records**

The government will offer documents from the Internal Revenue Service Center through an IRS Service Center Representative. These documents primarily include an IRS certification of lack of records and certificates of assessments and payments relating to the defendant's federal income tax history, which are admissible under Federal Rules of Evidence 803(6), 803(8), 803(10), and 902. In addition, the government will also produce similar evidence of a lack of records for Joseph Adams, Adams Associates, Inc., JA Enterprises, and Universal Audio since the defendant used these nominee names to conduct business.

**2. Business Records**

The government will also offer business records pursuant to Federal Rule of Evidence 803(6). A business record must satisfy four requirements in order to be admissible under Rule 803(6): (1) it must have been made in the course of a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the regular practice of that business must have been to have made the document; and (4) the

document must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge. United States v. Grossman, 614 F.2d 295, 296-97 (1st Cir. 1980).

The government's evidence will include bank records. The bank records consist of bank account statements, checks, deposit items, and signature cards. Although these documents will be admissible as business records pursuant to Rule 803(6), Fed.R.Evid, as noted above, it is also noted that checks may be admitted into evidence as commercial paper and related documents as outlined in Fed. R. Evid. 902(9). Such checks are self-authenticating and may be admitted without a witness. Some are signed by the defendant and qualify as admissions pursuant to Rule 801(d)(2). As a negotiable instrument, a check is a species of commercial paper, and therefore self-authenticating. See Fed.R.Evid. 902(9); United States v. Pang, 362 F.3d 1187, 1192 (9th Cir.), cert. denied, 543 U.S. 943 (2004).

Furthermore, the checks are not hearsay. Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed R. Evid. 8019©. However, out-of-court statements that are offered as evidence of legally operative verbal conduct are not hearsay. They are considered "verbal acts." Stuart v. UNUM Life Ins. Co. of America, 217 F.3d

1145, 1154 (9th Cir. 2000).

In addition, the government will introduce records from approximately fifteen customers who purchased electronic equipment from the defendant. These records include cancelled checks and invoices relating to their purchase. Consequently, such records will be admissible pursuant to Rules 803(6) and 902(9) as above indicated.

**3. Duplicates**

Many of the documents that the government intends to offer into evidence are photocopies of documents. Photocopies are admissible pursuant to Federal Rules of Evidence 1002 and 1003. The Federal Rules of Evidence provide that the original writing, recording, or photograph is not required. "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R. Evid. 1003.

**4. Certified Documents – Public Records**

The government may offer into evidence certified copies of certain public records. Certified copies of public records require no extrinsic evidence of authenticity to be admitted. Fed. R. Evid. 902(1) and (4).

**D. Defendant's admissions**

The government intends to offer numerous admissions made by defendant. The defendant made statements to the Rhode Island State Police on September 12, 2002 and September 13, 2002 which will be used at trial. A defendant's statement is never considered hearsay when offered by the government. Fed. R. Evid. 801(d)(2)(A). Rather, the statement is an admission by a party opponent, and it does not require any special guarantee of trustworthiness. United States v. Singleterry, 29 F.3d 733, 736 (1st Cir.). cert. denied, 513 U.S. 1048 (1994). Rule 801(d)(2) "does not limit an admission to a statement against interest." United States v. Turner, 995 F.2d 1357, 1363 (6th Cir), cert. denied, 510 U.S. 904 (1993).

**1. Unrecorded statements, September 12, 2002.**

On September 12, 2002, the defendant made incriminating statements at his residence and at a storage facility during a consent search by the R.I.S.P.. The search was conducted as a result of an investigation unrelated to the present tax charges. The defendant signed consent forms allowing searches of both his residence and his storage facilities. Statements made by the defendant were unrecorded and were made by the defendant in the presence of several R.I.S.P. officers. The defendant's statements include the following:

a) That he had about $147,000 of cash in his room;

b) That the bundles of cash in his room constituted his savings from his personal business ventures;

c) That he did not trust banks;

d) That Joseph Adams was an alias he used for business purposes and that the individual Joseph Adams never existed;

e) That he never paid state or federal income taxes;

f) That Universal Audio was another company he assumed under an alias.

