UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) No. 1:06cr42ML |
| v. | ) DEFENDANT'S MOTION FOR A NEW TRIAL |
| NEIL STIERHOFF, Defendant. | ) |

COMES NOW the Defendant, by and through his counsel of record, and moves this Court for a new trial pursuant to FRCrP 33.

Although there are likely other errors that can be more fully developed upon review of the transcripts, Defendant herein raises some of the more obvious errors necessitating a new trial.

Respectfully submitted this 28th day of June, 2007.

_/s/ Alan S. Richey_______________________
Alan Stuart Richey
Counsel for Neil Stierhoff
P.O. Box 1505, Port Hadlock, Washington 98339
Telephone: 360 437-4005
Email: asratty@gmail.com

__/s/ Scott A. Lutes_______________________
Scott A. Lutes
Counsel for Neil Stierhoff
One Turks Head Place, Suite 1440
Providence, RI 02903
Telephone: 861-1142
Fax: 861-1141
Email: scottluteslaw@yahoo.com

# MEMORANDUM

The Defendant moves this Court for a new trial based on the interests of justice. Rule 33 states in relevant part, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FRCrP 33(a). First, a new trial is necessary because Defendant was denied his Right under the Confrontation Clause of the Constitution to face his accusers. This violation occurred both because the witnesses who testified before the grand jury never testified at trial, and because the Court abused its authority in limiting cross-examination of witnesses. This violation was further enhanced due to the government's failure to provide Brady or exculpatory evidence. Second, a constructive amendment or a material variance occurred, necessitating a new trial. Third, a new trial is necessary due to the summary witness Michael Pleshaw being an expert witness who made factual and legal determinations of matters beyond the evidence already admitted at trial, and such conversion caused the Court to erroneously instruct the jury as to bank deposits, which directed the verdict. Fourth, the prosecution prejudiced the jury by changing the legal requirements of the law, and this Court altered the elements of the crime as set forth by the Supreme Court. Fifth, this Court refused to instruct the jury as to legal defenses of Defendant, thus precluding a valid defense set forth by Congress in statute. For these reasons (and others), a new trial should be ordered by this Court.

**A. Defendant Was Denied His Right To Face His Accusers.**

The Defendant in this case was denied his Constitutionally protected Right to face his accusers. The Sixth Amendment of the Constitution guarantees the right "to be

confronted with the witnesses against him." "A primary interest secured by the Confrontation Clause is the right of cross-examination." *Oken v. Warden, MSP*, 233 F.3d 86, 91 (1st Cir.2000), quoting *Kentucky v. Stincer*, 482 U.S. 730, 736 (1987) (internal markings and quotes removed). A defendant is entitled to cross-examine a government witness to test the truthfulness of his testimony. *United States v. Gonzalez-Vazquez*, 219 F.3d 37, 45 (1st Cir.2000).

In this case, the right to confrontation was cut short by this Court when it did not allow the Defense to cross-examine witnesses. Some such instances were regarding the police detectives Sanzi and Killian and their seizure of evidence and statements allegedly made by Defendant. Defense was limited because this Court had previously ruled on the admissibility, and during trial this Court did not allow the Defense to question regarding coercive tactics, violation of rights, exceeding scope, etc. This Court also limited cross examination of Michael Pleshaw as to various things, amongst which was the administrative steps required to take regarding assessment, but then this Court gave a jury instruction regarding assessment (Jury Instruction No. 9, Doc. 97).

"A defendant's right of confrontation, however, goes beyond the right to cross examine, and also includes the right to confront one's accusers face-to-face. *Id.* citing *Coy v. Iowa,* 487 U.S. 1012, 1019-20 (1988); *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). "[T]he Confrontation Clause itself has ancient origins." *Lilly v. Virginia*, 527 U.S. 116, 140-41 (1999), J. Breyer, *concurring*, citing *Salinger* v. *U.S.*, 272 U.S. 542, 548 (1926) ("The right of confrontation did not originate with the provision in the Sixth Amendment, but was a common-law right"). "The right of an accused to meet his

accusers face-to-face is mentioned in, among other things, the Bible, Shakespeare, and 16th and 17th century British statutes, cases, and treatises." *Id.*, citing The Bible, Acts 25:16;[1] W. Shakespeare, Richard II, act i, sc. 1; W. Shakespeare, Henry VIII, act ii, sc. 1; 30 C. Wright & K. Graham, Federal Practice and Procedure § 6342, p. 227 (1997) (quoting statutes enacted under King Edward VI in 1552 and Queen Elizabeth I in 1558); M. Hale, History of the Common Law of England 163-164 (C. Gray ed. 1971); 3 W. Blackstone, Commentaries *373.

