**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR. No. 06-0042ML** |
| | : | |
| **NEIL STIERHOFF** | : | |

**GOVERNMENT'S OBJECTION TO DEFENDANT'S**
**MOTION FOR A NEW TRIAL**

The United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and John N. Kane and Thomas G. Voracek, Trial Attorneys, United States Department of Justice, respectfully submits this Government's Objection to the Defendant's Motion for a New Trial. In support of this Objection, the government submits the attached Memorandum of Law.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

/s/John N. Kane
JOHN N. KANE

/s/Thomas G. Voracek
THOMAS G. VORACEK
Trial Attorney
U.S. Department of Justice

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed, with the Clerk of Court using the CM/ECF system, a true and accurate copy of the within Government's Objection to Defendant's Motion for a New Trial, which will in turn send notification to Alan S. Richey, Attorney at Law, asratty@gmail.com, and to Scott A. Lutes, Attorney at Law, scottluteslaw@yahoo.com, and by regular mail, postage prepaid to Alan S. Richey, P.O. Box 1505, Port Haddock, Washington 98339 and to Scott A. Lutes, One Turks Head Place, Suite 1440, Providence, Rhode Island 02903.

/s/Thomas G. Voracek
Thomas G. Voracek

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR. No. 06-0042ML** |
| | : | |
| **NEIL STIERHOFF** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**GOVERNMENT'S OBJECTION TO DEFENDANT'S**
**MOTION FOR A NEW TRIAL**

The defendant moves this Court for a new trial based on several factors, which do not include newly discovered evidence. Defendant claims he was denied his right under the confrontation clause to confront his accusers because the Court limited his cross-examination of witnesses and that the government failed to provide Brady material or other exculpatory evidence and failed to call as witnesses those who testified before the grand jury. The defendant also contends that a constructive amendment or a material variance occurred and that the defendant had no notice or opportunity to prepare a defense. The defendant also claims that the government's summary witness was really an expert witness and that the Court failed to provide limiting instructions as to his testimony. The defendant also contends

that the prosecution committed misconduct during its closing arguments which denied the defendant his right to a fair trial. Finally, the defendant claims that the Court misstated the law as to the elements of the offense of tax evasion, gave an erroneous definition of assessment and the bank deposits method of proof, and refused to instruct the jury as to certain legal defenses, including the paperwork reduction act.

The government objects to the defendant's motion in its entirety.

## I. The defendant's motion for a new trial is untimely.

Although the defendant orally moved for a new trial upon the close of the government's case at trial, the defendant failed to file his motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 until June 29, 2007. Because the defendant's motion is grounded upon issues other than newly discovered evidence, it is untimely. Federal Rule of Criminal Procedure 33 which governs motions for a new trial provides:

> **(a) Defendant's Motion.**
>
> Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

> **(b) Time to File.**
>
> **(1) Newly Discovered Evidence.**
>
> Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.
>
> **(2) Other Grounds.**
>
> Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty.

Fed. R. Crim. P. 33. Thus, Rule 33 requires that the defendant's motion for a new trial grounded on reasons other than newly discovered evidence be filed within seven days after the verdict or finding of guilty.

The First Circuit has repeatedly held that the seven-day limitations period for Rule 33 motions is jurisdictional. See United States v. Glenn, 389 F.3d 283, 287 (1st Cir. 2007); United States v. Diaz, 300 F.3d 66, 78 (1st Cir. 2002). Therefore, a district court is without power to hear such motions not filed within the seven-day period, unless based on newly discovered evidence, in which case the limitations period is three years. United States v. Glenn, 389 F.3d at 287.

The defendant's motion for a new trial was filed on June 29, 2007, ten days after the verdict. Consequently, the motion is untimely and should be denied.

## II. The defendant was not denied his Confrontational Clause rights.

The government objects to the defendant's contention that he was denied his right under the Confrontation Clause to face his accusers and that the government failed to provide exculpatory material pursuant to Brady v. Maryland, 373 U.S. 83 (1963). Defendant's initial claim of error is that he was denied his right under the Confrontation Clause to face his accusers. He bases his claim on several factors. First, he claims that he was denied his right of confrontation because none of the grand jury witnesses testified at trial. Secondly, the defendant maintains that he did not receive sufficient information regarding the anticipated testimony of summary witness, Michael Pleshaw. Third, the defendant contends that he was entitled to receive information which was not provided regarding third-party summonses. Finally, the defendant contends that the Court improperly limited his cross-examination of witnesses, specifically Rhode Island State Police (RISP) detectives Timothy Sanzi and John Killian regarding their seizure of evidence and statements made by the defendant and IRS Agent Michael Pleshaw regarding administrative steps necessary for an assessment. All of these claims are unfounded.

