UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

        v.                          CR No. 06-042-ML

NEIL STIERHOFF,
          Defendant.

### MEMORANDUM AND ORDER

Following a seven-day jury trial, Defendant Neil Stierhoff ("Defendant") was found guilty on four counts of tax evasion pursuant to 26 U.S.C. § 7201. Prior to trial, Defendant moved to dismiss his indictment under Fed. R. Crim. P. 12(b)(3)(B). At the close of evidence offered by the government at trial, Defendant also moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29, a new trial pursuant to Fed. R. Crim. P. 33, and a mistrial.[1] For the reasons set forth below, Defendant's motions are denied.

### I. Motion to Dismiss the Indictment

The Federal Rules of Criminal Procedure provide that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The Supreme Court has "identified two constitutional requirements for an indictment: 'first, [that it] contains the elements of the offense charged and fairly informs a

---

[1] Defendant renewed these motions at the close of all of the evidence.

-1-

defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" United States v. Resendiz-Ponce, 127 S. Ct. 782, 788 (2007) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" Hamling, 418 U.S. at 117 (quoting United States v. Carll, 105 U.S. 611, 612 (1882)); see United States v. Cianci, 378 F.3d 71, 81 (1st Cir. 2004). Simply put, "[t]he indictment should be specific enough to notify the defendant of the nature of the accusation against him and to apprise the court of the facts alleged." United States v. Brown, 295 F.3d 152, 154 (1st Cir. 2002) (citing Russell v. United States, 369 U.S. 749, 766-68 (1962)).

Defendant was charged with four counts of tax evasion pursuant to 26 U.S.C. § 7201. Section 7201 provides that "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony . . . . 26 U.S.C. § 7201. Count One of the indictment alleges:

> That during the calendar year 1999, the defendant, NEIL STIERHOFF, a resident of Providence, Rhode Island, had

and received taxable income in the sum of approximately
$193,246; that upon said taxable income there was owing
to the United States of America a substantial income tax;
that well knowing and believing the foregoing facts, the
defendant NEIL STIERHOFF, on or about April 17, 2000, in
the District of Rhode Island, did willfully attempt to
evade and defeat the said income tax due and owing by him
to the United States of America for said calendar year by
failing to make an income tax return on or before April
17, 2000, as required by law, to any proper officer of
the Internal Revenue Service, by failing to pay the
Internal Revenue Service said income tax, and by
committing the following acts: conducting business under
the name of Joseph Adams, using a post office box in the
name of Universal Audio to receive business receipts,
utilizing a bank account in the name of Joseph Adams in
order to deposit his business receipts, and using
extensive cash.

In violation of Title 26, United States Code, Section
7201.

Counts Two, Three, and Four are virtually identical to Count One,

but charge Defendant with receiving taxable income of $422,620,

$345,967, and $145,006 for the years 2000, 2001, and 2002,

respectively.

In his motion to dismiss, Defendant claims that the indictment

fails to adequately apprise him of the elements of tax evasion,

including willfulness, a tax deficiency, and an affirmative act of

evasion. Defendant also argues that the indictment is deficient

because it fails to set forth the statutory authority that imposes

the legal duty to file an income tax return or pay an income tax.

Finally, Defendant contends that the indictment is duplicitous

because it charges Defendant with evading both the "assessment" and

the "payment" of a tax. Accordingly, Defendant asks this Court to

dismiss the indictment with prejudice.

### 1. Elements of the Offense

The government argues that the indictment is sufficient because it tracks the language of the statute and includes all of the elements of the offense. In order to convict a defendant for tax evasion, the government must show (1) willfulness, (2) the existence of a tax deficiency, and (3) an affirmative act constituting an evasion or attempted evasion of the tax. Sansone v. United States, 380 U.S. 343, 351 (1965); see United States v. George, 448 F.3d 96, 98 n.2 (1st Cir. 2006) (same); United States v. Lavoie, 433 F.3d 95, 97 (1st Cir. 2005) (same); 26 U.S.C. § 7201.

A. Willfulness

Defendant argues that the indictment fails to properly allege the statutory element of willfulness. Although the indictment states that Defendant "willfully attempt[ed] to evade and defeat" his income taxes, Defendant maintains that the government was required to allege, inter alia, that he had actual knowledge of "the specific provision of the tax code that he was charged with violating." Bryan v. United States, 524 U.S. 184, 194 (1998).

The general rule is that ignorance of the law or a mistake of law is no defense to criminal prosecution. Cheek v. United States, 498 U.S. 190, 199 (1991) ("Based on the notion that the law is definite and knowable, the common law presumed that every person

-4-

knew the law."). The Supreme Court has explained, however, that:

> [t]he proliferation of statutes and regulations has sometimes made it difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the tax laws. Congress has accordingly softened the impact of the common-law presumption by making specific intent to violate the law an element of certain federal criminal tax offenses.

Cheek, 498 U.S. at 199-200. Thus, the term "willfully" has been construed as "a voluntary, intentional violation of a known legal duty." United States v. Bishop, 412 U.S. 346, 360 (1973); see Cheek, 498 U.S. at 200; United States v. Pomponio, 429 U.S. 10, 12 (1976); Lavoie, 433 F.3d at 98. More specifically, willfulness "requires the [g]overnment to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." Cheek, 498 U.S. at 201.

