UNITED STATES OF AMERICA ) CR No. 06-042-ML
v. ) AFFIDAVIT IN SUPPORT
NEIL STIERHOFF ) OF MOTION FOR
) ENLARGEMENT OF TIME

# AFFIDAVIT

I, Neil Stierhoff ("Affiant"), being of full age and competent to testify, do hereby declare and affirm the following statements, which are true and correct to the best of my knowledge and belief:

1) I am making this Affidavit while incarcerated at the D.W. Wyatt Detention Facility where I do not have access to my notes.

2) I retained Scott A. Lutes in May, 2006, to represent me at the arraignment on May 9, 2006, and to serve as counsel in pretrial matters until I was able to locate a suitable attorney with experience in criminal tax cases.

3) Lutes told me that he is a general practicioner in criminal defense (a "meat and potatoes" attorney) and he would be willing to serve as stand-by local counsel once a suitable criminal tax attorney was located and retained.

4) I located attorney Alan S. Richey of Port Hadlock, WA, and, on the basis of several recommendations, I retained Richey sometime in late December, 2006, to serve as lead attorney in the instant criminal matter.

5) During several ~~tee~~ meetings I had with Richey in person,

he explained how he intended to handle the various phases of the criminal action against me, including the pretrial, trial and post-trial phases, the motions he intended to file, his defensive strategy and the types of arguments he would be making depending on how the trial proceeded and what evidence was presented.

6) I was in general agreement with Richey and believed that he would proceed according to what he told me.

7) I had advanced Richey certain payments he requested during the pre trial phase according to his rate schedule and estimates of the time he expected to take for the trial which had been originally estimated to last three days.

8) During the trial period which began on June 11, 2007, and ended on June 19, 2007, I advanced Richey additional funds, based on his estimate of the time he would need, to handle the remainder of the trial and for all post-trial work, which he agreed to do.

9) Richey told me he would be filing post-trial motions (motions for a new trial and for judgment of acquittal and others), sentencing memoranda, presentence report (PSR) objections with revisions as necessary, the appeal of the conviction and sentence, oral arguments before the First Circuit – in short, Richey assured me of a vigorous and complete defense, leaving no stone unturned.

10) During the trial period I advanced Richey sufficient

funds to order and pay for the trial transcripts, and he agreed to do so.

11) I understood that Richey would order the transcripts through the Court's website and that he would place the order as soon as he returned to his office in Port Hadlock, WA, which would have been sometime during the week ending June 22, 2007.

12) I was present at the conclusion of the trial when it was declared by the Court that the sentencing would be set for September 26, 2007, and that Richey acknowledged that date, stating there may be a conflict with his schedule.

13) When I originally retained Richey I believed he was a competent attorney and would be effective counsel, was trained in the law and was knowledgeable of the various rules, applicable case law and criminal procedure.

14) During the course of the trial Richey explained to me that, if I was found guilty, he would prepare a sentencing memorandum, make objections to the PSR and make oral arguments at sentencing.

15) I believe Richey should have anticipated that the PSR would be completed and ready by August 20, 2007, because Local Rule 40.2 and F.R.Cr.P. 32(e)(2) require the PSR to be given to the parties at least 35 days before sentencing, which had been initially set for September 26, 2007.

16) A copy of the PSR was delivered to me by Lutes at Wyatt on the evening of August 23, 2007.

17) Lutes advised me that any objections to the PSR must be submitted by September 3, 2007, but he did not advise me that any objections not based on evidence would likely be ignored by the Court.

18) I learned on August 24, 2007, that case law in this Circuit has held that objections to the PSR must be based on evidence in the record, not on acts alleged in the indictment or on unsupported rhetoric.

19) I questioned Lutes on August 23, 2007, about the status of the transcript and he told me he did not think it had been ordered and that he took no steps to order it.

20) I asked Lutes if he had contacted Richey concerning the transcript and Lutes told me that his phone calls and emails to Richey have gone unanswered and unresponded to.

21) I have learned from reliable sources that no order for the transcript had been placed as of August 23, 2007.

22) I have been incarcerated at Wyatt Detention Facility since June 19, 2007, from where I have attempted to contact Richey numerous times by phone and letter.

23) I estimate that I have mailed Richey approximately 25 letters and made at least 100 attempts to contact him by phone.

24) In my letters to Richey, I reminded and urged him to order the transcript and prepare necessary post-trial motions and sentencing memoranda, all of which he assured me during the trial he would be doing when he returned back to his office after the trial.

25) Richey has failed to respond to any letter and I have not had any written communication from him whatsoever.

26) Lutes visited me at Wyatt on June 28, 2007, and delivered to me a copy of "Defendant's Motion for a New Trial" which Lutes had received from Richey by email earlier that same day.

27) I saw that the Motion was prepared for filing by Richey on June 28, 2007, with the appropriate signatures and Certificate of Service affixed to it.

28) I read the Motion and wanted to call Richey concerning it and placed a collect call to him at his office in Port Hadlock, WA, about two hours after I had received it, at approximately 6 p.m. Eastern, which would have been 3 p.m. Pacific time.

29) I was able to get through to Richey at that time on June 28, 2007, and I told him I approved of the Motion and he assured me that he would file it electronically that same day in order for it to be considered filed timely.

30) The call I placed to Richey on June 28, 2007, was the one and only call he has accepted from me since June 19, 2007, to the date of this Affidavit.

31) I have since learned that Richey filed the Motion on

the following day, June 29, 2007, making it untimely, as it was filed one day past the seven-day limit provided by F.R.Cr.P. 33(b)(2).

32) I was able to obtain a copy of the Memorandum and Order by the Court (Doc. 101), denying the Motion to Dismiss the Indictment and denying the oral motions made by Richey at the close of the evidence offered by the government, wherein the Court also rejected Richey's Motion for a New Trial as being jurisdictionally time barred, having been inexplicably filed one day late, notwithstanding the date on the document was June 28, 2007.

33) I read in the Court's Memorandum and Order that said Motion "rais[ed] arguments that he [Richey] had not made in his oral motion." (Doc. 101, p.16 & n.6).

34) I read in said Motion that "there are likely errors that can be more fully developed upon review of the transcripts, [and] Defendant herein raises some of the more obvious errors necessitating a new trial," which indicates to me that Richey had every intention to order, receive and review the transcripts.

35) Due to the inexplicable and highly unprofessional lack of communication afforded me by lead attorney Richey, his failure to order the transcripts and consult with me, and in order to avert a miscarriage of justice, I was compelled out of necessity to file a motion for a continuance of sentencing so that these issues can be

resolved prior to sentencing.

Further, Affiant sayeth naught.

I, Neil Stierhoff, declare under penalty of perjury and pursuant to Title 28, United States Code, section 1746, that the foregoing statements are true and correct to the best of my knowledge and belief.

Executed this 26th day of August, 2007.

Respectfully,

Neil Stierhoff

Neil Stierhoff