UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | No. 1:06cr42ML |
| v. | ) | DEFENDANT'S SENTENCING MEMORANDUM |
| NEIL STIERHOFF, Defendant. | ) | |

COMES NOW the Defendant, by and through his counsel of record, and files this sentencing memorandum recommending the following:

Tax loss -- $0: base offense level a **6**

Attempt: downward **3**

Prior Criminal History: upward **2**

Offense level **5**, **Zone A**, **Category II**, **0-6 months**

Further downward departure for Family Ties and Responsibility

Defense recommendation: **0-6 months incarceration with credit for time served, no probation, no restitution; fine $250.**

In support of the above recommendation by the Defense, and in objection to the presentence report prepared by probation in this case, Defendant submits the following:

**1.** Defendant objects in paragraph 6 to the hearsay statements of the Assistant U.S. Attorney Thomas Voracek. Said statements do not specifically cite to any evidence, and no attempt was made by the Assistant U.S. Attorney to use evidence; rather they are general, vague statements using undefined presumptions and legal conclusions that are

not supported by the evidence at trial. Defendant objects that he must present evidence to the contrary, when the burden has never been met by the government and thus cannot shift to the defendant. "To satisfy due process, the government must prove facts relied on in sentencing by a preponderance of the evidence." *United States v. Wells MetalFinishing, Inc.*, 922 F.2d 54, 57 (1st Cir.1991), *citing United States v. Blanco*, 888F.2d 907, 909 (1st Cir.1989). The government has cited to no evidence but just makes general hearsay statements.[1] Thus, no burden has shifted to defendant to rebut any evidence.

An example of this unsubstantiated hearsay is at the beginning when Mr. Voracek stated, "The defendant evaded federal income taxes from 1999 through 2002." PSR at 1, ¶6. This is inconsistent with the charges, inasmuch as the indictment alleges, "did willfully **attempt** to evade and defeat the said income tax." (Indictment, Doc. 1). To accept the government's statement at this point is to acknowledge a constructive amendment of the indictment or at least a material variance from the indictment, which thus requires reversal of the conviction. *United States v. Fisher*, 3 F.3d 456, 462-63 (1st Cir.1993); see also *United States v. Arcadipane,* 41 F.3d 1, 6 (1st Cir.1994)(variance requires reversal of a conviction when it is both material and prejudicial).

Another example is the inclusion of "self-employment taxes." PSR at 2. Again, the indictment only alleged "income tax," but did not allege "self-employment tax." To

[1] Inasmuch as the hearsay statements may derive from the testimony of the government's summary witness Michael Pleshaw, defendant renews all his prior objections to that testimony and evidence entered through him.

include the government's inclusion of "self-employment tax" is another constructive amendment of the indictment.

A third example is that from "business profit, the defendant owed …federal income and self-employment taxes." PSR at 2. Even Michael Pleshaw testified that there had to be "gross income," which had to be "determined" by the taxpayer "fil[ing] a tax return" before there could be a liability for a tax and the tax actually owed (which must occur before the IRS can determine a "deficiency" exists).[2] (See testimony of Michael Pleshaw, June 19, 2007, p. 6-7.)

**2.** In paragraph 10, Defendant objects to the use of the November 1, 2006 Guidelines Manual. Rather, it is the 2003 version that is applicable.

**3.** In paragraph 11, Defendant objects to the hearsay unsupported general, vague statements of the government using undefined presumptions and legal conclusions, "The government has advised that the defendant owed federal income and self-employment taxes in the total amount of…." This figure is different from the figure in the August 20, 2007 PSR, so either probation has mixed up their numbers, or the government is still trying to figure the correct numbers. Either way, it is not a "tax loss" nor is it a "tax due and owing." The IRS not only never performed an assessment, it never took any civil action. (See testimony of Paul Crowley, June 11, 2007, p. 162.)

Second, the government has never alleged that the figure $458,587 is a "tax loss." Probation exceeds its authority to create a tax loss out this made up number by Michael

---

[2] 26 U.S.C. § 61 defines gross income. Section 861(a) identifies the "items of gross income" which are "treated as income from sources within the United States." Section 63 defines "taxable income" in terms of "gross income." All of this must be determined before any tax can be found. (Then see footnote 4.)

