**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR. No. 06-0042ML** |
| | : | |
| **NEIL STIERHOFF** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Thomas G. Voracek and John N. Kane, Trial Attorneys, United States Department of Justice, respectfully submits this Government's Response to Defendant's Sentencing Memorandum. The defendant raises a number of objections to the Presentence Report prepared in this case. The government disagrees with the defendant's objections and, instead, recommends that the Court sentence the defendant in accordance with the presentence report's offense level computation and defendant's criminal history. In addition, the government submits that the Court may order restitution as part of the imposition of a term of supervised release. In support of this Response, the government submits the attached Memorandum of Law.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

/s/Thomas G. Voracek
THOMAS G. VORACEK

/s/John N. Kane
JOHN N. KANE
Trial Attorneys
U.S. Department of Justice

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed, with the Clerk of Court using the CM/ECF system, a true and accurate copy of the within Government's Response to Defendant's Sentencing Memorandum, which will in turn send notification to Alan S. Richey, Attorney at Law, asratty@gmail.com, and to Scott A. Lutes, Attorney at Law, scottluteslaw@yahoo.com, and by regular mail, postage prepaid to Alan S. Richey, P.O. Box 1505, Port Haddock, Washington 98339 and to Scott A. Lutes, One Turks Head Place, Suite 1440, Providence, Rhode Island 02903.

/s/Thomas G. Voracek
Thomas G. Voracek

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR. No. 06-0042ML** |
| | : | |
| **NEIL STIERHOFF** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

After a seven day jury trial, the defendant was found guilty of four counts of tax evasion, pursuant to 26 U.S.C. §7201 for the 1999, 2000, 2001, and 2002 tax years. The defendant's sentencing has been scheduled for February 1, 2008. On September 17, 2007, the United States Probation Office prepared a Presentence Report (PSR) and an Addendum to the PSR was prepared on January 23, 2008. On January 24, 2008, the defendant filed a Sentencing Memorandum in which the defendant made a sentencing recommendation and noted several objections to the PSR.

The government recommends that the defendant be sentenced in accordance with the United States Sentencing Guideline (U.S.S.G.) total offense level and criminal history category as set forth in the presentence report. Furthermore, the government agrees with the PSR Addendum and submits that restitution is appropriate as a condition of supervised release.

Initially, it is noted that the PSR Addendum indicates that for purposes of computation, the Guideline Manual incorporating guideline amendments effective November 1, 2007 was used.[1] The defendant objects and states that the 2003 guideline version is applicable. Def.'s Memo at 3. The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced. United States v. Reiner, 500 F.3d 10, 17 (1st Cir. 2007); United States v. Cruzado-Laureano, 404 F.3d 470, 488 (1st Cir. 2005). This rule generally applies unless it would result in a violation of the Ex Post Facto Clause. Cruzado-Laureano, 404 F.3d at 488. An ex post facto violation occurs when subsequent amendments to a law would have increased a defendant's punishment. Id. In this case, the tax loss tables as found in the 2007 guidelines are not harsher than the tax loss tables as found in the 2003 guidelines as recommended by the defendant. The government recommends that the Guideline Manual incorporating guideline amendments effective November 1, 2007 should be used.

The defendant makes a number of objections to the PSR. Initially, the defendant objects to the prosecution version of the offense as set forth in the report. The defendant also contends that the PSR incorrectly sets forth the tax loss amounts for sentencing guidelines purposes. The defendant also argues

---

[1]The PSR prepared in September 2007 recommended the 2006 version of the guidelines because sentencing was previously set for a date prior to November 1, 2007.

that the court should not enhance the defendant's sentence based on sophisticated means. In addition, the defendant claims that his sentence should be reduced under the guidelines because he was charged with an "attempt" offense. The defendant objects to the criminal history category as set forth in the PSR. The defendant contends that the maximum fine to be imposed is no more than $100,000. The defendant also maintains that the Court may not impose restitution in this case. Finally, the defendant requests that a downward departure be granted because of his family ties and responsibility, that the case is "atypical" because he was unaware of his duty to file a tax return, and that the Sixth Amendment to the U.S. Constitution prohibits the Court from enhancing the sentence based on facts which were not found by the jury.

