UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | No. 1:06cr42ML |
| v. | ) | DEFENDANT'S MOTION TO DISMISS FOR SUBSTANTIAL ERRORS & JURISDICTIONAL BASIS |
| NEIL STIERHOFF, Defendant. | ) | |

COMES NOW the Defendant, by and through his counsel of record, and moves this Court to dismiss the indictment and set aside the conviction based on the substantial errors committed by both this Court and the government in this case. Such errors deprived or stripped this Court of jurisdiction. Defendant also brings this motion pursuant to F.R.Cr.P. 35(a), which provides, "Within 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." As set forth below, the alleged amount of tax loss is clear error and an arithmetical error over which this Court lacked jurisdiction.

This motion, with its arguments and contentions, is filed at the specific request and under the specific direction of Defendant, and as such constitutes an *Anders* type motion pursuant to the Supreme Court case *Anders v. California*, 386 U.S. 738 (1967).

Defendant herein incorporates his "Statement" filed with this Court on February 1, 2008 (Doc. 112). Defendant also incorporates herein in its entirety his Affidavit in Support of Defendant's Motion to Dismiss ("Affidavit"), which is attached and filed hereto. Defendant also reserves the right to amend this motion.

The first error was that the Court apparently made or allowed to be made a determination that Defendant is a "taxpayer." Although the general rule is, "In a case of

actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration….” 28 U.S.C. § 2201(a). However, that same provision contains a specific exception “with respect to Federal taxes,” thus precluding the district court from determining rights and legal relations “with respect to Federal taxes.” 28 U.S.C. § 2201(a). Therefore, had the government sought such a declaration from this Court, which it did not specifically seek, this Court would have no jurisdiction or authority to find that Defendant is a “taxpayer.” However, throughout this case it has been implied and inferred, even presumed, that Defendant is a “taxpayer.” (See testimony of Michael Pleshaw, June 14, 2007, p. 180.) Defendant bore no burden regarding such and denies that he is a “taxpayer.” Affidavit, ¶ 4.

Paul Crowley testified in this case that there are only two ways an individual can become part of the IRS’ database, a “taxpayer,” and that is by the individual filing a return or the IRS receiving a Form 1099 or W2 on behalf of the individual. (See testimony of Paul Crowley, June 11, 2007, p. 125-26.) The evidence showed that none of these existed (ex 2-C, 2-D, 2-E; see testimony of Paul Crowley, June 11, 2007, p. 130-32). Therefore, the evidence before this Court was that not even the IRS had determined Defendant to be a “taxpayer.” Thus, there was no evidence Defendant is a “taxpayer.”

Defendant denies that he is a “person” within the meaning of title 26. Statement, ¶ 11 (Doc. 112). The crime alleged in this case could only be committed by a “taxpayer,” a “person subject to [an] internal revenue tax.” 26 U.S.C. § 7701(a)(14). The charging statute clearly states, “Any **person** who….” 26 U.S.C. § 7201 (emphasis added).

Congress specifically defined "person"; "The term 'person' as used in this chapter includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 7343. Defendant denies he is an "officer, agent or employee of a Federal agency." Statement, ¶ 6 (Doc. 112).

A fundamental principle of statutory construction is "*inclusio unius est exclusio alterius*, "the inclusion of one thing is the exclusion of all others." "When a statute includes an explicit definition, we must follow that definition, even if it varies from the term's ordinary meaning. It is axiomatic that the statutory definition of the term excludes unstated meanings of that term." *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000); *Meese v. Keene*, 481 U.S. 465 (1987). "[T]ax statutes…should be strictly construed, and, if any ambiguity be found to exist, it must be resolved in favor of the citizen." *Billings v. U.S.*, 232 U.S. 261, 265 (1914). "Judges [have the] duty to construe legislation as it is written, not as it might be read by a layman, or as it might be understood by someone who has not even read it." *Meese*, 481 U.S. at 484. "The term 'person' shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation." 26 U.S.C. § 7701(a)(1). The government failed to prove any specific tax that was imposed on Defendant, even though the government alleged and the court instructed that an "individual income tax" was imposed on him, for which he was also liable. cites

Defendant also denies that he is an "individual." Statement, ¶ 10 (Doc. 112). The term "individual" is defined by the Department of Treasury to mean "alien" or "nonresident alien." 26 CFR § 1.1441-1(c)(3); "Alien: The term alien individual means

an individual who is not a citizen or a national of the United States." 26 CFR § 1.1441(c)(3)(i); See Sec. 1.1-1(a)(1) & (c). A Citizen of the U.S. can only be an "individual" when residing outside the U.S., or when the Citizen makes an election and willingly declares him or herself to be an "individual." Congress specifically defined "resident alien" and "nonresident alien." 26 U.S.C. § 7701(b).

Defendant specifically denies that he is a "taxpayer," a "person" or an "individual" as those terms are defined with regard to this case. Statement (Doc. 112). There was no evidence that he is a "taxpayer," a "person" or an "individual." The only evidence before this Court is that Defendant is a U.S. Citizen residing within Rhode Island. PSR at "Identifying Data." Mr. Pleshaw made the erroneous legal presumption that Defendant is a "taxpayer" and an "individual." (See testimony of Michael Pleshaw, June 14, 2007, p. 131, 157, 180.) This Court is without authority to determine that Defendant has the status of such. No presumption is allowed that Defendant is a "taxpayer," a "person" or an "individual." Certainly this Court cannot deny that the government bore the burden of establishing beyond a reasonable doubt every allegation in the indictment, including that Defendant is a "taxpayer" with a "taxable income," a "person" and an "individual," and none of those could be presumed.