A R.I.S.P. detective prepared a narrative of the search which includes the defendant's statements. This narrative was provided to the defense on May 8, 2006. The government intends to introduce the defendant's statements during the search through the testimony of the R.I.S.P..

**2. Recorded statements, September 13, 2002.**

Later that same evening, on September 13, 2002, the defendant was interviewed by an R.I.S.P. detective at the R.I.S.P. station. This interview was tape recorded and, later, transcribed. The government provided a copy of the tape and transcript to the defendant by federal express on or about May 12, 2006. These statements are admissible against the defendant pursuant to Federal Rule of Evidence 801(d)(2)(A).

The government will move to admit the tape recording of the interview at trial. The defendant consented to the tape

recording of the interview on April 13, 2002. He signed a waiver of rights form prior to the interview. In that recording, the defendant made several incriminating statements, including the following:

47. Q. Now, that's Joseph Adams?
A. Joseph Adams.

48. Q. And is that one of your names –
A. – was the president of the corporation.

49. Q. ...that you use? But that's you, correct?
A. That's a fictitious name, yes.

50. Q. Okay. And that's a fictitious name, an alias of yours?
A. Yes.

84. Q. Okay. What do you do for a living?
A. I'm a self-employed, um, computer electronic technician and wholesale distributer.

85. Q. And earlier you mentioned that, in front of a couple of detectives, that you had used Joe Adams as an alias.
A. That's a business alias, yes.

88. Q. Okay. And the – okay. The money that's at your house, that's your own money correct?
A. Yes.

89. Q. Your personal savings?
A. That's right.

90. Q. Okay. And how much money is there, roughly?
A. There's roughly, uh, over a hundred thousand.

96. Q. Okay. What is Universal Audio?
A. That was a, a name I used as a, um – very short lived name to get a, uh, UPS account.

The recording of a conversation with the consent of one of the parties may be admitted into evidence in a federal prosecution. United States v. Armocida, 515 F.2d 49, 52 (3d Cir.), cert. denied, 423 U.S. 858 (1975). The Government must introduce clear and convincing evidence of the authenticity and accuracy of the recording. United States v. Starks, 515 F.2d 112, 121 (3d Cir. 1975); United States v. Seibert, 779 F. Supp. 366, 369 (E.D. Pa.), cert. denied, 510 U.S. 875 (1993); 18 U.S.C. § 2511(2)(c).

The recording will be authenticated through the testimony of the participating R.I.S.P. detective. The government will be prepared to offer the testimony of this witnesses that he recognizes the tape as a recording of the interview, that he has listened to the recording, that he recognizes the voices on the recording and that to the best of his knowledge the tape fairly and accurately reflects the interview. See United States v. Young, 105 F.3d 1, 8, n.2 (1st Cir. 1996).

It should be noted that only a portion of the interview may be relevant to the issues in this case. Rather than play the recording in its entirety, the government intends to use a condensed version taken from the original. Courts have admitted such tapes when properly authenticated. See United States v. Carbone, 798 F.2d 21, 24 (1st Cir. 1986)

It should be noted that the tape recording also contains many questions and answers concerning the immediate R.I.S.P. investigation which is unrelated to the tax offenses charged in the indictment. The government will prepare a version of the tape with only relevant materials.

However, the government notes that the defendant's prior conduct investigated by the R.I.S.P. may become an issue during trial. As will be subsequently discussed, the issue of the circumstances of the R.I.S.P. investigation may become germane at trial in the present case.