The First Circuit found, "A witness may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts. He can now understand what sort of human being that man is. Thus, the right to face-to-face confrontation, like the right of cross-examination, is critical for ensuring the integrity of the fact-finding process." *Oken*, 233 F.3d at 91 (internal citations omitted).

Defendant was denied his right to confront his accusers in that none of the witnesses that testified before the grand jury testified at trial. Whoever "accused" Defendant before the grand jury of committing a crime was not an "accuser" at trial. By the government refusing to call at trial whatever witnesses accused Defendant of

---

[1] As Justice Black stated, "Paul was fortunate enough to be a Roman citizen when he was made the victim of prejudicial charges; that privileged status afforded him an appeal to Rome, with a right to meet his "accusers face to face." Acts 25:16. But other martyrized disciples were not so fortunate. Our Constitution has led people everywhere to hope and believe that wherever our laws control, all people, whether our citizens or not, would have an equal chance before the bar of criminal justice." *Johnson v. Eisentrager,* 339 U.S. 763, 798 (1950), J. Black, *dissenting.*

committing a crime to the grand jury, the government prevented Defendant from confronting his accusers face-to-face and cross-examining those witnesses.

When the government fails to disclose information it has in its possession, such as Brady or exculpatory evidence, a new trial must be granted when the withheld evidence merely creates a “reasonable probability that the evidence would have changed the result.” *United States v. Josleyn,* 206 F.3d 144, 151 (1st Cir.2000). In this case, the Defense does not know what documents or what evidence was provided to the grand jury, but the defense moved this Court for disclosure of such, which was denied without cause or reason. Also, summary witness Michael Pleshaw testified that he had a folder containing papers and documents which he used in preparing his summary charts, but those papers were never disclosed and were not documents admitted into evidence. Further, during the course of trial, matters such as third-party summons which had been issued by the CID case agent but never disclosed and which would have allowed the Defense to question the witnesses regarding such things as notice to Defendant by those third parties as well as by the IRS. This in particular is important since a major defense was that no notice of wrongdoing was ever given Defendant by the government.

**B. A Constructive Amendment Or A Material Variance Occurred.**

The failure of the government to call as witnesses during trial the same witnesses who testified before the grand jury also raises the error of a material variance or constructive amendment. The First Circuit explained,

> A constructive amendment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecution or court after the grand jury has last passed upon them. A variance occurs when the

> charging terms remain unchanged but when the facts proved at trial are different from those alleged in the indictment. A constructive amendment is considered prejudicial per se and grounds for reversal of a conviction. Variance is grounds for reversal only if it affected the defendant's "substantial rights" — i.e., the rights to have sufficient knowledge of the charge against him in order to prepare an effective defense and avoid surprise at trial, and to prevent a second prosecution for the same offense.

*United States v. Fisher*, 3 F.3d 456, 462-63 (1st Cir.1993); see also *United States v. Arcadipane,* 41 F.3d 1, 6 (1st Cir.1994)(variance requires reversal of a conviction when it is both material and prejudicial).

In this case, a constructive amendment occurred when the government alleged that their theory of the case was evasion of assessment, (Doc. 40 at 4), as that was not particularly found by the grand jury. This was material because the First Circuit has found that a charge under section 7201 is either a "willful attempt to evade or defeat" the "assessment" of a tax or the "payment" of a tax. *U.S. v. Hogan*, 861 F.2d 312, 315 (1st Cir.1988). Further constructive amendment occurred when summary witness Mr. Pleshaw testified that the "tax" Defendant was charged with evading was both "income" and "self-employment" taxes. He further testified that Defendant was required to file Form 1040 but could not say where that requirement came from. These were all constructive amendments.