### A. Grand jury testimony

The defendant argues that the government improperly failed

to call as trial witnesses those individuals who testified before the grand jury and failed to provide him with grand jury evidence.

There is no legal requirement for the government to call grand jury witnesses as trial witnesses or to provide grand jury materials to the defendant that are not otherwise discoverable, and the defendant cites no caselaw supporting such an argument. Indeed, the secrecy requirement of Rule 6(e) specifically prohibits the government from disclosing grand jury testimony, barring certain exceptions none of which are present or alleged in this case.[1]

The government timely fulfilled all of its discovery obligations under Fed. R. Crim. P. 16, Brady, and the Jencks Act (18 U.S.C. §3500). Immediately following the arraignment on May 9, 2006, the government provided seventeen large binders of trial exhibits, a draft of the government exhibit list, a copy of a tape of the defendant's statement to the police, and the

---

[1] Rule 6(e)(2) provides for nondisclosure of grand jury matters:

**(2) Secrecy.**

(A) No obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B).

(B) Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury:

(I) a grand juror;
(ii) an interpreter;
(iii) a court reporter;
(iv) an operator of a recording device;
(v) a person who transcribes recorded testimony;
(vi) an attorney for the government; or
(vii) a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii).

Fed. R. Crim. P. 6(e)

defendant's prior criminal record to the defendant. In several mailings after the arraignment, the government supplemented its exhibit list and provided additional exhibits to the defendant.

In addition, also on May 9, 2006, the government also provided the defendant with a detailed inventory list of materials that would not be used in the government's case-in-chief at trial and made such materials available to the defendant.

**B. IRS summary witness, Michael Pleshaw**

Also as part of his argument that he was denied his confrontation rights, the defendant specifically argues that Mr. Pleshaw maintained a folder in his office which was not turned over to the defendant in compliance with the Jencks Act (18 U.S.C. §3500). During cross-examination at trial, Mr. Pleshaw mentioned a folder he kept in his office concerning the matter.

The government provided discovery of all materials responsive to 18 U.S.C. §3500, which requires the government to produce "any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." The government provided to the defense all materials related to the subject matter of Mr. Pleshaw's testimony well in advance of trial.

On May 9, 2006, the government provided the defendant with the name and curriculum vitae of its summary witness, Michael

Pleshaw. On that same date the government also notified the defense that Mr. Pleshaw would be testifying about the bank deposits method of proof and provided the defense with dozens of schedules summarizing the evidence as well as reflecting the manner in which income and tax due and owing was determined for each of the prosecution years. The government specifically noted that these summaries would form the basis of Mr. Pleshaw's trial testimony. As updates to the summaries were subsequently developed, the defendant was provided with copies of such updated materials. Accordingly, the government fully complied with its duty to produce any statement of its witnesses, including Michael Pleshaw, which related to the subject matter as to which the witness has testified.

**C. Third-party summonses**

The defendant also contends that the government failed to provide third-party summonses to the defendant prior to trial and that such failure constituted a violation under Brady. At trial, the defendant cross-examined many government custodial witnesses about whether they received a summons or a subpoena for evidence. In fact, some witnesses provided documents to the government pursuant to summonses served by the IRS special agent conducting the criminal investigation. During trial, the defendant moved for the government to produce such third-party summonses arguing that the defendant was not provided with proper notification that

such summonses were issued.

In fact, many summonses were served upon financial institutions for records and the IRS mailed notification letters to the defendant. The post office returned these letters to the IRS as undeliverable. When the defendant raised his third-party summonses issue during trial, this information was promptly provided to the defendant.

Consequently, contrary to defendant's contention, notification of summonses sent to financial institutions were properly sent to the defendant. The defendant's contention in this regard is meritless.