According to Defendant, therefore, the term "willful," as it is used in the indictment, is too vague to allege that he intended to violate a known legal duty. The Court, however, disagrees. The term "willfulness" is not vague, but is a term of art with a known meaning for tax defendants, i.e., the intentional violation of a known legal duty. See United States v. Whistler, 139 Fed. Appx. 1, 1 (9th Cir. 2005) (unpublished). Defendant's argument is flawed because it fails to distinguish between what the government must allege in an indictment and what it must prove at trial. Defendant is correct in asserting that the government must prove at trial

that he voluntarily and intentionally violated a known legal duty;
Defendant, however, points this Court to <u>no</u> authority that requires
the government to allege every component of the willfulness
requirement in an indictment.  Because the term "willfulness" has
a known meaning, therefore, the indictment sufficiently apprised
Defendant of the charges lodged against him.

    B.   Tax Deficiency

    The indictment alleges that Defendant "had and received
taxable income" and "that upon said taxable income there was owing
to the United States of America a substantial income tax."   The
indictment also states that Defendant willfully attempted to evade
and defeat the "income tax due and owing by him to the United
States of America."   Notwithstanding these express allegations,
Defendant argues that the indictment fails to allege a "tax
deficiency."   Defendant maintains that in the absence of a signed
return by a taxpayer, the government must show that the IRS has
made a valid assessment of taxes owed before there can be a tax
deficiency.   This argument is simply incorrect.

    "[A] tax deficiency . . . exists from the date a return is to
be filed and . . . arises by operation of law when the return is
not filed."   <u>United States v. Hogan</u>, 861 F.2d 312, 316 (1st Cir.
1988); <u>see</u> <u>United States v. Daniel</u>, 956 F.2d 540, 542 (6th Cir.
1992); <u>United States v. Dack</u>, 747 F.2d 1172, 1174 (7th Cir. 1984);
<u>United States v. Voorhies</u>, 658 F.2d 710, 714 (9th Cir. 1981).   "As

-6-

long as the tax is 'due and owing' in this manner, no formal assessment is necessary." United States v. Russell, 998 F.2d 1001, 1993 WL 279077, *1 (1st Cir. 1993) (unpublished) (citing Hogan, 861 F.2d at 315); see United States v. Washington, 947 F. Supp. 87, 91-92 (S.D.N.Y. 1996). Accordingly, because it alleges that Defendant did not file a return and had a substantial income tax "due and owing," the indictment properly alleges a tax deficiency.

Defendant also argues that the indictment is insufficient because it fails to set forth the specific amount of taxes that are due and owing. At least one circuit has explicitly found, however, under similar facts, that the grand jury is not required to make further allegations as to the precise amount of taxes a defendant sought to evade. See United States v. Citron, 783 F.2d 307, 314-15 (2d Cir. 1986) (rejecting the argument that an indictment was deficient because it did not allege precise amounts of unreported income and tax due). Here, the indictment alleges an amount of taxable income for each year charged in the indictment and states that Defendant owed a "substantial" tax on that income. The Court finds this to be sufficient.

Furthermore, proof at trial need not include a precise amount of tax due, but is sufficient if it shows that the amount of tax due is substantial. See id. at 315; United States v. Sorrentino, 726 F.2d 876, 880 n.1 (1st Cir. 1984) ("[T]he [g]overnment need prove only that the amount of tax evaded was substantial. It is

-7-

not necessary to prove the exact amount."); <u>see</u> <u>also</u> <u>United States</u>
<u>v. Parr</u>, 509 F.2d 1381, 1385-86 (5th Cir. 1975).   Accordingly,
"since the indictment need not allege that which is not part of the
government's required proof, no exact figure need be stated in the
indictment." <u>Citron</u>, 783 F.2d at 315.

C.  Affirmative Act

The indictment alleges that Defendant willfully attempted to
evade and defeat a substantial income tax "by failing to make an
income tax return . . . and by committing the following acts:
conducting business under the name of Joseph Adams, using a post
office box in the name of Universal Audio to receive business
receipts, utilizing a bank account in the name of Joseph Adams in
order to deposit his business receipts, and using extensive cash."
Nonetheless, according to Defendant, the indictment is deficient
because it fails to allege that he performed an affirmative act.
Defendant correctly points out that the failure to make an income
tax return is a failure to act, or omission, and not an affirmative
act.  Defendant, however, also argues that the other "following
acts" enumerated in the indictment are not specifically denoted as
"affirmative acts," and therefore, the indictment is insufficient.

Defendant points to no authority, however, to support his
assertion that the government must label every enumerated act an
"affirmative act."   Again, Defendant fails to understand the
distinction between an allegation in an indictment and what the

-8-

government must prove at trial.   The government, at trial, must show that Defendant committed at least one "affirmative act constituting an evasion or attempted evasion of the tax."   Sansone, 380 U.S. at 351.   Consistent with this obligation, the indictment alleges that Defendant committed several acts of evasion.   The government, therefore, provided Defendant with sufficient notice of the affirmative acts of evasion that it intended to establish at trial.