Pleshaw. Paul Crowley entered evidence showing a liability of zero (ex 2-C, 2-D, 2-E), and after speaking with the case agent, the U.S. Attorneys, and others in his office, none of them disagreed with those certifications. (See testimony of Paul Crowley, June 11, 2007, p. 159.)

Third, the jury never found that there was any specific amount of tax loss. To adopt this or any amount as a "tax loss" constitutes constitutional error—a violation of the Sixth Amendment.[3] . Fourth, although the government had an opportunity to prove a "tax loss" and have the jury find such, the government declined to prove an actual "tax loss" that was "due and owing,"[4] and the district court did not require the jury to find a

---

[3] The Supreme Court has consistently held, "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *Cunningham v. California*, No. 05-6551, *8 (Jan. 22, 2007); see also *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004); *United States v. Booker*, 543 U.S. 220 (2005). The Court's "bright line rule" is this: "Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Cunningham*, 549 U.S. at *16; citing *Apprendi,* 530 U.S. at 490.

[4] The IRS refused to perform an assessment as required by law; there was therefore no tax deficiency or tax due and owing—no tax loss. It is well-settled that "tax deficiency" is an element of the crime. *United States v. Waldeck*, 909 F.2d 555, 557 (1st Cir.190?), *citing Sansone v. U.S.*, 380 U.S. 343, 351 (1965); *Lawn v. U.S.*, 355 U.S. 339, 361 (1958) and *Spies v. U.S.*, 317 U.S. 492, 495-96 (1943). *See also United States v. Monteiro*, 871 F.2d 204, 209 (1st Cir.1989)("We need only follow the Supreme Court.") Further, Congress specifically defined "deficiency," 26 U.S.C. § 6211, thus making it a term of art with a very specific meaning for tax cases. Deficiency is defined in the code as "the amount by which the tax imposed by [the code] exceeds the excess of the sum of the amount shown as the tax by the taxpayer upon his return … plus the amounts previously assessed … as a deficiency, over—the amount of rebates." 26 U.S.C. § 6211. *See also United States v. Wright*, 211 F.3d 233, 236 (5th Cir.2000)(government must prove a tax deficiency by a return signed by taxpayer or valid assessment by IRS); *United States v. England,* 347 F.2d 425, 430 (7th Cir.1965)("There is no doubt that a valid assessment, and proof thereof, was an essential element of the case", and this "was admitted by the

"tax loss," over Defendant's objections. Defendant objects to probation's adoption of the government's alleged tax "due and owing" of federal "income" (and self-employment ?) $458,587, as the use of such would constitute legal and factual error and a rubber stamp of the IRS' disregard for the law (see footnote 4). Probation and the district court must recognize Congress' mandate for the IRS to assess any "tax loss" or explain how a "tax loss" can exist without IRS' compliance with Congressional directive.

Because there is no "tax loss" found by the jury, under the Guidelines, the "tax loss" is **zero (0),** with an offense level of **6** (six points). See U.S.S.G. §2T1.1(a)(2). Where there is no found "tax loss," this Court cannot find above 6 points for sentencing, meaning a sentence of incarceration of **0-6 months**. See U.S.S.G. Sentencing Table. To accept the government's proposed "tax loss" is to make an upward departure. Because the district court carefully precluded the jury from entering the court's province of finding the law, the district court must not enter the jury's province of finding the facts, which would violate Defendant's right preserved under the Sixth Amendment, to which

---

government."). An assessment must be made and recorded pursuant to rules and regulations. 26 U.S.C. § 6203. Within 60 days of making the assessment, the Secretary must give notice of the assessment to the taxpayer and make a demand for payment. 26 U.S.C. § 6303. It is clear from the statutory requirements imposed by Congress that before a tax is "due and owing," the IRS must assess the tax, send a notice and demand for payment, and if the taxpayer refuses, send a notice of deficiency (90 day letter). *See* 26 U.S.C. §§ 6201 et. seq. IRS Agent Paul Crowley testified that there was no evidence the IRS ever did any of these things. (See testimony of Paul Crowley, June 11, 2007, p. 161-62.) Once a deficiency exists, a U.S. District Court has no jurisdiction to decide anything regarding a deficiency; rather, "Section 6512(b) [of title 26] gives the Tax Court exclusive jurisdiction to determine [ ] whether the deficiency was correct." *Estate of Branson v. CIR*, 264 F.3d 904, 913 (9th Cir.2001). This court has no authority to decide the amount of the "deficiency" or the amount "due and owing." Because the Congressionally required process was not followed by the IRS, there was no "deficiency," no tax due and owing, and therefore no tax loss. To find otherwise is for this court to exceed its jurisdiction.