**A. Prosecution version of offense.**

The defendant contends that the statements made by the government as reflected in the prosecution version of the offense as set forth in the PSR is hearsay and unsupported by the evidence at trial. This is incorrect. The trial transcript is replete with testimony and documentation evidencing that the defendant operated a business selling electronic testing equipment to various customers throughout the United States. Based on bank records (Exhs. 20 - 26, 40-44), customer records (Exhs. 100 - 243), and other evidence and testimony, IRS Revenue

Agent Michael Pleshaw testified at trial concerning the defendant's gross receipts, net profit, and federal income and self-employment taxes for the period 1999 - 2002. Several exhibits setting forth the computations of gross receipts, net profit, and taxes due and owing were admitted into evidence as well. See Exhs. 375A-375G, 376A-376L, 377A-377L, and 378A-378L. At trial, Agent Pleshaw testified as to the following income and self-employment taxes due and owing:

| **June 14, 2007 Transcript page** | **Year** | **Taxes Due** |
|---|---|---|
| 134 | 1999 | $ 87,579 |
| 160 | 2000 | 173,563 |
| 181 | 2001 | 138,240 |
| 198 | 2002 | 59,205 |

The above tax computations are the same amounts as provided by the government on September 14, 2007 for PSR purposes. The defendant contends that the above figures were "different from the figure[s] in the August 20, 2007 PSR so either probation mixed up their numbers, or the government is still trying to figure the correct numbers." Def's. Sent. Memo. at 3. The above tax due amounts accurately reflect the computations testified to at trial by Agent Pleshaw. The government acknowledges that it previously provided probation with inaccurate figures for the 2001 and 2002 years.

The evidence at trial also clearly reflects that the defendant filed no federal income tax returns or paid federal

tax. IRS account transcripts for the 1999 – 2002 tax years show that no returns were filed or taxes paid by the defendant. See Exhs. 2C, 2D, 2E, and 2F. IRS Service Center Representative Paul Crowley testified at trial concerning these transcripts.

The evidence at trial also demonstrated that the defendant committed several affirmative acts of evasion. The bank records, customer documents, self-storage records, and U.S. Post Office records, all admitted at trial with corresponding testimony, reflect that the defendant conducted business under the name of Joseph Adams (Exs. 100-243), used a bank account in the name of Joseph Adams to deposit his business receipts (Exhs. 20-26), stored his testing equipment at a storage facility in the name of Adams Associates, Inc. (Exhs. 260-262), and used a post office box in the name of Universal Audio to receive business receipts (Exh. 80). Detective Timothy Sanzi, Rhode Island State Police, testified that on April 12, 2002, the defendant had in his wallet several identification cards in the name of Joseph Adams, (June 11th Transcript at pp. 38-42). Det. Sanzi also testified that on that same date, a Joseph Adams bank statement was found in the defendant's residence (June 11th transcript at p. 45). Finally, the defendant made statements to state police officers concerning his use of the name of Joseph Adams. Exh. 77-B.

Therefore, the prosecution version of the offense, as set forth in the PSR, is based upon the evidence and testimony admitted at trial.

**B. Tax loss for sentencing purposes.**

The defendant made several objections to the tax loss amount of $458,587 as set forth in the PSR. The defendant contends that the jury never found a specific amount of tax loss and that it would be a violation of the Sixth Amendment for the Court to make a tax loss finding for sentencing purposes. The defendant's position is incorrect.

Under the United States Sentencing Guidelines (U.S.S.G.), the base offense level for a tax evasion conviction is determined by the tax loss amounts. See U.S.S.G. §§2T1.1 and 2T4.1. A tax loss of $458,587, as noted in the PSR, results in a base offense level of 20. The defendant contends that since the jury never found a specific tax loss amount, the tax loss for sentencing guidelines purposes is $0 and, therefore, the base offense level is six.