The Supreme Court found, "it is not permissible [ ] to shift the burden by arbitrarily making one fact, which has no relevance to guilt of the offense, the occasion of casting on the defendant the obligation of exculpation." *Tot v. U.S.*, 319 U.S. 463, 469 (1943). "The power to create presumptions is not a means of escape from constitutional restrictions." *Bailey v. Alabama,* 219 U.S. 219, 239 (1911). The First Circuit found "the

application of irrebuttable presumptions to be unconstitutional." *Randall v. Goldmark*, 495 F.2d 356, 359 (1st Cir.1974). Further, a legal duty arising from somewhere within the Internal Revenue Code could only be imposed on a "person" who is a "taxpayer" or "individual." 26 U.S.C. § 7201. Thus, Defendant is not a proper party in this case.

There was no evidence that, and Defendant denies, that he is "liable" for any "income tax." Statement, ¶ 13 (Doc. 112). It is clear that imposition of a tax comes from one statute while liability arises from another statute. See 26 U.S.C. § 5001 (imposing the tax) and 26 U.S.C. § 5005 (making someone liable for the tax); *see also United States v. Pesaturo*, 476 F.3d 60, 66 (1st Cir.2007).

Congress limited the authority of "officers or employees of the Treasury Department" to an "internal revenue district." 26 U.S.C. § 7601(a). Paul Crowley did not know if there was an internal revenue district in Rhode Island, (See testimony of Paul Crowley, June 11, 2007, p.__), and no one else offered any evidence that there was. It is only within those "internal revenue districts" that those "officers or employees" may "inquire after and concerning all persons therein who may be liable to pay any internal revenue tax." 26 U.S.C. § 7601(a).

> Within an internal revenue district the internal revenue laws are administered by a district director of internal revenue. The Director, Foreign Operations District, administers the internal revenue laws applicable to [1] taxpayers residing or doing business abroad, [2] foreign taxpayers deriving income from sources within the United States, and [3] taxpayers who are required to withhold tax on certain payments to nonresident aliens and foreign corporations, provided the books and records of those taxpayers are located outside the United States. For purposes of these procedural rules any reference to a district director or a district office includes the Director, Foreign Operations District, or the District Office, Foreign Operations District.

26 C.F.R. § 601.101(a). From this regulation, the only apparent conclusion is that there is only one internal revenue district—the Foreign Operations District—which administers the internal revenue laws to the three categories of taxpayers listed.

The government failed to prove any "internal revenue district" existed in Rhode Island. The indictment alleges Defendant was "to make an income tax return on or before April 17, 2000, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay the Internal Revenue Service said income tax." (Doc. 1) The government, not Defendant, bore the burden of proving that the "Internal Revenue Service" had authority in Rhode Island, ie., that it was within an "internal revenue district," which it presented no evidence of. Only within that "internal revenue district" would an "officer" have authority to accept "an income tax return" and the payment of an "income tax." 26 U.S.C. § 7601(a). Thus this Court lacked jurisdiction because the government failed to prove that jurisdictional requirement. Thus, that jurisdictional requirement was never met.

Within those districts, the tax court appears to have "exclusive jurisdiction" to determine the correct amount of any internal revenue tax that is deficient. *Baral v. U.S.,* 528 U.S. 431, 439 n.2 (2000), citing 26 U.S.C. § 6213 (jurisdiction in the tax court depends on the existence of a deficiency). *See also Freytag v. Commissioner,* 501 U.S. 868, 889 (1991)(the tax court is an Article I legislative court wielding judicial powers—a court of law).[1] Congress established the "Tax Court." 26 U.S.C. §§ 7441, 7447(a)(1).

---

[1] The Supreme Court specifically found, "The Tax Court exercises judicial, rather than executive, legislative, or administrative, power. It was established by Congress to interpret and apply the Internal Revenue Code in disputes between taxpayers and the

Section 7445 states in part, “The principle office of the Tax Court shall be in the District of Columbia.” 26 U.S.C. § 7445.

The regulations further explain jurisdiction regarding taxes.

> (a) *Principal divisions.* Internal revenue taxes fall generally into the following principal divisions:
> (1) Taxes collected by assessment.
> (2) Taxes collected by means of revenue stamps.
> (b) *Assessed taxes.* Taxes collected principally by assessment fall into the following two main classes:
> (1) Taxes within the jurisdiction of the U.S. Tax Court. These include:
> (i) Income and profits taxes imposed by Chapters 1 and 2 of the 1939 Code and taxes imposed by subtitle A of the 1954 Code, relating to income taxes.
> (ii) Estate taxes imposed by Chapter 3 of the 1939 Code and Chapter 11 of the 1954 Code.
> (iii) Gift tax imposed by Chapter 4 of the 1939 Code and Chapter 12 of the 1954 Code.

---

Government. By resolving these disputes, the court exercises a portion of the judicial power of the United States.

The Tax Court exercises judicial power to the exclusion of any other function. It is neither advocate nor rulemaker. As an adjudicative body, it construes statutes passed by Congress and regulations promulgated by the Internal Revenue Service. It does not make political decisions.

The Tax Court's function and role in the federal judicial scheme closely resemble those of the federal district courts, which indisputably are ‘Courts of Law.’ Furthermore, the Tax Court exercises its judicial power in much the same way as the federal district courts exercise theirs. It has authority to punish contempts by fine or imprisonment, 26 U.S.C. § 7456(c); to grant certain injunctive relief, § 6213(a); to order the Secretary of the Treasury to refund an overpayment determined by the court, § 6512(b)(2); and to subpoena and examine witnesses, order production of documents, and administer oaths, § 7456(a). All these powers are quintessentially judicial in nature.