The interview has been transcribed by an R.I.S.P. employee. Transcripts of the tape may be used to assist the jury. See, United States v. DiSalvo, 34 F.3d 1204, 1219-21 (3rd Cir. 1994); Government of the Virgin Islands v. Martinez, 847 F.2d 125, 128 (3d Cir. 1988). Transcripts are typically used when a tape is of questionable clarity. United States v. West, 948 F.2d 1042, 1044 (6th Cir. 1991), cert. denied, 502 U.S. 1109 (1992); United States v. Slade, 627 F.2d 293, 302 (D.C. Cir.), cert. denied, 449 U.S. 1034 (1980). Transcripts are admissible to aid the jury as it listens to a tape. United States v. Adams, 759 F.2d 1099, 1115 (3d Cir. 1985), cert. denied, 474 U.S. 906 (1985); United States v. Costa, 691 F.2d 1358, 1362 (5th Cir. 1982). The court should, however, instruct the jury that the tape recording controls over the transcript in case of error or ambiguity. Adams at 1115.

**E. Seized materials**

**1. Documents**

As previously noted, the government executed a consent search of the defendant's residence and his storage facility on April 12, 2002. Numerous documents were seized which the government intends to offer into evidence to establish its case. These records include bank statements of the Joseph Adams account, records pertaining to Universal Audio, ledgers of the defendant's business activities, and identification, credit and debit cards with the name of Joseph Adams and Neil Stierhoff.

The government will authenticate the seized documents by eliciting testimony from the R.I.S.P. detective who was in charge of the consent searches. His testimony will be sufficient to authenticate the documents pursuant to Rule 901, Fed.R.Evid..

**2. Computer**

In addition, the R.I.S.P. seized a computer from the defendant's residence pursuant to his consent on April 12, 2002. By order, dated March 13, 2007, this Court suppressed the tax-related files from the computer.

The government has moved in limine requesting permission from the Court for the government to use relevant computer file evidence in its cross-examination of the defendant and its rebuttal case. If granted, the government intends to use the

computer files as follows:

a) IRS tax code requirements;

b) Off-shore havens;

c) Defendant's admissions to financial security;

d) Defendant's purchases of personal items which were paid with business funds;

e) Travel guides;

f) Identity concealment guides;

g) E-bay sales;

h) "Joseph Adams" signature file;

I) Defendant's relationship with Shelby Storage.

**F. Summary and Expert Witnesses**

To assist the jury in the examination of the unreported gross receipts in this case and to prove the charges in the indictment, the government intends to present summary/expert witness testimony. In this case, the government will have IRS Revenue Agent Michael Pleshaw testify at trial in the government's case-in-chief.

In the government's discovery letter provided to defense counsel, dated May 8, 2006, the government notified the defendant that IRS Revenue Agent Michael Pleshaw would be called as a witness at trial and provided all of the summaries which will form the basis for Mr. Pleshaw's testimony. Mr. Pleshaw's

curriculum vitae was also provided to the defense.

Mr. Pleshaw's anticipated testimony will include a description of the bank deposits method of proof which was utilized to determine the business gross receipts. He will testify that the bank deposits method of proof has been a long accepted manner of computing an individual's gross income.

In addition, Mr. Pleshaw will also testify about the unreported gross receipts received by defendant from his sale of electronic parts, the business expenses incurred by the defendant, and the resultant taxable income and taxes due and owing.

The government does not intend to qualify Mr. Pleshaw as an expert witness. "It is well established that the nature of a summary witness' testimony requires that he draw conclusions from the evidence presented at trial. When a summary witness simply testifies to what the Government's evidence shows, he does not testify as an expert witness." United States v. Pree, 384 F.3d 378, 391 (7th Cir. 2004), citing, United States v. Esser, 520 F.2d 213, 218 (7th Cir.). cert. denied, 426 U.S. 947 (1976) and United States v. Swanquist, 161 F.3d 1064, 1073 (7th Cir.), cert. denied, 526 U.S. 1160 (1999).

A non-expert summary witness may appropriately testify as to what the government's evidence showed. United States v. Swanquist, 161 F.3d at 1072-73. Mr. Pleshaw will testify

regarding his analysis of the transactions which necessarily stems from the testimony of other witnesses. United States v. Pree, 384 F.3d at 392. Mr. Pleshaw will not offer an opinion or draw on some special skill, knowledge, or experience that the jurors themselves do not possess. See, e.g., United States v. Benson, 941 F.2d 598, 604 (7th Cir. 1991).