In the alternative that these were not constructive amendments, they certainly amount to material variances which clearly prejudiced Defendant, inasmuch as these were matters not specifically alleged in the indictment and Defendant had no notice or opportunity to prepare a defense. Further, the fact that no witness at trial testified before the grand jury is a material variance inasmuch as the facts testified to at trial could not have been testified to before the grand jury.

**C. The Summary Witness Testified Beyond Mere Summary But Rather As An Expert, Which Also Required An Erroneous Instruction From The Court Regarding Bank Deposits Method While The Court Refused To Give A Limiting Instruction.**

A new trial is necessary because the summary witness, Michael Pleshaw, testified far beyond a summary of the evidence, rather he testified as an expert with expert opinions. This Court refused, however, to give a limiting instruction regarding his summary testimony. This Court then gave an erroneous jury instruction regarding Bank Deposit Methods which directed a verdict of guilty.

FRE Rule 1006 governs the use of summaries. "It is well-established that '[t]he nature of a summary witness' testimony requires that he draw conclusions from the evidence presented at trial." *U.S. v. Esser*, 520 F.2d 213, 218 (7th Cir.1975). When a summary witness simply testifies as to what the government's evidence shows, he does not testify as an expert witness. *U.S. v. Swanquitst*, 161 F.3d 1064, 1073 (7th Cir. 1998). "If evidence does not exist in the record, the testimony can hardly be a summation of it." *United States v. Casas,* 356 F.3d 104 (1st Cir.2004), citing *United States v. Kayode,* 254 F.3d 204, 211-12 (D.C.Cir.2001). Further, "evidence which is based on inadmissible hearsay is itself inadmissible." *Id.*, citing *Martin v. Funtime, Inc.*, 963 F.2d 110, 116 (6th Cir.1992); *Hackett v. Housing Auth.,* 750 F.2d 1308, 1312 (5th Cir.1985).

During the course of trial, this Court ruled that Mr. Pleshaw was only testifying as a summary witness. This Court then reviewed three First Circuit cases: *Milkiewicz*, *Mikutowicz,* and *Serafino.* It then erroneously found that Mr. Pleshaw could perform calculations that no witness had testified to, but that would still be summary testimony.

This was legal error, as those cases hold just the opposite of this Court's ruling.

In *Milkiewicz*, the First Circuit found, regarding the IRS agent who testified regarding the tax calculations, after citing the *Mikutowicz* and *Serafino* cases, "The district court thus fully met any gate-keeping responsibility to ensure the reliability and pertinence of **expert testimony**." *United States v. Milkiewicz*, 470 F.3d 390, 401 (1st Cir.2006) (emphasis added). In *Mikutowicz*, a case in which Mr. Pleshaw himself was the IRS agent testifying, that court found that Mr. Pleshaw's testimony "adhered" to the "standards" of an expert witness, and more specifically that "**expert testimony** by an IRS agent which expresses an opinion as to the proper tax consequences of a transaction is admissible evidence." *United States v. Mikutowicz*, 365 F.3d 65, 72 (1st Cir.2004) (emphasis added). In *Serafino*, the IRS agent was qualified as an **expert** and that court gave a jury instruction regarding **expert testimony**. *United States v. Serafino*, 281 F.3d 327, 330 (1st Cir.2002). Thus, each of those cases dealt with IRS agents who were experts, not merely summary witnesses.

In this case, Mr. Pleshaw's testimony went far beyond that of a summary witness. He admitted to making many legal and factual determinations which were conclusions based on his perception of the evidence, but these were not facts already in evidence. For example, he determined that Defendant was a "taxpayer" who had "taxable income," that some "bank deposits" were "gross receipts" which were "gross income" while other deposits were "non-taxable," that cash withdrawals were "personal income" to Defendant while check withdrawals were "business expenses." He determined that everything was "business" but then the taxable income was "personal."