**D. Cross-examination of witnesses.**

The defendant also claims that the Court improperly restricted his cross-examination of several witnesses, including Rhode Island State Police Detectives Timothy Sanzi and John Killian and IRS Revenue Agent Michael Pleshaw. Specifically, the defendant argues that his cross-examination of Detectives Sanzi and Killian concerning the seizure of documents and statements made by the defendant was limited. The defendant alleges he was denied the right to elicit information regarding "coercive tactics, violation of rights, exceeding scope, etc." (Defendant's Memorandum at 3)

Contrary to the defendant's assertions, the Court properly limited the direct and cross-examination of both parties with

respect to all witnesses in the case as to the relevant issues involved. The district court "retains wide latitude to impose reasonable limits" on cross-examination in order to avoid confusion of the issues or extended discussion of marginally relevant material. United States v. Twomey, 806 F.2d 1136, 1139 (1st Cir. 1986). Additionally, although the Confrontation Clause of the Sixth Amendment secures a right to cross-examination in order to test "the believability of a witness and the truth of his testimony," United States v. Carty, 993 F.2d 1005, 1009 (1st Cir. 1993), the right to cross-examine is not unlimited. When a witness's credibility is at issue, the trial court may limit cross-examination as long as the court allows "sufficient leeway to establish a reasonably complete picture of the witness' veracity, bias, and motivation." United States v. Laboy-Delgado, 84 F.3d 22, 28 (1st Cir. 1996) (internal quotation marks omitted). Accord United States v. Gonzalez-Vazquez, 219 F.3d 37, 45 (1st Cir. 2000).

In addition, any limitation of the Court concerning the cross-examination of Detectives Sanzi and Killian was prompted, in part, by the defendant's own request. Prior to trial, the government noted that it would not elicit testimony from either officer concerning the nature of their investigation as such may be unfairly prejudicial to the defendant. During a court conference on May 23, 2007, it was clear that the defendant also

expressed its concern that the government not elicit such testimony during trial. The Court agreed that the government should stay away from such matters during the detectives' respective testimony. Nevertheless, during cross-examination, the defendant attempted to inquire about the officers' alleged "coercive tactics". The Court properly limited such inquires as not only irrelevant to the issues in the case but also to ensure that the underlying nature of the officers' investigation was not put before the jury.

The defense further argues that his cross-examination of Mr. Pleshaw was improperly limited as to various matters, including the administrative steps required to take regarding assessment. However, the Court properly ruled that any such cross-examination was not relevant to the issues in the case.

Contrary to the defendant's contention, it is not essential that the IRS has made an assessment of taxes owed and a demand for payment in order for tax evasion charges to be brought. United States v. Daniel, 956 F.2d 540, 542 (6th Cir. 1992). In Daniel, the defendant argued that there was no tax deficiency since no assessment or demand for payment had been made. The court rejected this reasoning, holding that a tax deficiency arises by operation of law on the date that the return is due if the taxpayer fails to file a tax return and the government can show a tax liability. Daniel, 956 F.2d at 542. See also United

States v. Hogan, 861 F.2d 312, 315-16 (1st Cir. 1988). In this case, the tax deficiency arose when the defendant failed to file his individual income tax return.

Therefore, the cross-examination of Mr. Pleshaw concerning administrative assessment procedures was irrelevant in the case and the Court properly limited these questions at trial.

## III. The indictment was not constructively amended and the government's proof did not constitute a material variance of the indictment.

The defendant's contention that a constructive amendment or a material variance occurred when the government alleged that their theory of the case was evasion of assessment and that the defendant was prejudiced because he had no notice or opportunity to prepare a defense to such charges is without merit and should be rejected. The defendant previously raised similar issues in a Bill of Particulars (Doc. 40) and in a Motion to Dismiss (Doc. 88).

A constructive amendment of the indictment occurs when the charging terms of the indictment are altered at trial so that they are different from those handed up by the grand jury. United States v. Munoz-Franco, 487 F.3d 25, — (1st Cir. 2007). A material variance occurs when the proof differs from the indictment's allegations, and "is material and reversible only if

it has affected the defendant's 'substantial rights': to be informed of the charges; and to prevent a second prosecution for the same offense". Id.

In this case, the defendant was charged with four counts of tax evasion, pursuant to 26 U.S.C. §7201. Count 1 of the Indictment sets forth that:

> ... during the calendar year 1999, the defendant, NEIL STIERHOFF, a resident of Providence, Rhode Island, had and received taxable income in the sum of approximately $193,246; that upon said taxable income there was owing to the United States of America a substantial income tax; that well knowing and believing the foregoing facts, the defendant NEIL STIERHOFF, on or about April 17, 2000, in the District of Rhode Island, did willfully attempt to evade and defeat the said income tax due and owing by him to the United States of America for said calendar year by failing to make an income tax return on or before April 17, 2000, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay the Internal Revenue Service said income tax, and by committing the following acts: conducting business under the name of Joseph Adams, using a post office box in the name of Universal Audio to receive business receipts, utilizing a bank account in the name of Joseph Adams in order to deposit his business receipts, and using extensive cash.