In sum, the indictment clearly contains all of the elements of tax evasion and "fairly informs the defendant of the charge against which he must defend."   Hogan, 861 F.2d at 314.   The indictment identifies the type of tax evaded, i.e., the income tax.   It states that Defendant had taxable income and owed a substantial tax to the United States, which he did not pay.   It alleges that Defendant failed to make an income tax return.   Finally, the indictment charges that Defendant acted willfully in evading his taxes, and enumerates several acts of evasion.   Accordingly, the indictment plainly charges Defendant with the attempted evasion of his individual income taxes for the years 1999-2002, in violation of 26 U.S.C. § 7201.

## 2.  Underlying Legal Duty

Nonetheless, Defendant claims that the indictment is constitutionally defective because it fails to refer to a predicate statute requiring him to file an income tax return or pay an income

tax.  Defendant contends, and the government rightfully concedes,
that 26 U.S.C. § 7201 does not impose a tax.  Section 7201
penalizes the evasion of a tax imposed pursuant to Title 26 of the
United States Code.  Defendant argues, therefore, that the
indictment's failure to refer to a predicate statute that imposes
the underlying legal duty deprives him of sufficient notice of the
charges against him.

Defendant is mistaken.  The indictment cites the statute he is
accused of violating (26 U.S.C. § 7201) and identifies the specific
tax (the income tax) he was obligated to pay.[2]  Accordingly, "the
indictment's references to 26 U.S.C. § 7201 provide sufficient
notice of the crime and of the nature of the charge against the
defendant."  United States v. Bartrug, 777 F. Supp. 1290, 1291
(E.D. Va. 1991); see United States v. Vroman, 975 F.2d 669, 670-71
(9th Cir. 1992); United States v. Sloan, 939 F.2d 499, 501-02 (7th
Cir. 1991).

In Vroman, the Ninth Circuit rejected the argument that an
"indictment fails to charge a crime because it cites to 26 U.S.C.
§§ 7201 and 7203, which prescribe penalties for failure to file an
income tax return, rather than 26 U.S.C. § 6012, the section that

---

[2] "Congress specifically imposed on individuals a duty to file
income tax returns and to pay taxes."  United States v. Washington,
947 F. Supp. 87, 91 (S.D.N.Y. 1996) (citations omitted); see In re
Stern, 114 F.3d 1177, 1997 WL 325437, *1 (4th Cir. 1997)
(unpublished) (finding that "the duty to file returns and pay
income taxes is clear"); United States v. Drefke, 707 F.2d 978, 981
(8th Cir. 1983); see generally 26 U.S.C. §§ 1 and 6012.

requires a tax return to be filed." <u>Vroman</u>, 975 F.2d at 670.  The

court reasoned that a "[c]orrect citation to the relevant statute,

though always desirable, is not fatal if omitted." <u>Id.</u> at 671; <u>see</u>

Fed. R. Crim. P. 7(c)(3) (explaining that the omission of a

citation is not grounds for dismissal of the indictment, or for

reversal of a conviction, if the omission did not mislead the

defendant to his prejudice).  Here, as in <u>Vroman</u>, the indictment

sets forth the elements of the offense Defendant is charged with

violating (§ 7201) as well as the approximate amount of taxable

income he earned each year.  The indictment also alleges that

Defendant engaged in specific acts as part of his attempt to evade

paying taxes.  Defendant, therefore, "knew the conduct he was being

accused of, could adequately prepare a defense[,] and was not

prejudiced by the lack of citation" to the predicate statute.

<u>Vroman</u>, 975 F.2d at 671.

   **3.  Duplicity**

   Finally, Defendant contends that the indictment is defective

because it is duplicitous, i.e., because it charged more than one

offense in a single count.  <u>United States v. Huguenin</u>, 950 F.2d 23,

25 (1st Cir. 1991); <u>United States v. Dunbar</u>, 367 F. Supp. 2d 59, 60

(D. Mass. 2005).  The First Circuit has explained that:

>    [s]ection 7201 defines two distinct crimes: (1) the
>    willful attempt to evade or defeat the 'assessment' of a
>    tax, and (2) the willful attempt to evade or defeat the
>    'payment' of a tax.  The first crime includes evading the
>    government's attempt to ascertain a tax liability.  The
>    second crime addresses an individual's evasion of the

payment of that tax.  The elements of both crimes are the same . . . .

Hogan, 861 F.2d at 315 (internal citations omitted).

Defendant argues that his indictment is duplicitous because it contains allegations that could be interpreted to charge him with both evasion-of-payment and evasion-of-assessment.  In its review of indictments remarkably similar to the one at issue here, however, the First Circuit rejected this argument.  See Huguenin, 950 F.2d at 26; United States v. Waldeck, 909 F.2d 555, 557-58 (1st Cir. 1990).  Here, just as in Huguenin, the indictment alleged that Defendant "did willfully attempt to evade and defeat the said income tax due and owing . . . by failing to make an income tax return" and "by failing to pay the Internal Revenue Service said income tax."  The First Circuit characterized the indictment in Huguenin, "as one in which the elements of evasion-of-payment are 'overborne' by the 'clear and unequivocal' evasion-of-assessment charges," finding beyond a reasonable dispute that the indictment charged the defendant with "a single, cognizable crime," i.e., tax evasion.  Huguenin, 950 F.2d at 26 (citation omitted).  The same is true here.[3]