Defendant previously and continues to object to. Neither the government nor probation has substantiated any reasons for making its upward departure.

**4. Specific Offense Characteristics.**

**A.** In paragraph 12, Defendant objects to any enhancement involving sophisticated means. First, there was no finding by the jury that sophisticated means were used. (See footnote 1.) Second, as probation correctly points out, "sophisticated means" under U.S.S.G. §2T1.1(b)(2) Note 4 can only mean especially complex or especially intricate conduct. The operation of a business in another name is not especially complex or especially intricate, inasmuch as that is the norm of the business practice. The facts noted by probation do not rise to the level of especially complex or especially intricate, and thus no increase is warranted.

Further, U.S.S.G. §3C1.1 appears to focus upon conduct intended to obstruct a criminal investigation. Activity that preceded initiation of the criminal investigation, which all of the evidence here did, would not be included. The acts in this case could, at the most, be construed as a continuing when it became a criminal matter and had no real effect. Further, the addition of an obstruction adjustment, when the activity was an element of the crime (affirmative acts), is double counting. This enhancement is therefore inappropriate.

**B.** One specific offense characteristic which probation ignores is that each count in the indictment specifically charged, "did willfully **attempt** to evade and defeat the said income tax." (Indictment, Doc. 1). The U.S.S.G. Appendix, Statutory Index specifically states, "This index specifies the offense guideline section(s) in Chapter Two (Offense

Conduct) applicable to the statute of conviction." The index specifically aligns 26 U.S.C. § 7201 with U.S.S.G. § 2X1.1. Within this specific provision, the sentencing guidelines provide, "If an attempt, decrease by **3** levels, unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond defendant's control." U.S.S.G. § 2X1.1(b)(1). This provision clearly applies, because, as the indictment charges, Defendant was charged with an "attempt." There was no evidence at trial to refute the charge of "attempt," so probation erred in not following the guidelines and granting a 3 level decrease. Also, there was no evidence at trial to establish any of the requirements for disallowing the decrease. With the 3 point decrease, it lowers to an offense level **3**.

**5.** In paragraphs 17 and 19, Defendant objects to the Offense Level of 22. The Offense Level should only be a **3**.

**6.** In paragraph 21, Defendant objects to guideline score of 2 for the prior offense listed. Defendant is attempting to lower that sentence, and if sentenced to less than 6 months, it would only be 1 point.

**7.** In paragraph 22, Defendant objects to a criminal history category of II, as defendant is challenging that conviction, so it may be a criminal history category of I.

**8.** In paragraph 36, Defendant objects to the total offense level of 22. As noted above, the offense level is **4** or **5**, depending on the criminal history. Defendant also objects to a guideline range of 46 to 57 months. Pursuant to an offense level of 4 or 5, the

guideline range is **0-6 months**, regardless of the criminal history category**.** Defendant further objects to the guideline range being in Zone D. The guideline range is actually in **Zone A.** U.S.S.G. §5C1.1(b), no imprisonment is required.

**9.** In paragraph 40, probation correctly cited 18 U.S.C. §3561 and stated, "the defendant is eligible for probation." Defendant objects to probation's erroneous statement, "However, in the instant case, the guidelines preclude a sentence of probation." Probation cites to nowhere in the guidelines that precludes a sentence of probation. Because the offense level is a 4 or 5, probation is appropriate. U.S.S.G §5B1.1(a)(1). The term of probation should be none since Defendant has been incarcerated for more than seven months. U.S.S.G §5B1.2(a)(2) (no more than 3 years if offense level under 6).