The defendant claims that several courts have determined that under the Sixth Amendment, any fact that exposes the defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence. Def.'s Memo at 4-5 and 11-14. Defendant suggests that this Court cannot sentence him based on a tax loss not found by the jury. Defendant is wrong. Supreme Court precedent does not prevent this Court from

sentencing based on tax loss found by the Court rather than decided by the jury.

"The Supreme Court held in Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and confirmed in United States v. Booker, 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), that any fact necessary to support a sentence exceeding the statutory maximum (other than a prior conviction) must be found by a jury beyond a reasonable doubt or admitted by the defendant." United States v. Arango, 508 F.3d 34, 41 (1st Cir. 2007)(emphasis added). The recommended tax loss in the instant case would not cause Defendant to be sentenced beyond the statutory maximum which would be five years of incarceration on each count of conviction.

The defendant relies to a great extent upon the U.S. Supreme Court's recent decision in Cunningham v. California, 127 S.Ct. 856 (2007). In that case, the Court considered a California sentencing law which authorized the judge, not the jury, to find facts exposing a defendant to an elevated upper term sentence. The Court held that the California law violated defendant's right to trial by jury. The Court relied upon the earlier decisions in Apprendi and Blakely v. Washington, 542 U.S. 296 (2004) in which the Court found that the Federal Constitution's jury trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction,

not found by a jury or admitted by a defendant. Cunningham, 127 S.Ct. at 860.

Nothing in Booker prevents this Court from sentencing Defendant based on the tax loss found by the Court by a preponderance of the evidence. The sentencing flaw at issue in Booker was not judicial fact-finding per se, but the application of the sentencing guidelines as mandatory rather than advisory. United States v. Pesaturo, 476 F.3d 60, 73 (1st Cir. 2007), citing United States v. Antonakopoulos, 399 F.3d 68, 79-80 (1st Cir. 2005); accord United States v. Wilson, 507 F.3d 718, 721 (7th Cir. 2007) (constitutionality of judicial fact-finding under the guidelines was resolved when the Supreme Court rendered the guidelines advisory in the remedial opinion in United States v. Booker, 543 U.S. at 233-34). See also United States v. Kosinski, 480 F.3d 769 (6th Cir. 2007) (concluding that a sentencing court can determine tax loss by a preponderance of the evidence.)

As noted above, the U.S. Supreme Court has deemed the U.S. Sentencing Guidelines advisory. Booker, 543 U.S. at 233-34; United States v. Pelletier, 469 F.3d 194, 203 (1st Cir. 2006). Although advisory, the sentencing guidelines remain an important datum in constructing a reasonable sentence. United States v. Shelton, 490 F.3d 74, 80 (1st Cir. 2007).

In constructing a sentence under an advisory guidelines regime, a sentencing court ordinarily should begin by calculating

the applicable guideline sentencing range; then determine whether or not any departures are in order, then mull the factors delineated in 18 U.S.C. 3553(a) as well as any other relevant considerations; and, finally, determine what sentence, whether within, above, or below the guideline range appears appropriate. Pelletier, 469 F.3d at 203.

Under Booker, a judge may make factual findings in determining the guideline range. United States v. Antonakopoulos, 399 F.3d at 80. Nothing in Booker requires submission of such facts to the jury so long as the Guidelines are not mandatory. Id.

Specifically, a court may make tax loss findings for purposes of the sentencing guidelines. Courts may properly make tax loss factual findings at sentencing under a preponderance of the evidence standard, that go beyond the facts found by the jury, so long as the court recognizes that the guidelines are advisory. United States v. Dean, 487 F.3d 840, 854 (11th Cir. 2007). In addition, another court rejected a Booker challenge to a court's tax loss findings where the guidelines are applied as advisory, not mandatory. Pesaturo, 476 F.3d at 73. Booker did not eliminate judicial fact-finding. Kosinski, 480 F.3d at 776. Booker does not bar the district court from calculating and considering the tax loss amount provided that the sentencing guidelines are used as advisory and not mandatory. Id.

In this case, the prosecution offense version relating to

tax loss, included in the PSR, is based solely upon the evidence admitted at trial and the testimony of IRS Agent Pleshaw. The tax loss amount of $458,587 consists of the federal individual income and self-employment tax for the years 1999 through 2002. As noted, the defendant was convicted of four counts of tax evasion for 1999 through 2002. The government does not intend to introduce any additional evidence at sentencing regarding tax loss.