The Tax Court remains independent of the Executive and Legislative Branches. Its decisions are not subject to review by either the Congress or the President. Nor has Congress made Tax Court decisions subject to review in the federal district courts. Rather, like the judgments of the district courts, the decisions of the Tax Court are appealable only to the regional United States courts of appeals, with ultimate review in this Court. The courts of appeals, moreover, review those decisions ‘in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury.’ § 7482(a).” *Freytag v. Commissioner,* 501 U.S. 868, 890-91 (1991).

> (iv) The tax on generation-skipping transfers imposed by Chapter 13 of the 1954 Code.
> (v) Taxes imposed by Chapters 41 through 44 of the 1954 Code.
> (2) Taxes not within the jurisdiction of the U.S. Tax Court. Taxes not imposed by Chapter 1, 2, 3, or 4 of the 1939 Code or Subtitle A or Chapter 11 or 12 of the 1954 Code are within this class, such as:
> (i) Employment taxes.
> (ii) Miscellaneous excise taxes collected by return.

26 C.F.R. § 601.102. The government cannot allege that the U.S. Tax Court does not have jurisdiction as made clear by the regulation. The government perpetrated a fraud on this Court, and this Court clearly had no jurisdiction to allow a controversy regarding the alleged assessment, existence of a deficiency, or tax due and owing of income tax.

The government in this case alleged that the charge was that Defendant attempted to evade the assessment of a tax. A tax "found to be owing" means a tax "assessed. The Internal Revenue Code provides for a specific procedure for assessment (26 U.S.C. § 6203). An assessment is an administrative determination of tax liability. And until the assessment has been made, the tax has not been found to be owing." *In the Matter of Western Trading Co.*, 340 F.Supp. 1130, 1133 (D.C. Nev.1972), *citing United States v. Miller*, 318 F.2d 637 (7th Cir.1963); *Kurio v. U.S.*, 281 F.Supp. 252 (S.D. Tex.1968). "For the condition precedent of liability to be met, there must be a lawful assessment, either a voluntary one by the taxpayer or one procedurally proper by the IRS. Because this country's income tax system is base on voluntary self-assessment, rather than distraint, the Service may assess the tax only in certain circumstances and in conformity with proper procedures." *Bothke v. Fluor Engineers and Constructors, Inc.*, 713 F.2d 1405, 1414 (9th Cir.1983), *citing Flor v. U.S.*, 362 U.S. 145, 176 (1960). And although the indictment never identifies what type of tax, the government alleged the indictment

claimed an "individual tax" and "individual income" (Doc. 111 at 13). This Court had no authority or jurisdiction to instruct the jury to find a "tax due and owing," (Doc. 97 at 7, 8) and by doing so exceeded its authority.

It is irrefutable that the government had to prove the existence of a deficiency, which it failed to do in this case. It is well-settled that the existence of a "tax deficiency" is an element of the crime. *United States v. Waldeck*, 909 F.2d 555, 557 (1st Cir.1990), *citing Sansone v. U.S.*, 380 U.S. 343, 351 (1965); *Lawn v. U.S.*, 355 U.S. 339, 361 (1958) and *Spies v. U.S.*, 317 U.S. 492, 495-96 (1943). A deficiency can only exist when the statutory procedures are followed. As Justice Blackmun so well set forth those procedures, and as the government is intent on ignoring them, it is necessary to elaborate such. *Laing v. U.S.,* 423 U.S. 161, 195 (1976), J. Blackmun, *dissenting*.

> It is unfortunate, of course, that the issues are imbedded in a complicated and detailed tax code. Correct analysis, I submit, demands conclusions opposite to those reached by the Court today. I therefore dissent.
>
> For an understanding of the purport and reach of § 6851(a)(1), an examination of the statutory structure of which it is a part is indicated.
>
> *A. The customary deficiency procedure.* — This is prescribed by Subchapter B of Chapter 63 of the Code under the heading "Assessment." The term "deficiency" is defined in § 6211(a), 26 U.S.C. § 6211 (a), (1970 ed. and Supp. IV), essentially as the excess of the tax imposed by the Code over the amount of tax shown on the taxpayer's return as filed. If, however, the taxpayer files no return, or shows no tax on the return he does file, the deficiency is the amount of the tax imposed by the Code. Treas. Reg. § 301.6211-1(a), 26 C.F.R. § 301.6211-1 (a) (1975).
>
> Once the Commissioner determines that a deficiency exists, he "is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail." 26 U.S.C. § 6212 (a) (1970 ed., Supp. IV). Under § 6213(a) (1970 ed., Supp. IV), the taxpayer, within 90 days after the mailing of that notice, may file a petition with the United States Tax Court for a redetermination of the deficiency. During this period — and, if a

petition is filed with the Tax Court, until that court's decision has become final — the Commissioner, with one exception hereinafter noted, is precluded from assessing the deficiency, from making a levy, and from proceeding in court for its collection. Any such move on the part of the Internal Revenue Service during that time "may be enjoined by a proceeding in the proper court." Section 6213(a) expressly makes the Anti-Injunction Act, § 7421(a), inapplicable under those circumstances.