The use of summary testimony and documents is governed by Rule 1006 of the Federal Rules of Evidence, which is broadly interpreted. United States v. Bishop, 264 F.3d 535, 547 (5th Cir.), cert. denied, 535 U.S. 1016 (2002). Rule 1006 of the Federal Rules of Evidence permits a party to introduce in the form of a chart, summary, or calculation "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court." Thus, Rule 1006 allows admissions of summaries when (1) the evidence previously admitted is voluminous, and (2) review by the jury would be inconvenient. Bishop, 264 F.2d at 547; United States v. Goldberg, 330 F.2d 30, 43 (3d Cir.), cert. denied, 377 U.S. 953 (1964).

Summary evidence must have an adequate foundation in evidence that is already admitted and should be accompanied by a cautionary jury instruction. Id. Full cross examination and admonitions to the jury minimize the risk of prejudice. United States v. Castillo, 77 F.3d 1480, 1499-1500 (5th Cir.), cert. denied, 519 U.S. 868 (1996). The Fifth Circuit approved a

cautionary instruction that "summaries do not, of themselves, constitute evidence in the case but only purport to summarize the documented and detailed evidence already submitted" and instruction that "a witness's summary is not the evidence, the evidence is the documents themselves that he has been referring to." United States v. Lavergne, 805 F.2d 517, 521-22 (5th Cir. 1986); See also, United States v. Swanquist, 161 F.3d at 1073 (court instructed the jury that the summary charts were not evidence, that they were admitted simply to aid the jurors in evaluating the other evidence, and that it was for the jurors to decide whether the evidence supported the summaries).

Summary charts in particular are admissible when (1) they are based on competent evidence already before the jury, (2) the primary evidence used to construct the charts is available to the other side for comparison so that the correctness of the summary may be tested, (3) the chart preparer is available for cross-examination, and (4) the jury is properly instructed concerning the use of the charts. Bishop, 264 F.3d at 547; United States v. Goodwin, 470 F.2d 893, 899 (5th Cir.), cert. denied, 411 U.S. 969 (1973). Summaries may accompany the jury to the jury room. Bishop, 264 F.3d at 547; United States v. Winn, 948 F.2d 145, 158-59 (5th Cir.), cert. denied, 503 U.S. 976 (1992). The Fifth Circuit approved the following instruction:

> Charts and summaries were shown to you in order to make the other evidence more meaningful and to aid you in

> considering the evidence. They are no better than the testimony and the documents upon which they are based, and are not themselves independent evidence. Therefore, you are to give no greater consideration of these schedules and summaries than you would give to the evidence upon which they are based.
>
> It is for you to determine the accuracy of the summary charts. You are entitled to consider the charts, schedules, and summaries if you find that they are of assistance to you in analyzing the evidence and understanding the evidence.

United States v. Bishop, 264 F.3d at 548.

In order to be admissible, a summary need not address all of the evidence. Bishop, 264 F.3d at 548. It is proper to admit summary charts reflecting only the government's evidence of the case as long as the jury is informed that the charts represent "the Government's submission of the Government's theory" of the case. United States v. Swanquist, 161 F.3d at 1073.

The defendant received notice of these summaries and had an opportunity to review them prior to trial. The underlying documents supporting the charts were made available to the defense for examination or copying and will be admitted at trial.

## IV. Other issues for pretrial consideration

### A. Motion in limine

On March 16, 2007, the government filed a Motion in Limine requesting permission to use the suppressed computer evidence to cross-examine the defendant in the event he testified at trial or

in the government's rebuttal case.

**B. Exclusion of witnesses, Rule 615, F.R.E.**

The government will request that the witnesses be excluded from the courtroom during trial pursuant to Rule 615, Federal Rules of Criminal Procedure. Rule 615 provides:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause, or (4) a person authorized by statute to be present.