Mr. Pleshaw determined that everything in the name of Joseph Adams was actually that of Defendant because he "controlled" it; this made Joseph Adams an "alter-ego" of Defendant. He also claimed he assessed the amount of two different taxes—income and self-employment, but then admitted he never performed an "assessment." Mr. Pleshaw also determined that Defendant was liable for personal and self-employment taxes and should have made a Form 1040. All of these "determinations" were made by Mr. Pleshaw, not by other witnesses, and they amounted to legal conclusions. These are clear illustrations that Mr. Pleshaw's testimony was that of an expert witness and not just a summary witness.

This was further clear error and prejudicial to Defendant because "an expert may not offer an opinion concerning a legal question." *Levin v. Dalva Brothers, Inc.,* 459 F.3d 68, 79 (1st Cir.2006). The Federal Rules of Evidence "prohibit experts from offering opinions about legal issues that will determine the outcome of a case. That is, they cannot testify about legal issues on which the judge will instruct the jury." *United States v. Sinclair,* 74 F.3d 753, n.1 (7th Cir.1996), referencing FRE 702 and 704. Under Rule 702, "expert testimony that consists of legal conclusions cannot properly assist the trier of fact" "to understand the evidence or to determine a fact at issue." *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100 (1st Cir.1997). Under Rule 704, the "common law did not allow an expert witness to inform the jury of his or her factual conclusion concerning the 'ultimate issue' in the case, because this was thought to invade the province of the jury." *Id.*

Yet Mr. Pleshaw made many legal conclusions, including the ones listed above.

He testified as to his training and use of the Bank Deposits Method, and then this Court instructed the jury regarding such (Jury Instruction No. 20, Doc. 97)(which jury instruction was also a directed verdict by this Court).[2] All of this necessitates a new trial.

**D. Prosecutorial Misconduct Denied Defendant A Fair Trial.**

During closing arguments (as well as during trial), there was misconduct on the part of the prosecution which denied Defendant a fair trial. Where the proceedings are "infected with prosecutorial misconduct to such an extent that [a defendant is] denied a fair trial," a new trial is necessary. *United States v. Casas,* 425 F.3d 23, 38 (1st Cir.2005). The factors a court weighs to determine whether the misconduct "so poisoned the well" so as to require a new trial are: "(1) the severity of the misconduct; (2) the context in which it occurred; (3) whether the judge gave any curative instructions and the likely effect of such instructions; and (4) the strength of the evidence against the defendant." *Id.*, citing *United States v. Manning*, 23 F.3d 570, 574 (1st Cir.1994). The court is to take a "balanced view of the evidence in the record." *Id.* quoting *United States v. Rodriguez-De Jesus,* 202 F.3d 482, 485 (1st Cir.2000).

During closing arguments, the government argued that the jury knew of the duty to file a return and argued that everyone today knows of that duty unless they live in the backwoods never coming to civilization or are a recent immigrant. In essence, the

---

[2] This Court and Mr. Pleshaw ignored the Supreme Court's finding that "Bank deposits are not physical—tangible—property but choses in action—indebtedness—intangible property." *Wheeling Steel Corp v. Fox*, 298 U.S. 193, 214, 215 (1936); *Virginia v. Imperial Coal* Co., 293 U.S. 15, 19, 20 (1934); *Baldwin v. Missouri*, 281 U.S. 586, 591, 593 (1930); *Fidelity & Columbia Trust Co. v. Louisville*, 245 U.S. 54, 58 (1917).

government argued that the duty to file is a common-law duty—ie., everyone knows. This is contrary to the law of willfulness in criminal tax cases.

Under our constitutional system, "federal crimes are defined by statute rather than by common law." *United States v. Hudson*, 7 Cranch 32, 34 (1812). "There is no federal common law of crimes." *Central Bank of Denver v. First IS Bank of Denver,* 511 U.S. 164, 181 (1994).

The Supreme Court overruled the Seventh Circuit definition of willfulness that "even actual ignorance is not a defense unless the defendant's ignorance was itself objectively reasonable." *Cheek v. U.S.*, 498 U.S. 192, 198 (1991). The Supreme Court found more than seventy year ago, "based on the notion that the law is definite and knowable, the common law presumed that every person knew the law. This common law rule has been applied by the Court in numerous cases construing criminal statutes." *Id.* at 199. The Court then explained that the common law general rule does not apply in tax and banking cases; "Congress has accordingly softened the impact of the common law presumption by making specific intent to violate the law an element of certain federal criminal tax offenses." *Id.* at 200. This is due to the "proliferation of statutes and regulations." *Id.* Thus, the prosecutor's argument was contrary to the Supreme Court.