The three other counts in the Indictment are similarly worded for the years 2000 through 2002.

The Indictment in this case sufficiently tracks the language of the statute and includes all of the elements of an offense under Section 7201. The statute states:

> Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony...

26 U.S.C. §7201.

In his Motion for a Bill of Particulars (Doc. 40), the defendant requested the provision of the tax code which imposed the tax, the specific tax the defendant is accused of evading, the government's theory of evasion as either assessment or payment, and the government's theory regarding how a tax due and owing may be established without an assessment.

In denying the Motion for a Bill of Particulars, this Court found that:

> The Government here has today actually answered two of the questions with respect to what its theory of the case is and what kind of a return they're talking about. They're talking about personal income tax returns, and their theory of the case is that the Defendant engaged in this behavior to evade the assessment of the tax. The allegation is he didn't file a return.
>
> So that should have been pretty evident; but in any event, the Government has now certainly clarified that.

Transcript of Proceedings, December 12, 2006 at p. 18.

The defendant now contends that the government's claim on December 12, 2006, that the evidence would relate to an evasion of assessment prosecution, constitutes a constructive amendment of the indictment. This contention lacks merit.

Section 7201 defines two distinct crimes: (1) the willful attempt to evade or defeat the "assessment" of a tax, and (2) the willful attempt to evade or defeat the "payment" of a tax. United States v. Hogan, 861 F.2d 312, 315 (1st Cir. 1988). The first crime includes evading the government's attempt to ascertain a tax liability while the second crime addresses an

individual's evasion of the payment of that tax. Id.

The present indictment charged the defendant with a single, cognizable crime, tax evasion. Although the indictment charged both the evasion of the assessment of an income tax and evasion of the payment of an income tax, the indictment was not duplicitous. United States v. Huguenin, 950 F.2d 23, 26 (1st Cir. 1992). The indictment clearly stated that the defendant did not file a tax return in any of the charged years. Moreover, the indictment specified the acts taken to evade the assessment of the income tax such as conducting business under the name of Joseph Adams, using a post office box in the name of Universal Audio to receive business receipts, utilizing a bank account in the name of Joseph Adams in order to deposit his business receipts, and using extensive cash. These acts coupled with the allegation of no filed tax return clearly demonstrated that the government was proceeding by an evasion of the assessment of the income tax theory and not evasion of payment. Spies v. United States, 317 U.S. 492, 499 (1943). When an indictment is one in which the elements of evasion of payment are "overborne" by the "clear and unequivocal" evasion of assessment charges, it is beyond reasonable dispute that the indictment charged the defendant with a single cognizable crime. Huguenin, 950 F.2d at 26.

The government's assertion that it would proceed on an

evasion of assessment theory at trial did not alter the charging terms of the indictment. The indictment charged one distinct crime. The evidence at trial pertained directly to the four counts of tax evasion as charged in the indictment, and to no other charges. United States v. Bradstreet, 135 F.3d 53 (1st Cir.), cert. denied, 523 U.S. 1122 (1998); United States v. Fisher, 3 F.3d 456, 463 (1st Cir. 1993). Consequently, the defendant's contention that the indictment was constructively amended should be rejected.

In addition, no material variance from the indictment occurred during trial. As noted, the government's proof did not differ from the indictment's allegations. In addition, contrary to the defendant's claims, he was not prejudiced by the government's specification of its case theory. The defendant now claims that he had no notice or opportunity to prepare a defense to an evasion of assessment charge. However, as noted by the Court, it should have been evident from the indictment that the government's case was proceeding on an evasion of assessment theory. Moreover, even if the defendant did not become aware of the government's theory until December 12, 2006, he had six months thereafter to adequately prepare a defense to such charges.

The defendant also claims that he had no notice of Agent Pleshaw's testimony that the defendant evaded both "income" and

"self-employment" taxes. But, the government provided the defendant with summaries and schedules prior to trial which clearly specified that both income and self-employment taxes constituted part of the government's proof at trial.