---

[3] The Court notes that almost every other circuit to have addressed this issue has found that 26 U.S.C. § 7201 charges only the single crime of tax evasion, and that an individual violates the statute either by evading the assessment or the payment of taxes.  See United States v. Nolen, 472 F.3d 362, 377 (5th Cir. 2006); United States v. Becker, 965 F.2d 383, 386 (7th Cir. 1992); United States v. Mal, 942 F.2d 682, 686-88 (9th Cir. 1991); see also United States v. Pollen, 978 F.2d 78, 87 n.16 (3rd Cir. 1992);

Moreover, it is clear that Defendant understood as early as December 12, 2006, six months before the start of trial, that the government was proceeding on an evasion-of-assessment theory; the government stated as much during a hearing on Defendant's Motion for a Bill of Particulars. (Suppression Hr'g Tr. vol. 1, 14:10-19, Dec. 12, 2006). Accordingly, the Court finds that the indictment was not duplicitous and that Defendant understood the crime charged was evasion of assessment of taxes. See Waldeck, 909 F.2d at 558. In sum, the indictment here set out the elements of § 7201 with sufficient clarity to provide Defendant with fair notice of the charges against him, cf. United States v. Murphy, 762 F.2d 1151, 1154-55 (1st Cir. 1985), and is drawn with sufficient specificity to allow him to prepare for trial, avoid surprise, and preclude double jeopardy.

## II.  Motion for a Judgment of Acquittal

Defendant moves for a judgment of acquittal, pursuant to Fed.

---

United States v. Foster, No. 97-700103JMRRLE, 1997 WL 685371, at *1 n.9 (D. Minn. May 27, 1997) (expressing confidence that, if confronted with this issue, the Eighth Circuit would find that § 7201 charges only one crime). Although the First Circuit in Hogan explained that § 7201 defines two distinct crimes (evasion of assessment and evasion of payment), it later referred in Huguenin to "a single, cognizable crime," citing United States v. Dunkel, 900 F.2d 105 (7th Cir. 1990), vacated on other grounds, 498 U.S. 1043 (1991). Huguenin, 950 F.2d at 26. In Dunkel, the Seventh Circuit found that § 7201 creates only one crime: tax evasion. Dunkel, 900 F.2d at 107. This Court need not speculate, however, whether § 7201 defines one crime or two; like the indictments at issue in Waldeck and Huguenin, it is clear here that any allegations of evasion-of-payment are "overborne" by the evasion-of-assessment charges.

R. Crim. P. 29, on the ground that there is insufficient evidence to support the verdict.  In reviewing such a motion, a court must "scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt."  United States v. Taylor, 54 F.3d 967, 974 (1st Cir. 1995) (citations omitted); see United States v. Ortiz, 447 F.3d 28, 32 (1st Cir. 2006).  In weighing the sufficiency of the evidence, a "trial judge must resolve all evidentiary conflicts and credibility questions in the prosecution's favor; and, moreover, as among competing inferences, two or more of which are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt."  United States v. Olbres, 61 F.3d 967, 970 (1st Cir. 1995) (citations omitted).  Consequently, the government "may prove its case entirely by circumstantial evidence and need not exclude every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt."  United States v. Smith, 680 F.2d 255, 259 (1st Cir. 1982), cert. denied, 459 U.S. 1110 (1983); see United States v. Boulerice, 325 F.3d 75, 79 (1st Cir. 2003).

Against this formidable backdrop, Defendant claims that the government has failed to prove all of the elements of 26 U.S.C. § 7201 beyond a reasonable doubt.  As noted supra, the elements of

-14-

tax evasion include: (1) willfulness, (2) the existence of a tax deficiency, and (3) an affirmative act constituting an evasion or attempted evasion of the tax. See Sansone, 380 U.S. at 351; George, 448 F.3d at 98 n.2 (same). Notwithstanding Defendant's contention, however, the Court finds, after a careful review of the record, that the government has come forward with sufficient, if not overwhelming, evidence to support each element of the offense charged.

To summarize briefly, the government produced uncontradicted evidence at trial that showed that Defendant was a successful, self-employed seller of electronic testing equipment. In the four years charged in the indictment, from 1999 through 2002, Defendant's business generated approximately $2.4 million in gross receipts. Defendant, however, held himself out to customers as Joseph Adams, and operated his business under the name of Adams Associates, Inc. The balance in one of his bank accounts during this period increased by over $1 million.[4] According to the government's evidence, therefore, Defendant owed the United States over $450,000 in taxes for 1999-2002. Official IRS records admitted at trial, however, showed that Defendant did not file a tax return for any of the years in question. Moreover, the

_____

[4] The Fleet Bank account was in the name of Joseph Adams. The government, however, offered evidence at trial - including a Fleet Bank Statement found in Defendant's room and Defendant's admission that Joseph Adams was a business alias - to show that this account was under Defendant's control. (See Gov't Ex.'s 14, 54 and 77-B).

government introduced extensive evidence concerning the elaborate steps Defendant took to conceal his true identity and income.