Assuming, *arguendo*, that the base offense level was in Zone D as probation alleges, Defendant still objects to probations claim that "the guidelines preclude a sentence of probation." The guidelines are only advisory, not mandatory. *United States v. Booker*, 543 U.S. 220 (2005). Probation's statement, however, clearly supposes that the guidelines are mandatory, thus precluding under its erroneous calculations that the guidelines are mandatory and trump a statutory provision. This is a constitutional error.

**10.** In paragraph 42, Defendant objects to the maximum fine of $250,000. Pursuant to 18 U.S.C. § 3571(e), if the amount is lower in a specific statute, that amount applies. Defendant was charged and convicted under 26 U.S.C. § 7201, which specifically lists the maximum fine of $100,000. Thus, the amount listed by probation is erroneous.

**11.** In paragraph 45, Defendant objects to the fine alleged. Pursuant to U.S.S.G. §5E.1.2(3), a fine for 4-5 points is a range of $250 to $5,000.

**12.** Regardless of probation's assertion in paragraph 49, "The probation officer is not aware of any factors concerning the offense or the offender that should warrant a departure from the prescribed guidelines," there are at least two factors that warrant departure.

**A.** This is an atypical case because there was no evidence that Defendant was a taxpayer as defined by law or was given "due process notice" of what he was required by law to do. "U.S.S.G. § 5K2.0 allows sentencing courts to depart from the guideline sentencing range in a given case if the court finds aggravating or mitigating circumstances that render the case atypical and take it out of the 'heartland' for which the applicable guideline was designed." *United States v. Olbres*, 99 F.3d 28, 32-33 (1st Cir.1996), *citing United States v. Carrion-Cruz*, 92 F.3d 5, 6 (1st Cir.1996). "[C]ircumstances could remove a case from the heartland, but only if they are present in a manner that is unusual or special, rather than 'ordinary.'" *United States v. Rivera*, 994 F.2d 942, 943 (1st Cir.1993).

In showing that this case is "atypical" and warrants a downward departure, Defendant specifically incorporates his arguments in his oral and written motions to dismiss, motion for a new trial, and motion for acquittal. Further, this case is "atypical because the IRS never gave Defendant any notice of what he was required to do. (See testimony of Paul Crowley, June 11, 2007, p. 162.) The indictment alleges that he "fail[ed] to make an income tax return …as required by law…[and] fail[ed] to pay the

Internal Revenue Service said income tax." (Doc. 1.) There was no evidence that Defendant knew he was required to make an income tax, or that he knew what law required that, or that he knew he had to pay the IRS income tax. There was also no evidence of what statute or regulation imposed the alleged requirements, and that Defendant was specifically aware of those statutes or regulations.

Paul Crowley testified that there are only two ways an individual can become part of the IRS' database, and that is by the individual filing a return or the IRS receiving a Form 1099 or W2 on behalf of the individual. (See testimony of Paul Crowley, June 11, 2007, p. 125-26.) The evidence showed that none of these existed (ex 2-C, 2-D, 2-E; see testimony of Paul Crowley, June 11, 2007, p. 130-32).

Michael Pleshaw testified that there had to be "gross income," that gross income had to be "determined" by the taxpayer "fil[ing] a tax return" before there could be a liability for a tax and the tax actually owed.[5] (See testimony of Michael Pleshaw, June 19, 2007, p. 6-7.) Paul Crowley entered evidence showing a liability of zero for 1999, 2000, and 2001 (ex 2-C, 2-D, 2-E), and after speaking with the case agent, the U.S. Attorneys, and others in his office, none of them disagreed with those certifications (See testimony of Paul Crowley, June 11, 2007, p. 159.) The IRS not only never performed an assessment, it never took any civil action nor ever sent defendant any notice whatsoever. (See testimony of Paul Crowley, June 11, 2007, p. 162.) The government just showed up

---

[5] 26 U.S.C. § 61 defines gross income. Section 861(a) identifies the "items of gross income" which are "treated as income from sources within the United States." Section 63 defines "taxable income" in terms of "gross income." All of this must be determined before any tax can be found. (Then see footnote 4.)

one day, out of the blue, and charged defendant with committing crimes without any notice whatsoever to defendant that he was or had committed a crime.