The defense argument that there was no tax loss found by the jury is incorrect. A substantial tax due and owing is a required element of the crime of tax evasion. This Court instructed the jury that the government must prove beyond a reasonable doubt that the defendant had a substantial tax due and owing. See Jury Instructions nos. 14 and 15; June 19th transcript at p. 77. In finding the defendant guilty, the jury necessarily must have found a substantial tax due and owing for 1999, 2000, 2001, and 2002.

The defendant also contends that self-employment taxes should not be included as part of the tax loss. Def.'s Memo at 2. The amount of tax loss related in the PSR includes federal individual income tax and self-employment tax. Contrary to the defendant's contention, nothing in the language of U.S.S.G. Section 2T1.1 indicates that self-employment taxes should be excluded from the calculation of tax loss. United States v.

Twieg, 238 F.3d 930, 931 (7th Cir. 2001). The failure to pay the self-employment taxes results in a loss to the government of at least the present value of the tax payments, and possibly the future value as well because the individual may never become entitled to collect those payments. Id.

Finally, the defendant contends that there is no tax loss in this case because there was no tax deficiency. The defendant claims that because the Congressionally required process was not followed by the IRS, there was no deficiency, no tax due and owing, and no tax loss. Def.'s Memo at footnote 4. The defendant made a similar argument in his motion for judgment of acquittal and new trial. This Court properly rejected this contention stating that "[A] tax deficiency . . .exists from the date a return is to be filed and. . .arises by operation of law when the return is not filed." United States v Hogan, 861 F.2d 312, 316 (1st Cir. 1988) ... "As long as the tax is 'due and owing' in this manner, no formal assessment is necessary." United States v. Russell, 998 F.2d 1001, 1993 WL 279077, *1 (unpublished)(citing Hogan, 861 F.2d at 315). United States v. Stierhoff, 500 F.Supp.2d 55, 61 (D.R.I. 2007)

The government contends that, for sentencing guidelines purposes, the court may determine the tax loss amount based upon the evidence adduced at trial. In this case, the tax loss introduced by the government at trial was $458,587.

**C. The offense involved sophisticated means.**

The defendant also objects to any enhancement involving sophisticated means. As the PSR correctly notes, if the offense involved sophisticated means, Section 2T1.1(b)(2), U.S.S.G., instructs to increase the offense level by two levels. Application Note 4 states that "'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. §2T1.1 Application Note 4. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.

The defendant objects to any sophisticated means enhancement because the jury did not specifically find that sophisticated means were used. Def.'s Memo at 6. The defendant also contends that the means employed by the defendant were not especially complex. Finally, the defendant argues that a sophisticated means enhancement is inappropriate unless it was conduct intended to obstruct a criminal investigation.

As previously stated, as long the court considers the guidelines as advisory, the court may make a factual finding that sophisticated means were employed. United States v. Diesel, 238 Fed. Appx. 398 (10th Cir. 2007). District courts may make factual

findings and enhance sentences within the statutory range prescribed for the conduct found by the jury. Id. For the reasons expressed in the PSR, the government recommends that the Court find that the defendant employed sophisticated means.

The defendant also argues that the affirmative acts of evasion and the sophisticated means represents the same conduct and any enhancement constitutes "double counting". Def.'s Memo at 6. However, there is no legal support for this argument because the two categories are not mutually exclusive. United States v. Hunt, 25 F.3d 1092, 1098 (D.C. Cir. 1994).

The defendant argues factually that the defendant's conducting business in another name is not especially complex or intricate. The government disagrees with this contention with respect to the defendant's specific conduct. The defendant took elaborate steps to conceal his true identity from the business income that he generated. The defendant used at least three aliases to conceal his receipt of income from the government. His customers were led to believe that his name was Joseph Adams. The defendant also used Adams Associates, Inc. to store his electronic testing equipment. He used another name, Universal Audio, to receive business receipts.