The sole exception to this preclusion of the Service during the customary deficiency procedure is also set forth explicitly in § 6213(a). It is that the preclusion is not effective with respect to a jeopardy assessment under § 6861. No like exception, or reference, however, is made with respect to § 6851, the statute that empowers the Commissioner to terminate the taxpayer's taxable period when collection of the tax may be in jeopardy.

*B. The termination-of-the-taxable-period statute*. —This is the above-mentioned, and critical, § 6851, subsection (a)(1) of which is set forth in n. 1 of the Court's opinion, *ante*, at 163. The statute constitutes the entire Part I of Subchapter A (Jeopardy) of Chapter 70 of the Code.

Our income tax system is primarily a self-reporting and self-assessment one. It is "based upon voluntary assessment and payment, not upon distraint." *Flora* v. *United States*, 362 U.S. 145, 176 (1960). See *Helvering* v. *Mitchell*, 303 U.S. 391, 399 (1938); Treas. Reg. § 601.103(a), 26 C.F.R. § 601.103 (a) (1975). Congress, nonetheless, early recognized that there would be instances where the Service must take immediate affirmative action in order to safeguard the collection of a tax. Section 6851(a)(1) fulfills this congressional concern and permits the District Director, see Treas. Reg. § 1.6851-1(a), 26 C.F.R. § 1.6851-1(a) (1975), to terminate the taxable period if he finds that the taxpayer designs an act tending to prejudice or render ineffectual the collection of income tax for the current or the preceding tax year. When this is done, notice of the termination must be given the taxpayer together with a demand for immediate payment of the tax for the taxable period so terminated. The tax thereupon becomes immediately due and payable.

Section 6851, standing alone, however, is not sufficient for a collection procedure because it does not contain its own assessment authority. The statute provides simply for the termination of the taxable period prematurely, and the authority must be found elsewhere in the statutory scheme.

> That assessment authority is granted by § 6201(a) of the Code, 26 U.S.C. § 6201 (a). This empowers the Commissioner "to make . . . assessments of all taxes . . . imposed by this title." An assessment is made by recording the liability of the taxpayer in the Service's books of account. § 6203. If, after demand, the taxpayer fails to pay, the Commissioner may invoke § 6321, which provides that the amount shall be a lien in favor of the United States upon the property of the taxpayer. The Service has power, after 10 days' notice and demand in a nonjeopardy situation, to collect the tax by levy and distraint. § 6331 (1970 ed. and Supp. IV).
>
> …. These sections, as has been seen, concern situations where a notice of deficiency is required and where jurisdiction of the United States Tax Court is thereby afforded.

*Laing v. U.S.,* 423 U.S. 161, 189-95 (1976), J. Blackmun, *dissenting*. The United States Tax Court noted, "In part, our country was founded as the result of tax revolt wherein citizens protested being taxed without their consent. Our tax system is rooted in the concept of voluntary compliance which does not permit the government to arbitrarily assess tax without a proper list or report." *Millsap v. C.I.R.*, 91 T.C. 926, n.10 (1988). That court ruled, at 931-32.

> [The IRS] is not entitled, with few exceptions [sections 6851 and 6861 for termination and jeopardy assessments which may precede deficiency procedures], to assess income tax until after the proper mailing of a notice of deficiency and, if petitioned, until the decision of this Court becomes final. Sec. 6213(a). Accordingly, the historical and traditional purpose of a return prepared and filed by the Commissioner would be suspended or would not take effect until the deficiency procedures are first completed. If the return respondent prepares under section 6020(b) authority is literally treated as 'prima facie good and sufficient for all legal purposes,' respondent could ignore the deficiency procedures. This is because the return is a consent to assessment of tax in our tax system. See section 6201(a)(1) and section 1.6201-1(a)(1), Income Tax Regs.

It is therefore irrefutable that the IRS was required to make an assessment, show a deficiency existed, and give notice and demand to the "taxpayer," all before a tax could

be "due and owing." Although Mr. Pleshaw and the government alleged there was a "tax due and owing," and the government claimed a "tax deficiency" existed and an "assessment" was made, all erroneous legal conclusions, (see testimony of Michael Pleshaw, June 14, 2007, p. 161; Doc. 100 at 9, 13; Doc. 111 at 13), there was no evidence that these or the other requirements contained in the Internal Revenue Code as elaborated by Justice Blackmun were ever even attempted by the IRS, even though the IRS was aware of Defendant by at least 2002.

The IRS not only never performed an assessment, it never took any civil action. (See testimony of Paul Crowley, June 11, 2007, p. 162.) There was no evidence presented to the jury of any "deficiency" or a "tax due and owing." The only thing the jury had was the legal and factual conclusion of summary witness Michael Pleshaw. But even he admitted that there had to be "gross income," which had to be "determined" by the taxpayer "fil[ing] a tax return" before there could be a liability for a tax and the tax actually owed (which must occur before the IRS can determine a "deficiency" exists). (See testimony of Michael Pleshaw, June 19, 2007, p. 6-7.)

The only other way a tax could have been "due and owing" is if the "taxpayer" made a return or a return or form was filed on behalf of the "taxpayer." Paul Crowley testified in this case that there are only two ways an individual can become part of the IRS' database, and that is by the individual filing a return or the IRS receiving a Form 1099 or W2 on behalf of the individual. (See testimony of Paul Crowley, June 11, 2007, p. 125-26.) The evidence showed that none of these existed (ex 2-C, 2-D, 2-E; see testimony of Paul Crowley, June 11, 2007, p. 130-32).

In this case, the government violated Defendant's right to contest any alleged amount "due and owing" and violated his due process right to notice prior to charging him criminally. "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. Of Ed. v. Loudermill*, 470 U.S. 532, 542 (1985), *quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'" *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972).