The government will request that Mr. Pleshaw be permitted to remain in the courtroom throughout the presentation of the evidence. The government contends that Mr. Pleshaw is a person whose presence is essential to the presentation of the government's case. Rule 615(3), Fed.R.Evid. In addition, the purpose for sequestering a witness is "to prevent the shaping of testimony by witnesses to match that given by other witnesses." United States v. Strauss, 473 F.2d 1262, 1263 (3d Cir. 1973); United States v. Cozzetti, 441 F.2d 344, 350 (9th Cir. 1971). When the witness's testimony relates only to a summary of records and does not depend on any prior testimony, even the rationale for the sequestration of the witness is absent. Id. Accordingly, Mr. Pleshaw should be excluded from a sequestration order and be permitted to be present in the courtroom throughout

the trial.

**C. Demonstrative Aids**

The Government may seek permission of the Court to use certain demonstrative aids at trial. The government intends to use charts and graphs as a pedagogical device. Any pedagogical device is intended only as an illustrative tool; the government will not move it into evidence. Use of such exhibits is consistent with local custom, subject to the discretion of the Court. Trial courts have discretion to permit counsel to employ pedagogical device summaries to clarify and simplify testimony or other information and evidence or to assist counsel in the presentation of argument to the court or the jury. United States v. Bray, 139 F.3d 1104, 1111 (6th Cir. 1998).

**D. Issues related to the R.I.S.P. investigation**

As has been previously alluded to in earlier sections, the possibility exists that the facts underlying the R.I.S.P. investigation may or may not be presented in the instant case. The defendant was ultimately convicted in state court of the offense investigated, and the government has provided the defendant with information relating to this conviction.

The government finds it necessary to set forth its position on the admissibility of various factors relating to the state investigation in the present tax case. In some circumstances,

the state investigation and federal charges are related. The R.I.S.P. seized documents pursuant to the state investigation which the government will offer into evidence in the present case. Statements were made by the defendant to the R.I.S.P. in the context of the state investigation which the government intends to use in the present matter. The seized computer contains items both related to the state investigation and the instant tax case.

At this time, the government does not intend to present evidence relating to the conduct which gave rise to the state charges. However, it is possible that during the trial, the defense may "open the door" through its witness examinations or arguments which may allow the government to put forth the underlying state charges to the jury as a means to clarify any misconceptions.

Specifically, the government notes that the defendant may bring the state charges into play in the instant case if the defendant argues that:

a) The R.I.S.P. improperly seized documents;

b) The R.I.S.P. improperly interviewed the defendant;

c) The R.I.S.P. improperly seized the computer;

d) The computer did not constitute the defendant's personal property;

e) The defendant's use of the rental car was for purely

business purposes;

f) The defendant's good character.

If any of these matters are put forward by the defense at trial, the government will seek the court's permission to allow testimony relating to the underlying state charges.

**V. CONCLUSION**

The foregoing is a summary of points the government expects may arise at trial. If any legal issues arise that have not been covered in this memorandum, the government respectfully requests permission to file supplemental memoranda of law.

WHEREFORE, the government respectfully submits its Pretrial Memorandum.

Respectfully submitted,
UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

/s/John N. Kane
JOHN N. KANE

/s/Thomas G. Voracek
THOMAS G. VORACEK
Trial Attorneys
U.S. Department of Justice

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed, with the Clerk of Court using the CM/ECF system, a true and accurate copy of the within Government's Pretrial Memorandum, which will in turn send notification to Alan S. Richey, Attorney at Law, **asratty@gmail.com,** and to Scott A. Lutes, Attorney at Law, **scottluteslaw@yahoo.com,** and by regular mail, postage prepaid to Alan S. Richey, P.O. Box 1505, Port Haddock, Washington 98339 and to Scott A. Lutes, One Turks Head Place, Suite 1440, Providence, Rhode Island 02903.

/s/Thomas G. Voracek
Thomas G. Voracek