The Supreme Court then specifically dealt with the issue of ignorance of the law; "We deal first with the case where the issue is whether the defendant knew of the duty purportedly imposed by the provision of the statue or regulation he is accused of violating, a case in which there is no claim that the provision at issue is invalid." *Id.* at 201-02. Thus, "ignorance of the law" is an excuse. *Bryan v. U.S.*, 524 U.S. 184, 195

(1998). In this case, we are dealing with the issue of whether defendant knew of the duty, but not even the government nor their "summary witness" could testify as to what statute or regulation imposed the alleged duty. This also is contrary to law. *See United States v. Pesaturo*, 476 F.3d 60, 66 (1st Cir.2007) (a specific statute must impose the duty); see also *United States* v. *Galletti,* 541 US 114 (2004). The Court then specifically ruled, "In such a case, if the Government proves actual knowledge of the pertinent legal duty, the prosecution, without more, has satisfied the knowledge component of the willfulness requirement. But carrying this burden requires negating a defendant's claim of ignorance of the law." *Cheek*, 498 U.S. at 202.

In this case, the government did not prove actual knowledge of the law; rather it attempted to avoid its burden to prove knowledge of the law, first, by not alleging what law imposed the duty, second, by claiming it was a common-law duty (everyone knows), and third, by then arguing that Defendant has not explained why he did not file, improperly shifting the burden to Defendant. Although this Court did sustain an objection only as to the shifting of the burden, it is clear that at that point the well was completely poisoned. It was severe in that it was totally contrary to law. It occurred in closing—one of the last things the jury heard. This Court only sustained the objection as to the shifting of the burden of proof but not as to the legal error, thus failing to cure the erroneous argument. Finally, there was no evidence that Defendant had any knowledge of the law, nor could Mr. Pleshaw or any other witness testify as to what law imposed the alleged duty; the government entered no evidence nor identified any for that was required by law for Defendant to make nor that Defendant was aware of that

unidentifiable law. Rather, the alleged requirement to file was based on what individuals (jurors or Mr. Pleshaw) thought or perceived the duty to be, not on what the law actually required.

Couple these egregious errors with the prior errors listed in Arguments A, B, and C, and it becomes clear that the well was so poisoned that no jury could ever find Defendant not guilty. A new trial is necessary in this case.

**E. This Court Misstated The Law And Refused To Properly Instruct The Law.**

A new trial is necessary because this Court misstated the law in its jury instructions and refused to properly instruct the jury regarding the law, thus prejudicing Defendant and preventing him from a valid defense to which he was entitled.

Examination of jury instructions focuses on "whether they adequately explained the law or whether they tended to confuse or mislead the jury on the controlling issues." *Federico v. Order of Saint Benedict*, 64 F.3d 1, 4 (1st Cir.1995). "If a judge misstates the law in an instruction, this is error." *United States v. Lemoure*, 474 F.3d 37, 44 (1st Cir.2007).

This Court instructed the jury that the elements under section 7201 are:

One: that the defendant had a substantial tax due and owing;
Two: that the defendant willfully attempted to evade or defeat the assessment of this tax; and
Three: that the defendant committed an affirmative act in furtherance of this willful attempt to evade or defeat the assessment of the tax.
(Jury Instruction No. 14, Doc. 97)

This jury instruction is contrary to the elements found by the Supreme Court. In *Sansone,* the Court ruled, "As has been held by this Court, the elements of § 7201 are willfulness; the existence of a tax deficiency; and an affirmative act constituting an

evasion or attempted evasion of the tax." *Sansone v. United States*, 380 U.S. 343, 351 (1965). It is unclear how this Court can refuse to follow a holding of the Supreme Court, especially with regards to the actual elements of the alleged crime.