The defendant's claim that Agent Pleshaw's testimony as to the law concerning an individual's requirement to file a Form 1040 constituted a constructive amendment should also be rejected. It is the court's province to instruct as to the law in the case.

## IV. IRS Agent Pleshaw did not provide expert opinion testimony at trial and, therefore, the Court properly handled Agent Pleshaw's testimony concerning summaries.

The defendant contends that IRS Agent Pleshaw made factual and legal determinations of matters beyond the evidence admitted at trial and that the Court improperly failed to provide a limiting instruction with regard to his testimony.

In the government's case-in-chief, Agent Pleshaw testified to assist the jury in the examination of the unreported gross receipts and taxes due and owing in this case. As previously addressed, the defense was provided with full disclosure of the government's intent to use Agent Pleshaw as a witness, his qualifications, and the subject of his expected testimony.

At trial, Mr. Pleshaw testified about the summary exhibits

of unreported gross receipts received by defendant from his sale of electronic parts, the business expenses incurred by the defendant, and the resultant taxable income and taxes due and owing. His testimony also necessarily included a description of the bank deposits method of proof which was utilized to determine the business gross receipts. He testified that the bank deposits method of proof has been a long-accepted manner of computing an individual's gross income. The Court admitted the government's summary exhibits at trial. The defense does not contest the admission of such exhibits.

The defendant maintains that the Court impermissibly allowed Agent Pleshaw to testify about tax calculations without a determination that Agent Pleshaw was qualified as an expert. The defendant is incorrect. An IRS agent, not qualified as an expert, may apply the standard tax tables to new income totals as reflected in the summary exhibits. United States v. Milkiewicz, 470 F.3d 390, 401 (1st Cir. 2006). Agent Pleshaw simply applied the standard tax tables to the new income totals as reflected in the admitted summary exhibits.

Agent Pleshaw did not testify as an expert witness at trial or provide expert opinion testimony. "It is well established that the nature of a summary witness' testimony requires that he draw conclusions from the evidence presented at trial. When a summary witness simply testifies to what the government's

evidence shows, he does not testify as an expert witness." United States v. Pree, 408 F.3d 855, 869 (7th Cir. 2005), citing, United States v. Esser, 520 F.2d 213, 218 (7th Cir.), cert. denied, 426 U.S. 947 (1976) and United States v. Swanquist, 161 F.3d 1064, 1073 (7th Cir.), cert. denied, 526 U.S. 1160 (1999).

A non-expert summary witness may appropriately testify as to what the government's evidence showed. United States v. Swanquist, 161 F.3d at 1072-73. Mr. Pleshaw testified regarding his analysis of the transactions which necessarily stems from the testimony of other witnesses. Pree, 408 F.3d at 869. Mr. Pleshaw did not offer an opinion or draw on some special skill, knowledge, or experience that the jurors themselves do not possess. See, e.g., United States v. Benson, 941 F.2d 598, 604 (7th Cir. 1991).

Accordingly, the defendant's claim that the Court improperly handled IRS Agent Pleshaw's testimony at trial should be rejected.

**V. The government's closing arguments at trial were proper.**

The defendant contends that the government committed misconduct by improperly arguing during closing that the duty to file a tax return is a common law duty and that actual ignorance of the law is not a defense. The defendant claims that the government attempted to avoid its burden of proving the

defendant's actual knowledge of the law by arguing that everyone knows their duty to file a tax return. The defendant's characterization of the government's closing argument is incorrect. The government objects to the defendant's contention of government misconduct during its closing argument at trial.

During its closing argument, the government argued that the defendant knew he had a duty to file federal income tax returns and that his failure to file such returns was willful. Willfulness is defined as "a voluntary, intentional violation of a known legal duty." United States v. Pomponio, 429 U.S. 10, 12 (1976); United States v. Bishop, 412 U.S. 346, 360 (1973).

The government's closing argument was fairly based upon the evidence. The evidence reflected the defendant's knowledge of his duty to file returns by both direct and circumstantial evidence. Evidence of the defendant's statement to the Rhode Island State Police that he did not pay federal income tax constituted direct evidence that he was aware of his duty to file federal tax returns. Evidence of the defendant's age, education, and business activities constituted circumstantial evidence that he was sufficiently educated and experienced to know the federal tax laws. Other circumstantial evidence of the defendant's knowledge of the federal tax laws included the defendant's extensive attempts to conceal his income from the government including his use of aliases in conducting business, his use of a

bank account in the name of a nominee, and his extensive use of money orders and cash.