Finally, and perhaps more significantly, the jury heard Detective Timothy Sanzi's ("Sanzi") testimony concerning Defendant's admission to members of the Rhode Island State Police that he did not pay federal taxes.[5] Accordingly, after considering all of the evidence, direct and circumstantial, and taking all reasonable inferences in the government's favor, the Court finds sufficient support in the record for the guilty verdict. See Fed. R. Crim. P. 29(a).

### III.  Motion for a New Trial

At the close of the evidence offered by the government at trial, Defendant made an oral motion for a new trial pursuant to Fed. R. Crim. P. 33. Defendant renewed this motion at the close of all evidence. On June 29, 2007, Defendant also filed a written motion for a new trial, raising arguments that he had not made in his oral motion.[6]

---

[5] Defendant was arrested on April 12, 2002, by members of the Rhode Island State Police, in connection with a state stalking investigation. Defendant was subsequently convicted of misdemeanor stalking pursuant to R.I. GEN LAWS § 11-59-2. See State v. Stierhoff, 879 A.2d 425, 436 (R.I. 2005). The events surrounding Defendant's arrest and his statements to police are described in detail in this Court's Memorandum and Order dated March 13, 2007. United States v. Stierhoff, 477 F. Supp. 2d 423, 425-30 (D.R.I. 2007).

[6] Although his motion was dated June 28, 2007, Defendant did not file his motion for a new trial until 11:44 p.m. on June 29, 2007.

Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The First Circuit, however, "has repeatedly held that the seven-day limitations period for Rule 33 motions is jurisdictional, and therefore a district court is without power to hear such motions not filed within the seven-day period, unless based on newly discovered evidence, in which case the limitations period is three years." United States v. Glenn, 389 F.3d 283, 287 (1st Cir. 2007) (citing United States v. Diaz, 300 F.3d 66, 78 (1st Cir. 2002)); see United States v. Lema, 909 F.2d 561, 565 (1st Cir. 1990); Fed. R. Crim. P. 33(b).

Here, Defendant, having filed his new trial motion (based on grounds other than newly discovered evidence) on June 29, 2007, ten days after the jury's verdict, submitted his motion one day late. See Fed. R. Crim. P. 45(a) (excluding intermediate Saturdays and Sundays from computation); see also Diaz, 300 F.3d at 78. Thus, this Court has no authority to entertain the written motion for a new trial filed on June 29, 2007. See Glenn, 389 F.3d at 287; Diaz, 300 F.3d at 78.

In his oral motion at the close of the government's evidence, however, Defendant raised two grounds for a new trial. First, Defendant contends that the testimony of IRS Revenue Agent, Michael Pleshaw ("Pleshaw"), exceeded the scope of a summary witness.

-17-

Second, Defendant argues that the indictment was constructively amended by the government at trial, or in the alternative, that the government's proof constituted a material variance from the indictment.  Neither argument, however, is persuasive.

### 1.  Pleshaw's Testimony

At trial, Pleshaw testified as a summary witness for the government.  Although not proffered as an expert, the government also established his qualifications before the jury.  Those qualifications included twenty years of service with the IRS as a revenue agent, a bachelor's degree in business with a minor in accounting, and a master's degree in business administration. While employed by the IRS, Pleshaw completed additional classes in taxation, specialized training, and continuing professional education.  Since 2000, Pleshaw has also been a member of the IRS's "Special Enforcement Program," working with the criminal investigation branch of the IRS and U.S. Attorney's Office to determine the correct tax liability of criminal defendants.  At the time of trial, Pleshaw had testified as a summary witness on more than seven or eight previous occasions.

Pleshaw attended the entire trial and reviewed the voluminous documents entered into evidence in order to calculate Defendant's tax liability for the years 1999-2002.  Pleshaw prepared summaries of his calculations which were admitted into evidence.  (See Gov't Ex.'s 370-73, 375A-G, 376A-L, 377A-L, and 378A-L).  According to

-18-

Pleshaw's calculations, Defendant owed the IRS $458,587.00 in taxes for the years 1999 through 2002.[7]

In computing Defendant's tax liability for the years in question, Pleshaw first calculated the gross receipts from Defendant's business using the bank deposits method of proof.[8] (See, e.g., Gov't Ex.'s 372 and 376A-E). Looking at the year 2000 for example, Pleshaw added up all of the deposits into Defendant's Fleet Bank, Chase Bank, and PayPal accounts, and arrived at a total

---

[7] According to Pleshaw's analysis, Defendant owed $87,579 in 1999, $173,563 in 2000, $138,240 in 2001, and $59,205 in 2002. (See Gov't Ex.'s 375G, 376L, 377L, and 378L).

[8] According to the First Circuit, this method requires the government to show:

> (1) that, during the tax years in question, the taxpayer was engaged in an income producing business or calling; (2) that he made regular deposits of funds into bank accounts; and (3) that an adequate and full investigation of those accounts was conducted in order to distinguish between income and non-income deposits.   Once this preliminary foundation has been laid, the government totals all bank deposits, and, after the non-income deposits are excluded, and the amounts on deposit prior to the tax years in question have been deducted, the circumstantial inference properly permitted to arise is that all remaining deposits constitute taxable income.