Defendant can find no case where a defendant was charged with violating 26 U.S.C. § 7201 without evidence that the defendant sometime in his or her life filed a Form 1040 with the IRS and admitted to being a taxpayer per the IRS' system. (See testimony of Paul Crowley, June 11, 2007, p. 125-26.) Defendant can also find no case where the defendant did not have some kind of notice from the IRS (thus meeting the Due Process requirement of the Constitution). These things all point to this being an atypical case, and warranting a downward departure. No incarceration, no fine, and no penalty should be ordered. (See Paperwork Reduction Act, 44 U.S.C. §§§ 3506(c)(1)(B)(ii), 3507, 3512 (1995); *Dole v. United Steelworkers*, 494 U.S. 26 (1990); *United States v. Chisum*, No. 06-7082 (10th Cir. Sept. 25, 2007); and exhibits A, B, C, D, and E).

**B.** Probation and this Court should follow what the Supreme Court has ruled a district court is allowed to find at sentencing. Objections were made on this issue during trial. The Supreme Court has consistently held, "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *Cunningham v. California*, 549 U.S. --, 2007 WL 135687, *8 (2007); see also *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004); *United States v. Booker*, 543 U.S. 220 (2005). The Court's "bright line rule" is this: "Except for a prior conviction, 'any fact that increases the penalty for a crime

beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Cunningham*, 549 U.S. at *16; citing *Apprendi,* 530 U.S. at 490. As the Court recently reaffirmed, "The relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Cunningham,* at *1-2 (2007), citing *Blakely*, 542 U.S. at 303-304 (emphasis in original).

> Our precedents make clear that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment' and the judge exceeds [her] proper authority.

*Id.*, at *10-11, citing *Blakely*, 542 U.S. at 303 (emphasis in original).

Post *Booker*, a federal judge may "reasonably" find aggravating factors to give an upward sentence. *Cunningham*, at *20. "The reasonableness requirement *Booker* anticipated for the federal system operates *within* the Sixth Amendment constraints delineated in our precedent, not as a substitute for those constraints. . . . *Booker's* remedy for the Federal Guidelines, in short, is not a recipe for rendering our Sixth Amendment case law toothless." *Id.* (emphasis in original). "Additional factfinding by the trial judge [ ] yield[ing] an upper term sentence… [must be] reverse[d] [ ] because the [increase was] based on judicial factfinding den[ying] [defendant] his right to a jury trial." *Id.*, at *2.

As the dissent in *Cunningham* admits, an appropriate limit on judicial determinations at sentencing is limited to "factors exhibited by the defendant," which includes "prior convictions; cooperation or noncooperation with law enforcement; remorse or the lack of it; or other aspects of the defendant's history." *Cunningham*, at *3 (Kennedy, J., dissenting). However, only juries should find facts like:

> a weapon was used; violence was employed; a stated amount of drugs [or tax loss] or other contraband was involved; or the crime was motivated by the victim's race, gender, or other status protected by statute. Juries could consider these matters without serious disruption because these factors often are part of the statutory definition of an aggravated crime in any event and because the evidence to support these enhancements is likely to be a central part of the prosecution's case. *Id.*

To make it even more clear, the government has taken the following position before the Supreme Court. During oral argument in *Rita v. U.S.*, No 06-5754, oral argument at 33-34 (argued Feb. 20, 2007), the following discussion occurred,

> Mr. Dreeben: Let me try to address that and try to address Justice Alito's point about the question of how much sentencing philosophy can be decreed by the sentencing commission of Congress before a Sixth Amendment problem arises.
>
> As I understand this Court's sequence of opinions from *Apprendi* leading up the most recent decision in *Cunningham*, if the law establishes a level of punishment that may be imposed based on the facts found by the jury and says to the judge, judge, you may not go above it unless you find a particular fact, that fact is subject to the Sixth Amendment rule that the Court has announced and must be found by a jury.
>
> Justice Scalia: Or some fact, not necessarily a particular fact.
>
> Mr. Dreeben: Any fact at all, as a matter of fact is what the Court has said, although I understand that to mean facts pertaining to the offense and the offender, not facts about the world such as the prevalence of crime.