In addition, the defendant's use of money orders to pay his personal credit card debt is a good example of the complex steps he took to insulate his identity from his business income. The evidence reveals that the defendant's income was deposited into

the Joseph Adams bank account. The defendant used a debit card to deduct funds from the Joseph Adams bank account to purchase money orders at the U.S. Post Office. Exh. 270. The defendant paid his personal credit card debt with these money orders. Exh. 36-D and 36-E. Therefore, the defendant's complex conduct in utilizing aliases, a debit card, and money orders to conceal his association with his business income is indicative of sophisticated means.

Finally, the defendant contends that Section 3C1.1, U.S.S.G., focuses on conduct intended to obstruct a criminal investigation. However, the PSR does not include any level increases for Obstruction of Justice. PSR at p. 4.

**D. The crime of tax evasion should not be sentenced as an "attempt" crime under U.S.S.G. 2X1.1**

The defendant contends that he should be entitled to a three-level decrease under the sentencing guidelines because the defendant was charged with attempt. The defendant claims reliance upon U.S.S.G. § 2X1.1 which provides:

> If an attempt, decrease by 3 levels, unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control.

The defendant's reliance upon Section 2X1.1 is misplaced.

Defendant was convicted of four counts of 26 U.S.C. § 7201, which is itself defined as an attempt to evade or defeat a tax. That section provides:

> §7201. Attempt to evade or defeat tax
>
> Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined* not more than $100,000($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

26 U.S.C. § 7201.

Defendant completed the crime of attempted evasion and there is an actual tax loss, not an intended tax loss. In fact, the jury was required to find substantial taxes due and owing for the 1999 - 2002 tax years in order to find the defendant guilty. Once a substantial tax due and owing existed for each year, the crime of tax evasion was completed. The defendant's attempts at evading tax were successful. Therefore, it is appropriate that he be sentenced on the amount of tax loss shown by the evidence presented at trial and testified to by Agent Pleshaw.

This Circuit has previously noted the difficulty in reconciling the guideline section 2X1.1 which grants leniency when a crime is not completed with a statute for which the crime itself is an attempt. <u>See</u> <u>United States v. Egemoyne</u>, 62 F.2d 425 (1st Cir. 1995)(discussing the difficulty of reconciling Section 2F1.1 with Section 2X1.1). The Court observed that there was

merit in leniency when the crime was not completed: "The argument for a discount for inchoate crimes is obvious; the defendant has started down the road toward the substantive crime but has not gotten there yet and, whatever his intention, might still turn back before crossing the line." United States v. Egemoyne, 62 F.2d at 429. Nevertheless, the Court reasoned that it was appropriate to sentence the defendant based on the completed crime.

In a similar vein, the defendant asserts that the government's statement to the Probation Officer that "The defendant evaded federal income taxes from 1999 through 2002" is unsubstantiated hearsay and, if accepted as true, rises to the level of a constructive amendment of the indictment or a material variance from the indictment. (Def's Memo. at 2) This argument lacks merit. "A constructive amendment occurs 'when the charging terms of the indictment are altered at trial so that they are different from those handed up by the grand jury.'" United States v. Munoz-Franco, 487 F.3d 25, 64 (1st Cir. 2007)(quoting United States v. Rodriguez, 215 F.3d 110, 118 (1st Cir. 2000). No statement by the prosecutor regarding the facts after the trial can amend an indictment returned by a grand jury. This Court has already ruled that no such amendment occurred at trial. See Memorandum and Order dated August 3, 2007.

Likewise, the statement caused no material variance to occur. A variance occurs "when the proof differs from the indictment's allegations and 'is material and reversible only if it has affected the defendant's substantial rights: to be informed of the charges; and to prevent a second prosecution for the same offense.'" United States v. Munoz-Franco, 487 F.3d at 64 (quoting United States v. Vavlitis, 9 F.3d 206, 210 (1st Cir. 1993). Again, this Court already has ruled that proof at trial was consistent with the indictment's allegations. Nothing said to probation changes the facts proven at trial.