Defendant also denies that he had any "income." Statement, ¶ 8, 9, 12 & 14 (Doc. 112). Michael Pleshaw claimed that the bank deposits constituted "gross income" __ which was legal and factual error. First, bank deposits are tangible, personal property. *Baltic Mining Co v. Massachusetts*, 231 U.S. 68, 81 (1913); *Pinchot v. CIR.*, 113 F.2d 718 (2d Cir.1940); *United States v. State National Bank of Connecticut*, 421 F.2d 519 (2d Cir.1970). *But see Wheeling Steel Corp v. Fox*, 298 U.S. 193, 214-15; *Virginia v. Imperial Coal Co.*, 293 U.S. 15, 19-20; *Baldwin v. Missouri*, 281 U.S. 586, 591, 593; *Fidelity & Columbia Trust Co. v. Louisville*, 245 U.S. 54, 58; *Smith v. Ajax Pipe Line Co.*, 87 F.2d 567 (8th Cir.1937) ("Bank deposits are not physical—tangible—property but choses in action—indebtedness—intangible property."). *Estate of Oei Tjong Swan v. CIR*, 247 F.2d 144 (2d Cir.1957) (taxpayer's argument that bank deposits are not property

within the United States was rejected). Even "net [business] receipts are personal property." *Concordia Fire Insurance Co. v. Illinois*, 292 U.S. 535, 542-43 (1934). Evidence in this case showed that the "business receipts" were received in exchange for goods sold under private negotiated contracts with Defendant's customers.

Next, to determine whether something constitutes "gross income," one must look at the "source" to determine whether it is taxable, not the "payor" or the "item" itself. This is clearly discernable from the precise wording of Congress; "gross income means all income from whatever **source** derived, including (but not limited to)…." 26 U.S.C. § 61 (emphasis added). Thus, Michael Pleshaw greatly erred by claiming that the "bank deposits," which is property, constituted "gross income." Rather, he had to look to the "source" of those funds to determine whether they were "gross income."

Regarding the "source" of the "income," Defendant can only find what the IRS has published regarding "source." The Form 1040 instruction booklet for 2001at page 15 states, "**Gross income** means all income you received in the form of money, goods, property, and services that is not exempt from tax including any income from sources outside the United States." From the use of the word "including," Defendant understands "gross income" to mean only "any income from sources outside the United States." Then on page 20 of the Form 1040 Instruction Booklet, under the line instructions for "income," the IRS has only listed "Foreign-Source Income," which states, "You must report unearned income, such as interest, dividends, and pensions, from sources outside the United States unless exempt by law or a tax treaty. You must also report earned income, such as wages and tips, from sources outside the United States." The instructions

are silent as to any domestic-source income, so what is not included is excluded. Michael Pleshaw claimed he used the Publication 17 (it is only for individuals), which is even larger and contains more information that the 1040 instruction booklet (form 1040 says it is for U.S. Citizens and resident aliens). On page 49 of the 2001 Publication 17 under "income" with "wages, salaries, and other earnings," it explicitly states,

> Foreign Income. If you are a U.S. citizen or resident alien, you must report income from sources outside the United States (foreign income) on your tax return unless it is exempt by U.S. law. This is true whether you reside inside or outside the United States and whether or not you receive a Form W-2, *Wage and Tax Statement*, or Form 1099 from the foreign payer. This applies to earned income (such as wages and tips) as well as unearned income (such as interest, dividends, capital gains, pensions, rents, and royalties.
>
> Further, in at page 2 of Publication 525 (2002), the IRS states,
>
> **Foreign income.** If you are a U.S. citizen or resident alien, you must report income from sources outside the United States (foreign income) on your tax return unless it is exempt by U.S. law. This is true whether you reside inside or outside the United States and whether or not you receive a Form W-2, *Wage and Tax Statement*, or Form 1099 from the foreign payer. This applies to earned income (such as wages and tips) as well as unearned income (such as interest, dividends, capital gains, pensions, rents, and royalties).
> If you reside outside the United States, you may be able to exclude part or all of your foreign source earned income. For details, see Publication 54, *Tax Guide for U.S. Citizens and Resident Aliens Abroad.*

Once again, it only addresses foreign source income, and thus does not include domestic earned income. Defendant denies having received any "income" as defined by the IRS. Statement, ¶ 9 (Doc. 112).

Interestingly enough, Congress never defined "income," although it did say that "gross income means all income." 26 U.S.C. § 61. As noted above, the IRS in its

publications only included “foreign source income” when explaining income. The Supreme Court has defined “income.”