First, "a substantial tax due and owing" is not the same as "a tax deficiency." Deficiency is a specific term defined by Congress. 26 U.S.C. § 6211. With tax statutes, "the literal meaning of the words employed is most important, for such statutes are not to be extended by implication beyond the clear import of the language used. If the words are doubtful, the doubt must be resolved against the Government and in favor of the taxpayer." *United States v. Merriam,* 263 U.S. 179, 187-88 (1923). A tax deficiency arises under a specific section of the code, and "it is the tax that is assessed, not the taxpayer." *Galletti*, supra.

This Court further gave an erroneous definition of "assessment." (Jury Instruct No. 16, Doc. 97). 26 U.S.C. § 6201 gives authority to do some assessments, but not all types of taxes. 26 U.S.C. § 6203 prescribes the required method of assessment. After assessment, there are statutory procedures of notice and opportunity prior to the tax ever becoming due and owing. 26 U.S.C. §§ 6212 through 6215. Only after following all of these statutory procedures does the tax ever become "due and owing." Therefore, not only was the jury instruction erroneous, but the government offered no evidence that an assessment was performed and that all statutory procedures were complied with, thus making the tax due and owing. The evidence was wholly deficient.

Next, this Court erroneously instructed on the element of "willfulness" by linking the affirmative act together with willfulness (Jury Instruction No. 14, Doc. 97).

This is clear error, inasmuch as "willfulness is a completely separate element from the affirmative act and should not be linked together. *Sansone*, supra. Further, the separate definition of "willfulness" was erroneous (Jury Instruction No. 17, Doc. 97). This Court refused to include the specific requirements imposed by the Supreme Court, namely that Defendant had "actual knowledge of the law," *Cheek,* 498 U.S. at 201, "specific intent to violate the law," *id.* at 200, and "we have concluded that the jury must find that the Defendant was aware of the ***specific provision of the tax code*** that he is charged with violating." *Bryan*, 524 U.S. at 191, 194. This Court refused to so instruct.

The jury instruction regarding bank deposits method (Jury Instruction No. 20, Doc. 97) was clearly erroneous and only served the purpose to enhance the testimony and credibility of the summary witness and to confuse and prejudice the jury. It took a method testified to and used only by the summary witness. Such an instruction does not express a correct citation of the law but rather to sway the jury against Defendant.

This Court also failed to give proper instructions. It failed to give a limiting instruction as to the "summary witness" Pleshaw. It failed to instruct as to Defendant's interest in the accounts under another's name (Defendant's Prop. Jury Instr. No. 12). *United States v. National Bank of Commerce*, 472 U.S. 713, 722-73 (1985); *Aquilino v. U.S.*, 363 U.S. 509, 512-513 (1960); *United States v. Murray*, 217 F.3d 46, 63 (1st Cir.2000); *Markham v. Fay,* 74 F.3d 1347, 1353 (1st Cir.1996); *Wolfe v. U.S., 806 F.2d 1410, 1411 (9th Cir.1986).* This Court also failed to instruct as to the Paperwork Reduction Act ("PRA") and its complete defense (Defendant's Prop. Jury Instr. No. 14).

The PRA defines an "information collection request" as a "written report form, application form, schedule, questionnaire, reporting or recordkeeping requirement, collection of information requirement, or other similar method calling for the collection of information." 44 U.S.C. § 3502(11) (1991). There is no dispute that "tax forms are information collection requests," *Id.;* citing *Dole v. United Steelworkers*, 494 U.S. 26, 33 (1990). The Legislative History of 1995 makes clear that the PRA was enacted to, among other things, "**eliminate exemptions**" for the "Internal Revenue Service". *House Report, 104-13, [page 8] at 171 (1995*). The Forms 1040 (Exhibits A, C, D, and E) all specifically state, "For Paperwork Reduction Act Notice, see" a specific page. Thus the form itself references the PRA, and there can be no doubt that the PRA applies. In 1995, Congress enacted 44 U.S.C. § 3512 which provides:

> (a) Notwithstanding any other provision of law, **no person shall be subject to any penalty** for failing **to comply with a collection** of information that is subject to this subchapter if -
>
> > (1) the collection of information does not display a valid control number assigned by the Director in accordance with this subchapter; or
> >
> > (2) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number.
>
> (b) The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or **judicial action applicable** thereto (emphasis added).