During its closing, the government argued that this direct and circumstantial evidence sufficiently evinced the defendant's knowledge of his duty to file a tax return and that his failure to file a tax return was willful. Since direct proof of a defendant's state of mind or intent is rarely available, willfulness typically is established by circumstantial evidence and reasonable inferences drawn from the evidence. United States v. Bussey, 942 F.2d 1241, 1248 (8th Cir.), cert. denied, 504 U.S. 908 (1991).

The government argued by comparison that the defendant was not someone new to this country who was uneducated and inexperienced, but instead was a college-educated, financially savvy individual. It was proper for the government to argue that the jury draw the essential inference of willfulness from all the facts and circumstances established from the evidence, including the defendant's characteristics. Therefore, the government's closing argument did not constitute prosecutorial misconduct. In addition, the defendant did not object to the government's comparative analysis during its closing argument at trial.

Moreover, the Court properly instructed the jury on the law concerning burden of proof and willfulness. The Court instructed that the government has the burden of proving each and every

element of the offense charged beyond a reasonable doubt. Instruction no. 9. The Court also properly instructed the jury as to willfulness, as follows:

> ... the government must prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty. If the defendant acted in good faith, however, he did not act willfully. In other words, if the defendant had a good faith misunderstanding of the law or believed in good faith that he had done all that the law required, you may not find that he acted willfully and you must find him not guilty.... The burden to prove the defendant's state of mind, as with all other elements of the crime, rests with the government. This is a subjective standard: what did the defendant actually believe, not what a reasonable person should have believed.

Instruction No. 17.

Therefore, contrary to the defendant's assertions, the government did not commit misconduct during its closing argument and the defendant was afforded his right to a fair trial as the Court properly instructed the jury on the government's burden of proof and the requirement of willfulness.

## VI. The Court properly instructed the jury as to the law and properly denied the defendant his request for an instruction on the Paperwork Reduction Act.

The defendant contends that the Court misstated the law in its jury instructions. Specifically, the defendant claims the Court improperly instructed the jury as to the elements of the offense of tax evasion. The defendant takes issue with the

Court's instructions as to each element of tax evasion. The defendant claims that the Court failed to follow the elements of tax evasion as set forth by the U.S. Supreme Court in Sansone. Sansone v. United States, 380 U.S. 343, 351 (1965). The Court's tax evasion instruction to the jury was as follows:

> ... the government must prove three (3) essential elements beyond a reasonable doubt in order to sustain its burden of proof:
>
> One: that the defendant had a substantial tax due and owing;
>
> Two: that the defendant willfully attempted to evade or defeat the assessment of this tax; and
>
> Three: that the defendant committed an affirmative act in furtherance of this willful attempt to evade or defeat the assessment of the tax.

Instruction No. 14.

Initially, the defendant argues that the Court improperly instructed the jury as to taxes due and owing. The defendant claims that the Court should have instructed the jury that the government must prove a "tax deficiency" as opposed to a "substantial tax due and owing". The defendant contends that the distinction is important because "deficiency" is a specific term under the tax code and that "assessments" and "notices" must be provided before the tax ever becomes "due and owing".

Contrary to the defendant's argument, the Court's instruction on "substantial tax due and owing" was legally sufficient. Pursuant to 26 U.S.C. §7201, the government must

prove beyond a reasonable doubt the following elements:

1. An attempt to evade or defeat a tax or the payment thereof.
2. An additional tax due and owing.
3. Willfulness.

Although the Court in Sansone used the term "deficiency" instead of "due and owing", this distinction is meaningless in the present case. The defendant's tax deficiency arose on the date that his return was due as long as the government can show a tax liability. As previously noted, the defendant's claim that the government must establish that the IRS made an assessment of taxes due and owing and a demand for payment before any tax evasion charges are brought is incorrect. Daniel, 956 F.2d at 542. A tax deficiency arises by operation of law on the date that the return is due if the taxpayer fails to file a tax return and the government can show a tax liability. United States v. Dack, 747 F.2d 1172, 1174-1175 (7th Cir. 1984); Daniel, 956 F.2d at 542. The Court properly instructed the jury that the government must prove a substantial tax due and owing.

The defendant's contention that the Court committed clear error in its willfulness instruction as it linked the affirmative act together with willfulness is incorrect. Instead, the defendant seems to claim that the Court should have instructed that the jury find willfulness without any additional language. The defendant sets forth no case law to support this contention.