United States v. Morse, 491 F.2d 149, 152 (1st Cir. 1974) (internal citations omitted); see United States v. Boulware, 384 F.3d 794, 811 (9th Cir. 2004).   Pleshaw testified at length about how he applied this method to the government's evidence at trial to calculate Defendant's gross receipts for 1999-2002.   Pleshaw used, inter alia, (1) testimony from Defendant's customers, (2) stipulations concerning Defendant's sales of electronic testing equipment, and (3) a review of all bank statements, checks, and other financial documents admitted into evidence. (See Gov't Ex.'s 375B, 376E, 377E, and 378E).

of $812,735.06. He next subtracted all non-taxable deposits, including any loans, gifts, or transfers of funds between accounts, to arrive at a total of $781,878.14 in gross receipts.

Once Pleshaw calculated Defendant's gross receipts, he then subtracted Defendant's business expenses from those receipts. Pleshaw explained that he treated any withdrawals from Defendant's bank accounts, with the exception of cash withdrawals made through an ATM, as a business expense.[9] (See Gov't Ex.'s 375D, 376G-I, 377G-I, and 378G-I). Pleshaw did not include ATM withdrawals as a business expense because there was no documentation to support whether the withdrawals were used for either personal or business expenses. Officers from the Rhode Island State Police, however, testified that approximately $100,000 in cash was found under Defendant's bed. Detective John Killian ("Killian") also testified, that when Defendant was confronted with the cash, he admitted that the money came from his business. Moreover, Pleshaw testified that there was no evidence admitted concerning Defendant's use of cash to pay for business expenses; thus, he did not deduct ATM withdrawals as a business expense.

After adding up all of the withdrawals from Defendant's Fleet

---

[9] Pleshaw did not make any individualized determinations about what withdrawals constituted legitimate business expenses. Indeed, he included withdrawals that could arguably be classified as personal, such as checks to: Egghead.com, Love Scent, Calvin Klein, Think Vitamins, Caribbean Travel & Life, Metro-Kitchen.com, Catholic Family News, GNC, Vitamin World, Whole Foods Market, and CatholicSingles.com. (Gov't Ex. 377G).

Bank, Chase Bank, and PayPal accounts (other than ATM withdrawals), Pleshaw calculated that Defendant's business expenses for the year 2000 totaled $326,628.59. Subtracting this figure from the gross receipts of Defendant's business ($781,878.14), Pleshaw then arrived at Defendant's net profit for the year, or $455,249.55. (See Gov't Ex. 376K).

Starting with Defendant's net profit, Pleshaw next subtracted a self-employment tax adjustment, standard deduction, and personal exemptions to arrive at Defendant's taxable income. Pleshaw based his determination that Defendant was entitled to these deductions on evidence admitted during the trial. Applying the standard tax rates found in IRS Publication 17 to the taxable income, Pleshaw then calculated Defendant's tax liability for each year in question. Again, using the year 2000 for example, Defendant's taxable income was found to be $440,028.55, which after crediting Defendant with deductions and applying the applicable tax rates, resulted in a total tax liability of $173,563. (See Gov't Ex. 376L).

In his motion for a new trial, Defendant contends that Pleshaw exceeded his role as a summary witness and provided inadmissible expert testimony in the guise of a summary witness. The Court, however, believes that Pleshaw, although presumably qualified as an expert, did not go beyond his role as a summary witness. "It is well established that '[t]he nature of a summary witness' testimony

-21-

requires that he draw conclusions from the evidence presented at trial.'" United States v. Pree, 408 F.3d 855, 869 (7th Cir. 2005) (quoting United States v. Esser, 520 F.2d 213, 218 (7th Cir. 1975); see United States v. Sabino, 274 F.3d 1053, 1067 (6th Cir. 2001) ("Testimony summarizing evidence is admissible in income tax prosecutions."), amended on other grounds 307 F.3d 446 (2002); United States v. Moore, 997 F.2d 55, 58 (5th Cir. 1993) ("As a summary witness, an IRS agent may testify as to the agent's analysis of the transaction which may necessarily stem from the testimony of other witnesses.").

"When a summary witness simply testifies as to what the [g]overnment's evidence shows, he does not testify as an expert witness." Pree, 408 F.3d at 869 (citing United States v. Swanquist, 161 F.3d 1064, 1073 (7th Cir. 1998)). Here, Pleshaw simply calculated the taxes Defendant owed based on the evidence in the record. Pleshaw explained in detail how he derived the figures contained in the summary charts from the underlying documents. Although qualified to do so, Pleshaw did not offer an opinion or draw on some special skill, knowledge, or experience that the jurors themselves did not possess. See Swanquist, 161 F.3d at 1073. Pleshaw's review of the bank statements, checks, and other financial documents, as well as his subsequent tax computations, "took patience but not expertise." United States v. Milkiewicz, 470 F.3d 390, 401 (1st Cir. 2006); see United States v. Serafino,

281 F.3d 327, 331 (1st Cir. 2002) (remarking that a jury would not regard IRS agent's "number-crunching" as an expert opinion, but rather as an objective rendition of the evidence). Moreover, the sources from which the figures were obtained and the calculations prepared were in evidence or had been provided to Defendant. Thus, Defendant enjoyed ample opportunity to cross-examine Pleshaw fully as to all of those details and as to the evidentiary sources from which they came. See Esser, 520 F.2d at 218.