This very constitutional principle holds true in this case. The district court cannot find above 4 or 5 points for sentencing; if it does make the findings probation asserts—a tax loss and sophisticated means—it does so by using no evidence submitted to the jury. There was no evidence presented to the jury regarding an alleged tax loss. Certainly the IRS cannot state that they had insufficient time to determine the tax loss by performing an assessment. The government did not want the jury to find the tax loss amount but now wants the district court to use the alleged, unproven, unfound tax loss to increase the sentence. Using the purported tax loss proposed by the government and probation would be a clear violation of the Sixth Amendment.

Further, the factual basis used by probation for the enhancement of sophisticated means is also based solely on evidence presented to the jury. Thus, these enhancements are in violation of the Sixth Amendment.

The Court must consider the Sixth Amendment in its sentencing and not enter into the province of the jury, as it so carefully precluded the jury from entering its province of finding the law.

**13.** Defendant objects to the government's request for restitution. The PSR states there is no victim and thus no restitution may be imposed. U.S.S.G. §5E.1.1(a) requires that the victim be "identifiable." The indictment does not allege any victim, and no evidence was presented at trial of a victim. The government's claims alter the charges and are contrary to the trial evidence, making a constructive amendment or at least a material variance. This may be construed as new evidence, in which case the government is apparently attempting to perpetuate a fraud on the court. (See footnote 4.) This is also

an attempt by the government to circumvent due process by taking property, amongst other things, in violation of their own regulations. 26 CFR § 601.106.

The court cannot impose restitution. 18 USC § 3663(a)(1)(A) allows for an order of restitution under titles 18 and 21, not title 26. The Supreme Court held, "a straightforward reading" of the victim statutes clearly limits the authority of a sentencing court to order restitution "to compensate victims only for losses caused by the conduct underlying the offense of conviction." *Hughey v. U.S.* , 495 U.S. 411, 414 (1990?). The Court went on to find, "even were the statutory language regarding the scope of a court's authority to order restitution ambiguous, longstanding principles of lenity … preclude our resolution of the ambiguity against [defendant]." *Id.* at 422. The government wants restitution of what they claim is owed of $458,587. Only a victim can be paid restitution. "'Victim' means an individual." CR 32(a)(2). The IRS cannot be a "victim." It is well settled that the "Internal Revenue Service" has no capacity to sue or be sued, and the real party in interest in this proceeding is the "United States of America." *Scott v. IRS, 622 F.Supp. 537 (D.C. Tenn.1985); see also In re Laughlin,* 210 B.R. 659, 660 (1st Cir. BAP1997) *(citing In re Morrell,* 69 B.R. 147, 149 (N.D.Cal.1986)*(the IRS has no capacity to sue or be sued). See also Blackmar v. Guerre,* 342 U.S. 512, 514 (1952). Thus, the IRS cannot be a party to any court action. Only a party to an action can obtain a judgment which it can collect or later enforce. Since the IRS cannot be a party, it cannot obtain a judgment in its name, and therefore it cannot be a victim either. This is another attempt by the government to subvert the legal procedures outlined by Congress in collecting any tax. Therefore, restitution is not appropriate in this case.

Defendant reserves the right to amend his memorandum as well as raise any new issues at any time up through sentencing.

Respectfully submitted this 23rd day of January, 2008.

/s/ Scott A. Lutes
Scott A. Lutes
Counsel for Neil Stierhoff
One Turks Head Place, Suite 1440
Providence, RI 02903
Telephone: 861-1142
Fax: 861-1141
Email: scottluteslaw@yahoo.com

/s/ Alan S. Richey
Alan Stuart Richey
Counsel for Neil Stierhoff
P.O. Box 1505, Port Hadlock, Washington 98339
Telephone: 360 437-4005
Email: asratty@gmail.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I did electronically file the foregoing motion using the court's CM/ECF system which will send notice of the filing to the attorney of record for the plaintiff, Stephanie Browne, John Kane, and Thomas Voracek, and any other counsel of record through the CM/ECF system.

Dated this 23rd day of January, 2008.

/s/ Alan S. Richey
Alan S. Richey