Accordingly, the fact remains that Defendant was convicted of four counts of attempted evasion by a properly instructed jury. As part of the proof at trial, it was demonstrated that Defendant had a substantial tax due and owing for each of the four years of conviction. He attempted to evade his taxes and was successful in his attempt to evade taxes. The government's statements to probation were factually accurate and not unsubstantiated hearsay.

### E. The defendant's criminal history.

The defendant objects to the criminal history category of II as set forth in the PSR. The defendant claims that he "is attempting to lower the previous sentence, and if sentenced to less than six months, it would only be one point." Def.'s Memo at 7.

The PSR sets forth that the defendant was found guilty of another criminal offense on July 18, 2003 and was sentenced to one year confinement. On April 19, 2005, the Rhode Island Supreme Court affirmed the judgment of the Superior Court. State v. Neil Stierhoff, No. 2004-117-C.A. (R.I. Supreme Court 2005).

Under the United States Sentencing Guidelines, the total points from various criminal history items determine the criminal history category. U.S.S.G. 4A1.1. Two points are added for each prior sentence of imprisonment of at least sixty days. U.S.S.G. 4A1.1(b). Since the defendant was sentenced to one year in prison, he received two criminal history category points. In applying the Sentencing Table, as found in the United States Sentencing Guidelines, two criminal history points is equivalent to a criminal history category II. U.S.S.G. Ch. 5, Pt. A.

The PSR's criminal history computations are correct and the defendant should be sentenced as a criminal history, category II, for sentencing guidelines purposes.

**F. The defendant may be subject to a fine of $250,000.**

The defendant objects to the maximum fine of $250,000 as set forth in the PSR. The defendant claims that the statute of conviction, 26 U.S.C. §7201, lists a maximum fine of $100,000.

Pursuant to the alternative fines provisions of 18 U.S.C. §3571(b)(3), the fine for the conviction of a felony violation is

$250,000. If a law setting forth an offense specifies no fine or a fine that is lower than the fine otherwise applicable under this section and such law, by specific reference, exempts the offense from the applicability of the fine otherwise applicable under this section, the defendant may not be fined more than the amount specified in the law setting forth the offense. 18 U.S.C. §3571(e). Although Section 7201, the count of conviction, sets forth a fine amount of $100,000, this statute does not exempt the offense from the applicability of the fine otherwise applicable. Therefore, the maximum fine for a Section 7201 conviction is $250,000.

**G. Court-ordered restitution**

The defendant objects to any restitution in this case. The defendant claims that the Court can not order any restitution in this Title 26 case, relying on Section 3663(a)(1)(A) of Title 18.

However, the government contends that the Court can and should order the defendant to pay restitution in this case. Contrary to the defendant's contention, restitution is statutorily authorized. The victim is the United States. The amount of restitution is the amount of federal tax loss, $458,587.

Although Title 26 offenses are not included in the list of offenses in 18 U.S.C. §3663(a)(1) with respect to which the court may sentence a defendant to pay direct restitution, a court is

authorized to impose any "discretionary condition of probation in section 3563(b)(1) through (b)(10)" as a condition of supervised release or probation. See 18 U.S.C. §§3556, 3563(b)(2), 3583(d); U.S.S.G. 5E1.1(a), 5E1.1, comment.(backg'd); United States v. Daniel, 956 F.2d 540, 543-44 (6th Cir. 1992).

Accordingly, as restitution is one of the listed discretionary conditions of probation (see 18 U.S.C. §3563(b)(2)), a court is authorized to order restitution for violations of Title 26 as a condition of term of supervised release following a term of imprisonment (see, e.g., United States v. Bok, 156 F.3d 157, 166-67 (2d. Cir. 1998)) or as a condition of probation when a court imposes a sentence of a term of probation.

Under the Victim-Witness Protection Act (VWPA), Section 3663 provides that restitution may be ordered to any victim of the offense. No limitations are placed on the term victim. A government agency, including the Internal Revenue Service, can be a victim for purposes of restitution. United States v. Minneman, 143 F.3d 274, 284 (7th Cir. 1998); United States v. Martin, 128 F.3d 1188, 1190-1192 (7th Cir. 1997); United States v. Salcedo-Lopez, 907 F.2d 97, 99 no. 2 (9th Cir. 1990).