> The Sixteenth Amendment declares that Congress shall have power to levy and collect taxes on income, "from whatever source derived" without apportionment among the several States, and without regard to any census or enumeration. It was not the purpose or effect of that Amendment to bring any new subject within the taxing power. Congress already had power to tax all incomes. But taxes on incomes from some sources had been held to be "direct taxes" within the meaning of the constitutional requirement as to apportionment. Art. I, § 2, cl. 3, § 9, cl. 4; *Pollock* v. *Farmers' Loan and Trust Co.*, 158 U.S. 601. The Amendment relieved from that requirement and obliterated the distinction in that respect between taxes on income that are direct taxes and those that are not, and so put on the same basis all incomes "from whatever source derived." *Brushaber* v. *Union Pac. R.R.*, 240 U.S. 1, 17. “Income” has been taken to mean the same thing as used in the Corporation Excise Tax Act of 1909, in the Sixteenth Amendment and in the various revenue acts subsequently passed. *Southern Pacific Co*. v. *Lowe*, 247 U.S. 330, 335; *Merchants L. & T. Co*. v. *Smietanka*, 255 U.S. 509, 519. After full consideration, this Court declared that income may be defined as gain derived from capital, from labor, or from both combined, including profit gained through sale or conversion of capital. *Stratton's Independence* v. *Howbert*, 231 U.S. 399, 415; *Doyle* v. *Mitchell Brothers Co.*, 247 U.S. 179, 185; *Eisner* v. *Macomber*, 252 U.S. 189, 207. And that definition has been adhered to and applied repeatedly. See e.g. *Merchants L. & T. Co*. v. *Smietanka, supra*, 518; *Goodrich* v. *Edwards*, 255 U.S. 527, 535; *United States* v. *Phellis*, 257 U.S. 156, 169; *Miles* v. *Safe Deposit Co.*, 259 U.S. 247, 252-253; *United States* v. *Supplee-Biddle Co.*, 265 U.S. 189, 194; *Irwin* v. *Gavit*, 268 U.S. 161, 167; *Edwards* v. *Cuba Railroad*, 268 U.S. 628, 633. In determining what constitutes income substance rather than form is to be given controlling weight. *Eisner* v. *Macomber, supra*, 206.

*Bowers v. Kerbaugh-Empire Co*., 271 U.S. 170, 173 (1926). This ruling further supplemented what the Court had previously ruled.

> Yet it is plain, we think, that by the true intent and meaning of the act the entire proceeds of a mere conversion of capital assets were not to be treated as income. Whatever difficulty there may be about a precise and scientific definition of "income," it imports, as used here, something entirely distinct from principal or capital either as a subject of taxation or as a measure of the tax; conveying rather the idea of gain or increase

> arising from corporate activities. As was said in *Stratton's Independence* v. *Howbert*, 231 U.S. 399, 415: "Income may be defined as the gain derived from capital, from labor, or from both combined."
>
> Understanding the term in this natural and obvious sense, it cannot be said that a conversion of capital assets invariably produces income. If sold at less than cost, it produces rather loss or outgo. Nevertheless, in many if not in most cases there results a gain that properly may be accounted as a part of the "gross income" received "from all sources"; and by applying to this the authorized deductions we arrive at "net income."

*Doyle v. Mitchell Brothers Co*., 247 U.S. 179, 184-85 (1918). Defendant therefore denies that he had any "income" as defined by the Supreme Court. Statement, ¶ 8 (Doc. 112).

Mr. Pleshaw erroneously alleged and made the legal determination (over objection) that **<u>all</u>** of the "bank deposits" were "gross receipts." (cite) The Supreme Court has expressly rejected such a claim.

> We must reject in this case, as we have rejected in cases arising under the Corporation Excise Tax Act of 1909 (*Doyle* v. *Mitchell Brothers Co., ante*, 179, and *Hays* v. *Gauley Mountain Coal Co., ante*, 189) the broad contention submitted in behalf of the Government that all receipts — everything that comes in — are income within the proper definition of the term "gross income," and that the entire proceeds of a conversion of capital assets, in whatever form and under whatever circumstances accomplished, should be treated as gross income. Certainly the term "income" has no broader meaning in the 1913 Act than in that of 1909.
>
> *Southern Pacific Co. v. Lowe*, 247 U.S. 330, 335 (1918).

To further clarify what "income" means, it is important to point out that the U.S. government is defined in 28 U.S.C. § 3002(15)(A) as a "federal corporation." Pursuant to 26 U.S.C. § 6331(a) and 26 CFR § 31.3401 (c)-1, only those who are "public officers," who are also "officers of a [federal] corporation" can be "employees." All such corporate officers ("taxpayers") are described in the code as being involved in a "trade or business"; "The term 'trade or business' includes the performance of the functions of a

public office." 26 U.S.C. § 7701(a)(26). "Trade or business" ties in with "self employment income." 26 U.S.C. § 1402(a) and (b).

Therefore, nearly all "taxpayers" under the I.R.C. are engaged in a "trade or business," which is a "public office," within the "United States," which is the United States federal government. Receipt of a federal payment by a public officer is then counted as "corporate profit" under the I.R.C. and any recipients are in the custody of corporate profit which must be returned to the federal government. Defendant denies that any of the above applies to him. Statement, (Doc. 112).

Mr. Pleshaw also failed to consider and exclude any "cost basis" as any "taxable income." IRS publication 17 (2000) at page 94 provides, "Basis is the amount of your investment in property for tax purposes. Use the basis of property to figure gain or loss on the sale, exchange, or other disposition of property." It continues, "The basis of property you buy is usually its cost. The cost is the amount you pay in cash, debt obligations, or other property." *See also* 26 C.F.R. § 1.1012-1(a). Further, Defendant realized no gain when he sold the goods. The regulations that such transactions only realize "gross income" when there is a purchase of personal property within the U.S. and its sale without the U.S. 26 C.F.R. §1.862-1(a)(vi). Therefore, Mr. Pleshaw failed to follow prescribed procedure for determining any amount of tax, and thus his figures were completely erroneous. The government's and ultimately this Court's reliance on such was clearly erroneous.