When a government agency collects any information from the public on any form, it must "display a valid control number assigned by the Director." 44 U.S.C. §

3512(a)(1). 44 U.S.C. § 3507(g) limits the issuance of a valid control number for a term not to exceed 3 years. The form is also required to contain a provision on the form which "inform[s] the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number." 44 U.S.C. § 3512(a)(2). After the form is approved, 44 U.S.C. § 3507(h)(3) mandates that any changes made on the form must be submitted for new approval. The Form 1040 has had OMB # 1545-0074 upon its face since 1981. This means that the number has appeared for 25 years and 22 years longer than allowed by section 3507(g); it has appeared for more than three years. This makes the 1040 Form in violation of the law.

Furthermore, the 1040 Form has received changes to the standard deduction each year on the reverse page [page 2] of which changes were never noticed for approval to the Office of Management and Budget upon the application form 83-I. This alone violates section 3507(h)(3)(1995). This makes the 1040 Form in violation of the law.

The Form 1040 is required to "display a notice that a person is not required to respond to the collection of information unless it displays a control number which is valid." 44 U.S.C. § 3512(a)(2). The Form 1040 fails to comply with this mandate. In fact, the 1999 form 1040 merely states on the bottom of its front page, "For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 54." This can only mean page 54 of the Instruction Booklet, (exhibit B), but, the form fails to include the notice on the form itself.

For an information request, of which a Form 1040 is, to be valid and "issued in accordance with this chapter," the Form 1040 must be in accordance with 44 U.S.C. § 3506(c)(1)(B)(1995) which requires that it be:

> (i) inventoried, displays a valid control number, and, if appropriate, an expiration date;
> (ii) indicate the collection is in accordance with the clearance requirements of section 3507; and
> (iii) informs the person receiving the collection of information of:
>> (I) the reasons the information is being collected;
>> (II) the way such information is to be used;
>> (III) an estimate, to the extent practicable, of the burden of the collection;
>> (IV) whether the responses to the collection of information are voluntary, required to obtain a benefit, or mandatory; and
>> (V) the fact that an agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a valid control number.

Sections 3506(c)(1)(B), 3507 [as identified in 3506(c)(1)(B)(ii)] and 3512 establish what it means to be "issued in accordance with this chapter." The Form 1040 for years 1999, 2000, 2001, and 2002 simply do not contain any of the required information listed in sections 3506, 3507 or 3512.

Because the Form 1040 has numerous violations of the PRA, it could not have been the form that Defendant was required by law to make. The government entered no evidence whatsoever, not even the Form 1040, of what form Defendant was required to make, never mind the law that supposedly required such a filing. Because the Forms 1040 were admitted in evidence (exhibits A, C, D, and E) as well as the 1040 Instruction Booklet for 2000 (exhibit B), Defendant was entitled to the protections of the PRA. Thus, it was clear error not to instruct the jury as to the PRA as requested by Defendant.

**CONCLUSION**

Based on the foregoing, Defendant was prejudiced by the gross errors committed during trial, and a new trial must be granted.

Respectfully submitted this 28th day of June, 2007.

_/s/ Alan S. Richey______________________
Alan Stuart Richey
Counsel for Neil Stierhoff
P.O. Box 1505, Port Hadlock, Washington 98339
Telephone: 360 437-4005
Email: asratty@gmail.com

__/s/ Scott A. Lutes______________________
Scott A. Lutes
Counsel for Neil Stierhoff
One Turks Head Place, Suite 1440
Providence, RI 02903
Telephone: 861-1142
Fax: 861-1141
Email: scottluteslaw@yahoo.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I did electronically file the foregoing motion using the court's CM/ECF system which will send notice of the filing to the attorney of record for the plaintiff, Stephanie Browne, John Kane, and Thomas Voracek, and any other counsel of record through the CM/ECF system.

Dated this 28th day of June, 2007.

/s/ Alan S. Richey_
Alan S. Richey