Contrary to the defendant's claim, the Court properly instructed that the defendant both (2) willfully attempted to evade or defeat the assessment of the tax and (3) committed an affirmative act in furtherance of this willful attempt to evade or defeat the assessment of the tax. Instruction No. 14. There is no distinction between the Court instructing that the defendant willfully attempted to evade or defeat the assessment of the tax and merely instructing that the government prove willfulness. Moreover, as previously discussed, the Court properly instructed the jury as to "willfulness".

The defendant's claim that the Court improperly instructed the jury as to the bank deposits method of proof also is without merit. The Court instructed the jury as follows:

> .... Accordingly, you may infer that all deposits into the bank accounts, concerning which you have heard evidence, represent gross receipts to the defendant as the government asserts, if you find:
>
> One: that, during the tax years in question, the defendant was engaged in an income producing business or calling;
>
> Two: that the defendant made regular deposits of funds from that business or calling into the bank accounts at issue; and
>
> Three: that an adequate and full investigation of those accounts was conducted in order to distinguish between income and non-income deposits.

Instruction No. 20. This instruction is a correct recitation of the law. <u>See</u> <u>United States v. Morse</u>, 491 F.2d 149, 152 (1st Cir. 1974). Accordingly, the defendant's contention should be

rejected.

Finally, the defendant contends that the Court erred by failing to instruct the jury as to the Paperwork Reduction Act (PRA). The defendant provides no case law to support its claim that the PRA provides the defendant a defense to the evasion charges.

The Paperwork Reduction Act of 1980, 44 U.S.C. § 3501 et seq. ("PRA"), was enacted to limit federal agencies' information requests that burden the public. The "Public Protection" provision of the PRA states that no person "shall be subject to any penalty for failing to maintain or provide information to any agency if the information collection request involved does not display a current control number assigned by the Office of Management and Budget [OMB] Director." 44 U.S.C. § 3512. The defendant claims that because the Form 1040 has numerous violations of the PRS, it could not have been the form that the defendant was required by law to make. Courts have held that Congress created the duty to file returns in 26 U.S.C. § 6012(a) and "Congress did not enact the PRA's public protection provision to allow OMB to abrogate any duty imposed by Congress." United States v. Neff, 954 F.2d 698, 699 (11th Cir. 1992). *See also* United States v. James, 970 F.2d 750, 753 n.6 (10th Cir. 1992) (lack of OMB number does not violate PRA); Salberg v. United States, 965 F.2d 379, 383-84 (7th Cir. 1992); United States v.

Hicks, 947 F.2d 1356, 1359 (9th Cir. 1991) (failure to display OMB number on tax form is not PRA violation and does not render governmental action void); United States v. Bentson, 947 F.2d 1353, 1355 (9th Cir. 1991) (defendant convicted of violating a statute requiring him to file, not a regulation lacking OMB number), cert denied, 504 U.S.958 (1992); United States v. Kerwin, 945 F.2d 92 (5th Cir. 1991) (per curiam) (defendant was convicted under statutory requirement that he file return and since statute is not an information request, there is no violation of the PRA); Lonsdale v. United States, 919 F.2d 1440, 1443-45 (10th Cir. 1990) ("PRA" not enacted "to create loophole in the tax code").

The defendant's contention that the Paperwork Reduction Act provides him with a defense at trial lacks merit and should be rejected.

**VII. Conclusion**

Wherefore, for the foregoing reasons, the government respectfully requests that the Defendant's Motion for a New Trial be denied.

Respectfully submitted,
UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

/s/John N. Kane
JOHN N. KANE

/s/Thomas G. Voracek
THOMAS G. VORACEK
Trial Attorney
U.S. Department of Justice

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed, with the Clerk of Court using the CM/ECF system, a true and accurate copy of the within Memorandum of Law in Support of the Government's Objection to Defendant's Motion for a New Trial, which will in turn send notification to Alan S. Richey, Attorney at Law, asratty@gmail.com, and to Scott A. Lutes, Attorney at Law, scottluteslaw@yahoo.com, and by regular mail, postage prepaid to Alan S. Richey, P.O. Box 1505, Port Haddock, Washington 98339 and to Scott A. Lutes, One Turks Head Place, Suite 1440, Providence, Rhode Island 02903.

/s/Thomas G. Voracek
Thomas G. Voracek