### 2.  Constructive Amendment & Material Variance

Defendant's second ground for a new trial is based on his belief that the indictment was constructively amended by the government at trial, or in the alternative, that the government's proof constituted a material variance from the indictment. "A constructive amendment occurs 'when the charging terms of the indictment are altered at trial so that they are different from those handed up by the grand jury.'" United States v. Munoz-Franco, 487 F.3d 25, 64 (1st Cir. 2007) (quoting United States v. Rodriguez, 215 F.3d 110, 118 (1st Cir. 2000)); see United States v. Mueffelman, 470 F.3d 33, 38 (1st Cir. 2006). A variance, on the other hand, "occurs when the proof differs from the indictment's allegations, and 'is material and reversible only if it has affected the defendant's substantial rights: to be informed of the charges; and to prevent a second prosecution for the same offense.'" Munoz-Franco, 487 F.3d at 64 (quoting United States v.

Vavlitis, 9 F.3d 206, 210 (1st Cir. 1993)); see United States v.
Fisher, 3 F.3d 456, 462-63 (1st Cir. 1993).

Defendant contends that there is a prejudicial variance
between the amount of taxable income alleged in the indictment, for
each of the years in question, and the amount of taxable income the
government alleged at trial. This argument, however, is meritless.
The indictment alleged that Defendant "had and received taxable
income in the sum of approximately:" $193,246 in 1999; $422,620 in
2000; $345,967 in 2001; and $145,006 in 2002. At trial, the
government introduced evidence showing that Defendant had taxable
income in the amount of $232,635.98 in 1999, $440,028.55 in 2000,
$360,882.64 in 2001, and $161,990.64 in 2002. The difference in
the amount of taxable income alleged in the indictment and the
amount the government's evidence showed at trial, however, is de
minimis.[10]   Since there is no requirement for the government to
prove the precise amount of tax due at trial, see Sorrentino, 726
F.2d at 880 n.1, this relatively minor variance can not be said to
affect Defendant's "substantial rights." Munoz-Franco, 487 F.3d at
64.

Defendant also argues that the government constructively
amended the indictment by failing to call any of the grand jury
witnesses to testify at his trial. According to Defendant, there

_____

[10] The difference amounts to: $39,389.98 in 1999; $17,408.55 in
2000; $14,915.64 in 2001; and $16,984.64.

is no indication that the evidence that was presented at trial was ever presented to the grand jury.  Defendant, therefore, seeks to examine the grand jury transcript.

The Court, however, is not persuaded.  The government constructively amends the indictment when it offers evidence at trial that operates to broaden "the possible bases for conviction from that which appeared in the indictment."  United States v. Miller, 471 U.S. 130, 138 (1985).  "To prevail on a constructive amendment claim, a defendant must demonstrate that . . . the proof at trial . . . so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." United States v. Milstein, 401 F.3d 53, 65 (2nd Cir. 2005).  "There is no constructive amendment 'where a generally framed indictment encompasses the specific legal theory or evidence used at trial.'" Id. (quoting United States v. Salmonese, 352 F.3d 608, 620 (2nd Cir. 2003)).

Here, the indictment clearly encompasses both the specific legal theory and the evidence the government presented at trial. At no point did the government attempt to offer evidence that was unrelated to the tax evasion charges.  Nor has Defendant pointed to any evidence that was introduced at trial that would cause the Court to question "whether the defendant was convicted of [the] conduct that was the subject of the grand jury's indictment."

-25-

<u>Milstein</u>, 401 F.3d at 65.

Moreover, Defendant has failed to show a "particularized need," if any, for the disclosure of the grand jury transcript. See generally <u>Dennis v. United States</u>, 384 U.S. 855, 869-70 (1966); <u>United States v. Hicks</u>, 848 F.2d 1, 3-4 (1st Cir. 1988) (finding that the government was not required to disclose the grand jury testimony of known, potential witnesses who were not called to testify). In short, Defendant has failed to show that the government constructively amended the indictment by choosing not to call any of the grand jury witnesses to testify at trial, nor has he demonstrated any prejudice that may have resulted from the government's decision.

### IV. Motion for a Mistrial

Defendant also moves for a mistrial on the grounds that the government: (1) allegedly withheld exculpatory evidence and/or Jencks material, and (2) perpetrated a fraud on the Court because of alleged inconsistencies between the trial testimony of Detectives Sanzi and Killian and their testimony at a prior hearing on Defendant's Motion to Suppress. These arguments may be quickly dispatched.

#### 1. <u>Brady</u> & Jencks Act Challenge

Under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), exculpatory evidence is discoverable by a defendant where it "is material either to guilt or to punishment." 373 U.S. at 87. "'Information

-26-

is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" United States v. Caro-Muniz, 406 F.3d 22, 29 (1st Cir. 2005) (quoting United States v. Rosario-Peralta, 175 F.3d 48, 53 (1st Cir. 1999)).  In order to succeed on a Brady claim, therefore, a defendant must show that: (1) the evidence at issue was favorable to the defendant because it was either exculpatory or impeaching; (2) the government suppressed the evidence; and (3) prejudice resulted. Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Under the Jencks Act, 18 U.S.C. § 3500, "a defendant is entitled to government documents for assistance in cross-examining witnesses in order to impeach them for prior inconsistent statements." United States v. Colon-Munoz, 192 F.3d 210, 217 n.6 (1st Cir. 1999).  Section 3500 provides, in pertinent part, that:

> "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified."