Thus, a court may impose restitution in a tax case so long as the court complies with the requirements of the VWPA. Under the VWPA, the court may order restitution so long as payment is

made to an identified victim in a definite amount and the amount of restitution is limited by the actual loss of the victim. Virgin Islands v. Davis, 43 F.3d 41, 45 (3rd Cir. 1994); United States v. Woodley, 9 F.3d 774, 780 (9th Cir. 1993).

The calculation of the amount of loss for purposes of restitution when the IRS is the victim is closely related to the calculation of the tax loss used to determine a defendant's base offense level. The district court may rely upon the same "quantity and quality of evidence" to determine the amount of loss in both contexts. See United States v. Germosen, 139 F.3d 120, 130 (2d Cir. 1998); United States v. Corpus, 110 F.3d 1529, 1537 (10th Cir. 1997).

**H. No downward departures from the guidelines are warranted.**

The defendant contends that a downward departure be granted because of his family ties and responsibility[2], that the case is "atypical" because he was unaware of his duty to file a tax return, and that the Sixth Amendment to the U.S. Constitution prohibits the Court from enhancing the sentence based on facts which were not found by the jury. Defendant objects to the PSR statement that "The probation officer is not aware of any factors

---

[2] Although defendant claims "family ties and responsibilities" in his memorandum, he cites no specific factors in this regard.

concerning the offense or the offender that should warrant a departure from the prescribed guidelines." Defendant claims that there are at least two factors that warrant departure:

> (1) This is an atypical case because there was no evidence that Defendant was a taxpayer as defined by law or was given "due process notice" of what he was required by law to do, thus taking the case out of the "heartland for which the applicable guideline was designed."
>
> (2) "Probation and this Court should follow what the Supreme court has ruled a district court is allowed to find at sentencing."

(Defendant's Memorandum at p.11)

**1. Defendant's argument that the case is outside the heartland of attempted evasion cases.**

The government first addresses whether this case falls outside the heartland of attempted evasion cases. The court may depart upward or downward from sentencing guidelines when it finds an aggravating or mitigating circumstance of a kind or degree not taken consideration by the Sentencing Commission. Defendant claims that his is such a case. "The Supreme Court has suggested that downward departures are widely available when unusual circumstances distinguish a case from the heartland of the Guidelines." United States v. Rowe, 202 F.3d 37, 41 (1st Cir. 2000), citing, Koon v. United States, 518 U.S. 81, 94 (1996). Indeed, with the exception of certain delineated factors, the United States Sentencing Guidelines specifically provide for courts to depart from a guideline-specified sentence:

> [The court may depart] when it finds "an aggravating or mitigating circumstance . . .that was not adequately taken into consideration by the Sentencing Commission. . .' 18 U.S.C. § 3553(b). Thus, in principle, the Commission, by specifying that it had adequately considered a particular factor, could prevent a court from using it as grounds for departure. In this initial set of guidelines, however, the Commission does not so limit the courts' departure powers. The Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted. . .With [] specific exceptions, however, the Commission does not intend to limit the kinds of factors (whether or not mentioned anywhere else in the guidelines) that could constitute grounds for departure in an unusual case.

2007 U.S.S.G. ch 1, pt. A, § 1A1.1(4)(b).

In claiming that this case is "atypical" and warrants a downward departure, defendant incorporates arguments already made in his oral and written motions to dismiss, motion for a new trial, and motion for acquittal. (Defendant's Memorandum at 9) These arguments have been considered and rejected by this Court. Defendant also argues that this case is atypical because the IRS never gave Defendant any notice of what he was required to do. Consequently, "[t]here was no evidence that Defendant knew he was required to make an income tax, or that he knew what law required that, or that he knew he had to pay the IRS income tax." (Def.'s memo. at 9-10) He further argues that this case is atypical because Defendant can find no case where a defendant was charged with violating Section 7201 without evidence that the

defendant sometime in his or her life filed a form 1040 with the IRS and admitted to being a taxpayer in the IRS' system. (Id. at 11)