Defendant also cannot find what "income tax return" he was "required by law" "to make." Indictment at 1. It is a regulatory requirement that "returns must be made on

the forms prescribed by the Internal Revenue Service." 26 C.F.R. § 601.104(a)(1). Form 2555 appears to be the only form for U.S. citizens. This form contains no jurat. The Form 1040, which Michael Pleshaw claimed Defendant should have filed, violates the law. The Paperwork Reduction Act of 1995 requires that forms requesting information include specific information on the form itself. 44 U.S.C. §§§ 3506, 3507, 3512. The Form 1040 violates the Paperwork Reduction Act in at least the following nine ways:

> (i) is inventoried, **displays a control number** and, if appropriate, an **expiration date**;
> (ii) **indicates the collection is in accordance with the clearance requirements of section 3507**; and
> (iii) **informs the person** receiving the collection of information of –
>
> > (I) the **reasons the information is being collected**; (II) **the way such information is to be used**;
> > (III) **an estimate, to the extent practicable, of the burden of the collection**;
> > (IV) **whether the responses** to the collection of information **are voluntary, required to obtain a benefit, or mandatory**; and
> > (V) the fact that an agency may not conduct or sponsor, and **a person is not required to respond to, a collection of information unless it displays a valid control** number.

44 U.S.C. § 3506(c)(1)(B). These requirements must clearly be displayed on the information request form (Form 1040) itself, not in any accompanying booklet. None of these requirements appear on Form 1040 for 1999, 2000, 2001 and 2002. Further, the OMB number on a form can only be valid for 3 years. 44 U.S.C. § 3507(g). The OMB number on the Form 1040 has been the same for more than 20 years, meaning the form is in violation of yet another law.

The Supreme Court has found, "The [Paperwork Reduction] Act allows the public, by refusing to answer these information collection requests, to help control

'outlaw forms.'" *Dole v. United Steelworkers*, 494 U.S. 26, 40 n.6 (1990). This is because the PRA specifically provides,

> § 3512 Public protection
> (a) Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this subchapter if—
>
> (1) the collection of information does not display a valid control number assigned by the Director in accordance with this subchapter; or
>
> (2) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number.
>
> (b) The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto.

The government cannot claim that the form 1040 complies with the PRA. The government never produced any evidence of any form that Defendant was required to file; the government never put forth any evidence of what "income tax return" he was "required by law" "to make." Indictment at 1. The government never presented any evidence of what "law" required Defendant to file a return, and thus there was no evidence that Defendant was specifically aware of that law.

Interestingly, the Supreme Court found that the making of a return is a waiver of the Fifth Amendment rights to remain silent and not testify against oneself. In *Garner v. U.S.*, 424 U.S. 648 (1976), the Supreme Court stated, "The information revealed in the preparation and filing of an income tax return is, for purposes of Fifth Amendment analysis, is the testimony of a witness." *Compare with Dole*, 494 at 33. The test for when the Fifth Amendment right can be relied upon after the incriminating testimony is yielded

was when the person was denied the "free choice to admit, to deny, or to refuse to answer." *Lisenba v. California*, 314 U.S. 219, 241 (1941). Defendant clearly exercised his rights to not provide information, and the government offered no law that he was required to provide information on a prescribed form.

In this case, the government wrongfully attempted a taking of Defendant's property. "An exaction by the U.S. Government, which is not based upon law, statutory or otherwise, is a taking of property without due process of law, in violation of the Fifth Amendment to the U.S. Constition." 26 C.F.R. § 601.106(f)(1).

In this case, the government and the IRS violated Defendant's rights. There was an erroneous presumption that Defendant was under some obligation to disclose all of his private contracts and results therefrom to the government or the IRS. The Supreme Court found, "the tax is laid upon privileges which exist in conducting business with the advantages which inhere in the corporate capacity of those taxed, and which are not enjoyed by private firms or individuals. It is this distinct privilege which is the subject of taxation, not the mere buying or selling or handling of goods." *Flint v. Stone Tracy Co.* 220 U.S. 107, 162 (1918)(emphasis added). "Included in the right of personal liberty and the right of private property—partaking of the nature of each—is the right to make contracts for the acquisition of property. Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property. If this right be struck down or arbitrarily interfered with, there is a substantial impairment of liberty in the long established constitutional sense." *Coppage v. Kansas*, 236 U.S. 1, 14 (1915).

> Among these inalienable rights, as proclaimed in [the Declaration of Independence], is the right of men to pursue their happiness, by which is meant the right to pursue any lawful business or vocation, in any manner not inconsistent with the equal rights of others, which may increase their prosperity or develop their faculties, so as to give to them their highest enjoyment. The common business and callings of life, the ordinary trades and pursuits, which are innocuous in themselves, an have been followed in all communities from time immemorial, must therefore be free in this country to all alike upon the same conditions….It has been well said that "the property which every man has in his own labor, as it is the original foundation of all other property, so it is the most sacred and inviolable.

*Butcher's Union Co. v. Crescent City Co.,* 111 U.S. 746, 757 (1883).

> "Private ownership of property and its enjoyment secure from arbitrary governmental interference are cherished, fundamental concepts, *see* U.S. Const. Amends. III, IV, V, VIII, X, XIV, and are two of the features distinguishing this society from those with oppressive governments…the affront to the citizen's notions of the place of government in our society, when personally confronting the misuse of its awesome power, may engender a turmoil that is more profound than the physical effects of the deprivation.

*Bothke v. Fluor Engineers and Constructors, Inc.*, 713 F.2d 1405, 1413 (9th Cir.1983).