18 U.S.C. § 3500(b) (emphasis supplied).  The government is required to produce these documents whether they are exculpatory or not. See Rosario-Peralta, 175 F.3d at 53 (citation omitted). "In order to succeed on a claimed violation of the Jencks Act, defendants must demonstrate that they have been prejudiced by the

-27-

failure to disclose." Id. (citations omitted).

During the cross-examination of Pleshaw, defense counsel asked the IRS agent about how he had determined Defendant's personal exemption for each of the years in question. Pleshaw responded that the exemption was calculated by computer, but that he had probably done the calculation out by hand to verify the number. When defense counsel asked about this calculation, Pleshaw referred to some work papers he might have used that would show his calculations. Defendant now argues that the government's failure to disclose these papers warrants a mistrial.

Initially, Defendant has failed, however, to show that these papers were material and potentially exculpatory or impeaching. Nor has Defendant demonstrated any prejudice. Moreover, Defendant failed to request that the government produce these notes at the time of Pleshaw's cross-examination. The Jencks Act provides, that before the government's duty to disclose attaches, a defendant must move for production of any covered statements after the witness has testified on direct. See 18 U.S.C. § 3500(b); United States v. McKenzie, 768 F.2d 602, 607-08 (5th Cir. 1985). Defendant can not now claim a mistrial, therefore, based on a claim under the Jencks Act, when he failed to request that the government produce the papers Pleshaw referred to during his cross-examination.

Defendant also contends that the government failed to provide him with copies of third-party summonses prior to trial. At trial,

-28-

Defendant cross-examined several of the government's custodial witnesses about whether they had received a summons or a subpoena for the records they produced.  Several witnesses testified that they had, in fact, received a summons or subpoena.  Defendant argues, therefore, that he was not provided with the proper notification that such summonses were issued.

At trial, Defendant informed the Court that he believed the IRS was required under the Internal Revenue Code ("IRC"), 26 U.S.C. § 6023, to provide notice to Defendant when it issues a summons to a third-party seeking documents.  There is no 26 U.S.C. § 6023. The Court believes, however, that Defendant was referring to 26 U.S.C. § 7602(a), entitled "Authority to summon, etc."  Under 26 U.S.C. §§ 7602 and 7604, "[t]he IRS has broad authority to issue summonses."  United States v. Gertner, 65 F.3d 963, 966 (1st Cir. 1995).  Section 7602 authorizes the IRS to issue summonses to third-parties for the production of "books, papers, records, or other data" relating to a defendant and his business.  26 U.S.C. § 7602(a)(2).  Section 7602(c)(1) provides, that:

> [a]n officer or employee of the Internal Revenue Service
> may not contact any person other than the taxpayer with
> respect to the determination or collection of the tax
> liability of such taxpayer without providing reasonable
> notice in advance to the taxpayer that contacts with
> persons other than the taxpayer may be made.

26 U.S.C. § 7602(c)(1).  This appears to be the section of the IRC on which Defendant is basing his argument.  Section 7602(c)(3)(C), however, provides that this notice requirement "shall not apply

with respect to any pending criminal investigation." As such, Defendant's argument is meritless.[11]

## 2. Alleged Inconsistencies in Testimony

Finally, Defendant claims that there were inconsistencies between the testimony of Sanzi and Killian at trial and their testimony at a prior hearing before this Court, and that, as a result, this Court should declare a mistrial. The Court, however, has painstakingly reviewed the transcript of the suppression hearing and has not found any material inconsistencies with the trial testimony of Sanzi and Killian that would warrant a mistrial.[12] Cf. United States v. Henderson, 463 F.3d 27, 32-46 (1st Cir. 2006). Minor inconsistencies are common and unavoidable, and although exactitude is desirable, it is not a necessary condition to a finding of credibility. See United States v. Gobbi, 471 F.3d 302, 311 (1st Cir. 2006).

---

[11] The Court notes that, notwithstanding § 7602(c)(3)(C)'s exception to the notice requirement, the government attempted to mail Defendant written notice of the third-party summonses. Counsel for the government represented to the Court, however, that the notification was returned to the IRS by the U.S. Postal Service as undeliverable.

[12] At his oral motion for a mistrial, Defendant did not specifically identify the trial testimony of Sanzi and Killian that he alleges was inconsistent with their prior testimony. The Court is not a mind reader, and any argument not sufficiently developed is typically considered waived. See, e.g., United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1082 (1990).

## V.   Conclusion

Defendant has made a plethora of arguments in his various motions before the Court; any arguments the Court has not specifically addressed above, however, the Court has carefully reviewed and found to be without merit. Accordingly, for the foregoing reasons, Defendant's motions are all DENIED.


SO ORDERED.


Mary M. Lisi
Chief United States District Judge
August 3 , 2007

-31-