A defendant bears the burden of proving eligibility for a Guidelines departure by a preponderance of the evidence. United States v. Sachdev, 279 F.3d 25, 28 (1st Cir. 2002); United States v. Rizzo, 121 F.3d 794, 801 (1st Cir. 1997). None of the circumstances raised by Defendant as grounds for departure justify a downward departure for him.[3] Contrary to Defendant's claim that there was no evidence regarding his knowledge that he had to file a tax return, the government produced evidence of willfulness, which is one of the elements of Section 7201. See Sansone v. United States, 380 U.S. 343, 351 (1965). Willfulness in the criminal tax context is defined as "a voluntary,

[3] In Koon v. United States, the Supreme Court outlined what is required of sentencing courts when considering a departure from the applicable Guidelines range. 518 U.S. 81, 92-96 (1996). The Third Circuit in applying the Koon analysis, described the process as follows:

> First, identify the factor or factors that potentially take the case outside the Guidelines' "heartland" and make it special or unusual. Second, determine whether the Guidelines forbid departures based on the factor, encourage departures based on the factor, or do not mention the factor at all. Third, apply the appropriate rule: (1) if the factor is forbidden, the court cannot use it as a basis for departure; (2) if the factor is encouraged, the court is authorized to depart if the applicable guideline does not already take it into account; (3) if the factor is discouraged, or encouraged but already taken into account by the applicable guideline, the court should depart only if the factor is present to an exceptional degree, or in some other way makes the case different from the ordinary case in which the factor is present; or (4) if the factor is unmentioned, "the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether [the factor] is sufficient to take the case out of the Guideline's heartland."

United States v. Ali, 508 F.3d 136, 148 (3d Cir. 2007).

intentional violation of a known legal duty." United States v. Bishop, 412 U.S. 346, 360 (1973). The government produced evidence of willfulness, the jury was instructed on the element of willfulness, and found the defendant guilty. A jury is presumed to follow its instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000); Richardson v. Marsh, 481 U.S. 200, 211 (1987).

More puzzling is defendant's assertion that he is entitled to a downward departure because he has found no other cases where a defendant was charged with violating Section 7201 without evidence that the defendant sometime in his or her life filed a Form 1040 with the IRS and admitted to being a taxpayer per the IRS' system. (Defendant's Memorandum at 11) Defendant's long history of not filing or paying taxes would seem to be an aggravating circumstance rather than a mitigating circumstance which would justify a downward departure. The government maintains that defendant has demonstrated no circumstances making this case "atypical" in such a manner as to take it out of the heartland of evasion cases and justify a downward departure.

**2. Defendant's argument that the court has grounds to depart because the Court cannot enter into the province of the jury.**

Defendant's argument that Supreme Court precedent prohibits the court from sentencing above 4 or 5 points for sentencing is equally unavailing. (Defendant's Memorandum at 14). Defendant

suggests that this Court cannot sentence him based on a tax loss not found by a jury. As previously discussed, the defendant is wrong. Supreme Court precedent does not prevent this Court from sentencing him based on tax loss found by the Court rather than decided by the jury.

**I. Conclusion**

In conclusion, the government recommends that the defendant be sentenced in accordance with the United States Sentencing Guideline (U.S.S.G.) total offense level and criminal history category as set forth in the presentence report.

Respectfully submitted,
UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

/s/Thomas G. Voracek
THOMAS G. VORACEK

/s/John N. Kane
JOHN N. KANE
Trial Attorneys
U.S. Department of Justice

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed, with the Clerk of Court using the CM/ECF system, a true and accurate copy of the within Memorandum of Law in Support of the Government's Response to Defendant's Sentencing Memorandum, which will in turn send notification to Alan S. Richey, Attorney at Law, asratty@gmail.com, and to Scott A. Lutes, Attorney at Law, scottluteslaw@yahoo.com, and by regular mail, postage prepaid to Alan S. Richey, P.O. Box 1505, Port Haddock, Washington 98339 and to Scott A. Lutes, One Turks Head Place, Suite 1440, Providence, Rhode Island 02903.

/s/Thomas G. Voracek
Thomas G. Voracek