> The individual may stand upon his constitutional rights as a citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the State or to his neighbors to divulge his business, or to open his doors to an investigation, so far as it may tend to criminate him. He owes no such duty to the State, since he receives nothing therefrom, beyond the protection of his life and property. His rights are such as existed by the law of the land long antecedent to the organization of the State, and can only be taken from him by due process of law, and in accordance with the Constitution. Among his rights are a refusal to incriminate himself, and the immunity of himself and his property from arrest or seizure except under a warrant of the law. He owes nothing to the public so long as he does not trespass upon their rights.

*Hale v. Henkel*, 201 U.S. 43, 74 (1906).

The Supreme Court found, "it could hardly be denied that a tax laid specifically on the exercise of [a fundamental right] would be unconstitutional." *Murdock v. Pennsylvania*, 319 U.S. 105, 108 (1943). In the instant matter, the government forcefully moved against Defendant and enlisted the aid and power of this Court to do violence to

Defendant by depriving him of all his rights. "It is firmly established that an act taken in retaliation for the exercise of a constitutionally protected right is forbidden." *Price v. Wall*, 428 F.Supp.2d 52, 56 (D.R.I. 2006), *citing McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir.1999). This Court should not have allowed the government to target Defendant without notice and deprive him of his rights; "the power of courts is to protect the constitutional rights of citizens from legislative destruction." *Wesberry v. Sanders*, 376 U.S. 1, 6 (1964).

The government claimed the alleged affirmative acts of Defendant set forth in the indictment were to evade detection by the IRS, but when the IRS obtained the information in 2002, it did nothing. Defendant was within the radar of the IRS, but the government did nothing but to destroy Defendant's rights by charging him criminally and alleging factual and legal presumptions without giving Defendant notice.

Defendant next contends that no penalty can be imposed upon him inasmuch as there exist no implementing regulations for the statute he was charged with violating—26 U.S.C. § 7201, and thus that statute has no general applicability or legal effect. Congress mandates, "the Secretary shall prescribe all needful rules and regulations for the enforcement of this title." 26 U.S.C. § 7805. "We think it important to note that the Act's civil and criminal penalties attach only upon violation of regulations promulgated by the Secretary; if the Secretary were to do nothing, the Act itself would impose no penalties on anyone." *California Bankers Assn. v. Shultz*, 416 U.S. 21, 26 (1974). "Here the statute is not complete by itself, since it merely declares the range of its operation and leaves to its progeny the means to be utilized in the effectuation of its command….The result is that neither the statute nor the regulations are complete without the other, and only together do they have any force." *United States v. Mersky*, 361 U.S. 431, 437-38 (1960).

"Regulations, in order to be valid, must be consistent with the statute under which they were promulgated." *U.S. v. Larinoff*, 431 U.S. 864, 873 (1977).

If Defendant were required to do something, implementing substantive regulations must be published in the Federal Register for any law that institutes a penalty for not doing said required act and which would adversely affect Defendant's constitutional rights, unless Defendant were an officer, agent, or employee of a Federal agency. *See* 26 C.F.R. § 601.702; 44 U.S. C. § 1505; 5 U.S.C. § 553(a). "Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published." 5 U.S.C. § 552. Substantive regulations of general applicability must also be published in the federal register. 5 U.S.C. § 552(a)(1)(D). This meets the notice requirement of the APA. 44 USC § 1508. The Secretary agrees that these provisions of law are binding on the IRS. 26 C.F.R. § 601.702(a). The Secretary then provides protection for the failure to publish,

> (ii) *Effect of failure to publish.* Except to the extent that a person has actual and timely notice of the terms of any matter referred to in paragraph (a)(1) of this section which is required to be published in the Federal Register, such person is not required in any manner to resort to, or be adversely affected by, such matter if it is not so published or is not incorporated by reference therein pursuant to paragraph (a)(2)(i) of this section. Thus, for example, any such matter which imposes an obligation and which is not so published or incorporated by reference shall not adversely change or affect a person's rights.

26 C.F.R. § 601.702(a)(2)(ii).

Any document or form which is mandatory is a rule under the APA, and as such must be published in the Federal Register. *United States v. $200,000 in U.S. Currency*, 590 F.Supp. 866, 869, 870 (S.D.Fl.1984); Where a form was "never promulgated

pursuant to the rule making requirements of the Administrative Procedure Act…[the form] is not effective as a regulation." *United States v. Reinis*, 794 F.2d 506, 508 (9th Cir.1986). When a document required to be published is so published in the Federal Register, it "creates a rebuttable presumption" that the document meets the legal requirements, including "that it was duly issued, prescribed, or promulgated." 44 USC § 1507.

## CONCLUSION

Based on the foregoing, both this Court and the government violated Defendant's rights, thus depriving this Court of jurisdiction, and therefore requiring that the verdict be set aside and that the indictment be dismissed with prejudice.

Respectfully submitted this 11th day of February, 2008.

_/s/ Scott A. Lutes______________________
Scott A. Lutes
Counsel for Neil Stierhoff
One Turks Head Place, Suite 1440
Providence, RI 02903
Telephone: 861-1142
Fax: 861-1141
Email: scottluteslaw@yahoo.com

_/s/ Alan S. Richey______________________
Alan Stuart Richey
Counsel for Neil Stierhoff
P.O. Box 1505, Port Hadlock, Washington 98339
Telephone: 360 437-4005
Email: asratty@gmail.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I did electronically file the foregoing motion using the court's CM/ECF system which will send notice of the filing to the attorney of record for the plaintiff, Stephanie Browne, John Kane, and Thomas Voracek, and any other counsel of record through the CM/ECF system.

Dated this 11th day of February, 2008.
/s/ Alan S. Richey_
Alan S. Richey